# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC, | |
| *Plaintiff*, | Civil Action No. 2:19-cv-40-JRG-RSP |
| v. | LEAD CASE |
| | |
| IMPERVA, INC., | |
| *Defendant*. | |
| | |
| IMPLICIT, LLC, | |
| *Plaintiff*, | Civil Action No. 2:19-cv-37-JRG-RSP |
| v. | |
| | █████████████████████ |
| JUNIPER NETWORKS, INC., | █████████████████████████ |
| *Defendant*. | |

## DEFENDANT JUNIPER NETWORKS, INC.'S SUPPLEMENTAL MOTION
## TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

        A.      Implicit Grants Broad Rights Under The Intel License .........................................2

        B.      Implicit Accuses Juniper's Intel-Based Products Of Infringement .....................3

        C.      Juniper Gains Access To the Intel License During Discovery ...........................6

III.    LEGAL STANDARD............................................................................................6

IV.     IMPLICIT COULD HAVE ORIGINALLY FILED THIS CASE IN THE
        DISTRICT OF DELAWARE ...................................................................................7

V.      THE VENUE SELECTION CLAUSE OF THE INTEL LICENSE APPLIES
        TO THIS CASE AND MANDATES TRANSFER TO DELAWARE ..........................8

        A.      The Express Terms Of The Intel License Provide A Strong Defense To
                Juniper.....................................................................................................8

        B.      Juniper Also Enjoys An Implied License To The Asserted Patents ...................10

        C.      Implicit Has Failed To Present Any Valid Basis For Ignoring The
                Venue Selection Clause ...........................................................................11

VI.     THE PUBLIC INTEREST FACTORS FURTHER SUPPORT TRANSFER ..............14

VII.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Advanced Reimbursement Mgmt., LLC v. Plaisance*,
2019 WL 2502931 (D. Del. June 17, 2019)..................................................................14

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013)...........................................................................1, 6, 7, 14

*In re Beauregard*,
53 F.3d 1583 (Fed. Cir. 1995)................................................................11, 12, 13

*Coface Collections N. Am. Inc. v. Newton*,
430 F. App'x 162 (3d Cir. 2011) ..............................................................14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................7

*EVS Codec Techs., LLC v. LG Elecs., Inc.*,
2019 WL 2904747 (E.D. Tex. July 5, 2019) .......................................9, 12

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
651 F.3d (Fed. Cir. 2011)..............................................................7, 8, 10

*Jacobs v. Nintendo of America, Inc.*,
370 F.3d 1097 (Fed. Cir. 2004)......................................................10, 11

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
2012 WL 194382 (E.D. Tex. Jan. 23, 2012)........................................15

*Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*,
2019 WL 2904756 (E.D. Tex. July 5, 2019) ......................................12

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017).......................................................................7

*Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*,
2018 WL 8014281 (E.D. Tex. Sept. 5, 2018) ..............................7, 8, 15

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009).......................................................10

*Uniloc USA, Inc. v. Cisco Sys., Inc.*,
2017 WL 959856 (E.D. Tex. Mar. 13, 2017) ..........................7, 8, 14, 15

<u>**Page(s)**</u>

*Zix Corp. v. Echoworx Corp.*,
    2016 WL 7042221 (E.D. Tex. June 9, 2016)........................................................................7, 11

**Statutes**

28 U.S.C. § 1400(b) ..................................................................................................................7

28 U.S.C. § 1404 ................................................................................................................1, 6, 7

28 U.S.C. § 1404(a) ..............................................................................................................1, 7

- iii -

## I.      INTRODUCTION

Defendant Juniper Networks, Inc. hereby submits this supplemental motion to transfer this case to the District of Delaware under 28 U.S.C. § 1404(a).

This supplemental request comes as a result of new information that has recently come to light during discovery. On October 11, 2019—about one month after the hearing on Juniper's prior transfer motion—Juniper and Plaintiff Implicit, LLC finally resolved certain outstanding confidentiality issues with third party Intel Corporation regarding a patent license that Implicit granted to Intel in 2009. *See* Declaration of David McPhie, Ex. 1 ("Intel License"), Ex. 3. Upon reviewing the Intel License, Juniper learned for the first time that Implicit had ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████This was a significant revelation given that Juniper is an Intel customer and the Intel components in the accused Juniper products form part of the basis for Implicit's infringement theories in this case. *See, e.g.,* Declaration of Bruno de Arruda ¶¶ 3–4; Dkt. 1 ¶¶ 57–59. The Intel License thus provides a clear defense against Implicit's infringement claims for all of Juniper's Intel-based products, which comprise the vast majority of the Juniper products accused in this case.

The most immediate impact of the Intel License, however, is its effect on venue. That is because Implicit specifically agreed as part of its agreement with Intel that ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████ A straightforward application of this clause is dispositive of the venue issue and mandates an immediate transfer to the District of Delaware. As the Supreme Court has explained, "[p]roper application of § 1404 requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of*

*Tex.,* 571 U.S. 49, 59–60 (2013). Implicit has not identified any "exceptional" aspect of this case that might justify departing from this well-established rule, and there is none.

Accordingly, for the reasons detailed further below, the Court should transfer this case to the District of Delaware based on the unequivocal terms of Implicit's license with Intel.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Implicit Grants Broad Rights Under The Intel License

- 2 -

███████████████████████████████████

██████████████████

### B.      Implicit Accuses Juniper's Intel-Based Products Of Infringement

On February 4, 2019, Implicit asserted a number of its "demultiplexing" patents against Juniper's "SRX Series Service Gateways" ("Accused Products"). *See* Dkt. 1 ¶¶ 33–34, 55–84.[1] For example, Implicit alleged that "Juniper has directly infringed and continues to infringe at least claim 1 of the '683 Patent." *Id.* ¶ 57. Implicit further alleged:

> Juniper installs, configures, and sells the Accused Products with one or more distinct components, including ***components that implement flow-based processing*** and the ability to inspect application data on TCP traffic (collectively, the "Demux Accused Components"), each of which is especially made or especially adapted to practice the invention claimed in at least ***claim 1 of the '683 Patent***.

*Id.* ¶ 59 (emphasis added). Claim 1 of the '683 Patent specifically recites certain components of the claimed invention including a "***processing unit***." McPhie Ex. 13 at 14:20-22.

Implicit's allegations against "Juniper's SRX Service Gateways" encompassed numerous products whose "processing unit" for "flow-based" processing was indisputably an ***Intel*** processor. Arruda Decl. ¶ 3 ("At least the following Juniper products are Intel-based products that are specifically designed and operated using Intel processors (including for their flow-based packet processing features): the SRX1500, SRX4100, SRX4200, SRX4600, SRX5400, SRX5600, and SRX5800 series appliances, the vSRX Virtual Firewall, and the cSRX Container Firewall"). Indeed, the use of Intel processors for such processing in Juniper's SRX products was a matter of public record at the time Implicit filed its complaint. *See, e.g.*, Arruda Decl. ¶ 4; McPhie Ex. 20

---

[1] With the amended complaint, there are now six asserted patents: U.S. Pat. Nos. 8,694,683 ("the '683 Patent"), 9,270,790 ("the '790 Patent"), 9,591,104 ("the '104 Patent"), 10,027,780 ("the '780 Patent"), 10,033,839 ("the '839 Patent"), and 10,225,378 ("the '378 Patent"). Dkt. 14.

(disclosing use of "Intel(R) Xeon(R) CPU" as "Processor" for SRX1500, SRX4100 and SRX4200 products); Arruda Ex. C (describing vSRX and cSRX products as using "Intel® Xeon® processor family (x86 platform)"); Arruda Ex. B (identifying "advanced multi-core Xeon™ Processors" in SRX products); Arruda Ex. A (datasheet for SRX5400, SRX5600, and SRX5800 products stating their Service Processing Cards (SPCs) include "Quad 14 core Intel CPU Complexes"). Intel's own website refers to Juniper as a "trusted partner" in incorporating Intel technology into Juniper's products, including those accused of infringement here. *See* McPhie Ex. 4.[2]

On June 17, 2019, Implicit served infringement contentions confirming that its infringement claims were directed to Juniper products containing one or more Intel processors, including the "SRX1500 series, SRX4100 series, SRX4200 series, SRX4600 series, SRX5400 series, SRX5600 series, and SRX5800 series hardware appliances," as well as the "vSRX Virtual Firewall" and "cSRX Container Firewall." *See* McPhie Ex. 5 at 3. All of these Juniper products use Intel processors for the accused flow-based packet processing features. *See* Arruda Decl. ¶ 3.

The claim charts included in these infringement contentions further confirmed Implicit's specific reliance on Intel components in support of its infringement theories. For example, with respect to claim 1 of the '683 Patent, Implicit's claim chart stated that the "Accused Instrumentalities comprise a processor … e.g., a CPU." McPhie Ex. 6 at 1. The claim charts went on to identify this CPU by citing Juniper technical materials that specifically call out the use of "advanced multi-core Xeon™ Processors" in the SRX products. *See id.* at 2–7 (citing Juniper web page); Arruda Ex. B at 15 (cited web page identifying Xeon processors). Implicit's claim charts also included annotations (boxes) that pointed specifically to the "CPUs" that comprise the "Services Processing Units (SPUs)" on the "Services Processing Cards (SPCs)":

---

[2] *See* <https://networkbuilders.intel.com/ecosystem/juniper-networks>.

The I/O cards (IOCs) and Services Processing Cards (SPCs) on SRX5000 line devices contain processing units that process a packet as it traverses the device. An IOC has one or more Network Processing Units (NPUs) and one or more Services Processing Units (SPUs) run on an SPC.

For the distributed processing architecture of the services gateway, all flow-based processing occurs on the SPU and sampling is multi-thread aware. Packet sequencing is maintained for the sampled packets.

A packet undergoes flow-based processing after packet-based filters and some screens have been applied to it. All flow-based processing for a single flow occurs on a single Serices Processing Unit (SPU) An SPU processes the packets of a flow according to the security features and other services configured for the session.

SPC3 flow architecture is same as CP-Lite architecture. The SPC3 physically has two Services Processing Units (SPU) and each SPU has two CPUs.

*Id.* at 3, 5–7 (annotations by Implicit). Public datasheets confirm that these identified components are "Quad 14 core Intel CPU Complexes." Arruda Ex. A. All of the Intel processors implicated by these claim charts are clearly licensed by Implicit based on the Intel License's definition of an "Information System Product." *See* McPhie Ex. 1 at Definitions ¶¶ 9–11.

Implicit's infringement theories for the other asserted patents also rely upon the same Intel components in the accused Juniper products. For example, Implicit's allegations for these other patents likewise point specifically to the "components" in the SRX products "that implement flow-based processing," Dkt. 14 ¶¶ 69, 75, 81, 87, 93, and cite to claims requiring a "processing unit" (claim 1 of the '104 and '790 Patents), a "processing circuit" (claim 1 of the '780 and '839 Patents), or a "computing device" (claim 1 of the '378 Patent). *See* McPhie Exs. 14–18. Implicit's infringement contentions for these claims similarly rely upon many of the same passages and documents cited above regarding (for example) the Intel Xeon processor and Intel-based SPUs in the accused SRX products. *See generally* McPhie Exs. 6–11.

Implicit has continued to pursue all of its Intel-based infringement theories to date, despite having made other amendments to its complaint and infringement contentions. For example, Implicit has twice purported to update its claim charts, but without altering the reliance on Intel components in support of Implicit's infringement theories. *See, e.g.*, McPhie Decl. ¶ 14 & Ex. 12.

### C.    Juniper Gains Access To the Intel License During Discovery

As part of the discovery phase of the case (which is still ongoing), Implicit contacted Intel to seek clearance to produce the Intel License to Juniper. On August 30, 2019, counsel for Intel wrote a letter requesting special treatment of the Intel License beyond what was provided in the Protective Order. McPhie Ex. 2. Because some of Intel's requests seemed unnecessarily burdensome, counsel for Juniper initiated further discussion with Intel's counsel in an attempt to reach an appropriate compromise. McPhie Decl. ¶ 3 & Ex. 3. The parties and Intel ultimately reached such a compromise on October 11, 2019. McPhie Ex. 3.

Juniper undertook an analysis of the Intel License shortly after it became available to Juniper under the terms of the Protective Order and the parties' agreement with Intel. McPhie Decl. ¶ 5. Juniper also investigated the nature and use of Intel components in the accused Juniper products, as reflected in Implicit's complaint and infringement contentions. *Id.* After reaching the conclusion that the venue selection clause of the Intel License required transfer to the District of Delaware, Juniper promptly met and conferred with Implicit on November 6, 2019. *Id.* The parties were unable to reach agreement, and this motion followed.

### III.    LEGAL STANDARD

Motions to transfer based on a forum selection clause are enforced through 28 U.S.C. § 1404.  It is the "party defying the forum-selection clause" (in this case, Implicit) that "bears the burden of establishing that the transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). "[P]roper application of § 1404 requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59–60. Thus, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52.

To establish that a forum selection clause in a patent license applies in a particular case, the moving party need not present anything approaching a "conclusive showing of success" on its license theory. *Zix Corp. v. Echoworx Corp.*, 2016 WL 7042221, at *3 (E.D. Tex. June 9, 2016). Rather, "the Court's inquiry at this stage is merely to determine the viability of [a party's] license defense as a procedural matter." *Uniloc USA, Inc. v. Cisco Sys., Inc.*, 2017 WL 959856, at *2 (E.D. Tex. Mar. 13, 2017). In making this threshold inquiry, courts simply inquire as to whether the moving party has articulated a "non-frivolous" license defense. *See Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.*, 2018 WL 8014281, at *2 (E.D. Tex. Sept. 5, 2018) (citing *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d, 1355, 1359 (Fed. Cir. 2011)).

As for the remainder of "the usual § 1404 analysis," the invocation of a forum selection clause alters this in at least "two relevant ways": "(1) the plaintiff's choice of forum merits no weight, and (2) the district court should consider arguments about public interest factors only." *Uniloc*, 2017 WL 959856, at *2 (citing *Atl. Marine*, 571 U.S. at 63–64).

## IV.   IMPLICIT COULD HAVE ORIGINALLY FILED THIS CASE IN THE DISTRICT OF DELAWARE

Pursuant to § 1404, the Court may transfer this case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This threshold consideration is easily satisfied here. Venue is proper in the District of Delaware because Juniper is incorporated in Delaware. Arruda Decl. ¶ 2; *see* 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Juniper is subject to personal jurisdiction in Delaware for the same reason. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Thus, Implicit could have originally filed this action in the District of Delaware.

## V.     THE VENUE SELECTION CLAUSE OF THE INTEL LICENSE APPLIES TO THIS CASE AND MANDATES TRANSFER TO DELAWARE

Implicit cannot satisfy its burden of identifying any "exceptional" factor that renders transfer "unwarranted" here, contrary to the deal it previously struck with Intel agreeing to submit to the jurisdiction of the District of Delaware for all disputes under the license. Under governing case law, the Intel License clearly applies here as its plain language provides Juniper a compelling license defense that far exceeds the threshold of "viable" and "non-frivolous." *See Tessera*, 2018 WL 8014281, at *2 (E.D. Tex. Sept. 5, 2018) (citing *Gen. Protecht*, 651 F.3d at 1359); *Uniloc*, 2017 WL 959856, at *2.[3] And there is no dispute that the venue clause of the Intel License mandates transfer to the District of Delaware in such cases. *See* McPhie Ex. 1 § 12.12.

Juniper's license theory rests on at least two independent bases, either of which is more than sufficient to invoke the venue provisions of the Intel License. First, under the explicit terms of its license, ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Second, the Intel License also provides ██████████████████████████████

### A.     The Express Terms Of The Intel License Provide A Strong Defense To Juniper

First, Juniper has a valid license defense grounded in the explicit terms of the Intel License. As part of that agreement, Implicit ████████████████████████████████████████████ ██████████████████████████████ Under the explicit terms of its license, Implicit agreed that ██████████████████████████████████████████████ ██████████████████████████ The Intel License thus sets forth an expansive covenant not to sue:

---

[3] Federal Circuit law applies to the determination of whether an accused infringer's defense triggers a forum selection clause in a license agreement. *See id.*

███████████████████████████████████████████████████████████████████████████

███████████████████████████████

  Notwithstanding this unequivocal language, Implicit has now brought infringement claims

against Juniper ████████████████████████████████████████████████████There

can be no dispute that the Intel processors used in the Juniper SRX products (e.g., the Xeon

processor) are █████████████████████████████████████████████████████████

████████████████████████████████████████████████Juniper purchased

these Intel processors and uses them "in combination with" Juniper's own SRX products, which

Implicit now accuses of infringement. These accused Juniper products are ██████████████████

█████████████████████████████████████Thus, no matter how the Intel License is

construed, Implicit's infringement claims in this Court are ████████████████████████████

███████████████████████████████████████████████████

  Moreover, as demonstrated above (*see* Section II), the claims of infringement that Implicit

has repeatedly advanced in its complaint and infringement contentions are clearly based at least in

part on ████████████████████████████████████████████████For example,

claim 1 of the '683 Patent requires a "processing unit," which Implicit's own infringement theories

---

[4] To the extent that Implicit would have this Court interpret the license agreement and its covenants in an unduly restrictive manner in an attempt to avoid the forum selection provisions contained in the same agreement, such matters of contract interpretation are properly reserved for the District of Delaware. *See, e.g.*, *EVS Codec Techs., LLC v. LG Elecs., Inc.*, 2019 WL 2904747, at *3 (E.D. Tex. July 5, 2019).

identify as a CPU that is an Intel multi-core processor. *See, e.g.*, McPhie Ex. 6 at 1-7; *see generally* Section II above. Accordingly, Implicit cannot contest that its infringement claims that cite and rely upon these Intel products are not ███████████████████████████████ At a minimum, Juniper's license theory is more than adequately established to satisfy the "viable" and "non-frivolous" standard.

###    B.    Juniper Also Enjoys An Implied License To The Asserted Patents

Second, Juniper enjoys (at a minimum) an implied license to the asserted patents. The implied license doctrine derives from the principle of legal estoppel and "the fact that the licensor … has licensed … a definable property right for valuable consideration, and then has attempted to derogate or detract from that right. The grantor is estopped from taking back in any extent that for which he has already received consideration." *Gen. Protecht*, 651 F.3d at 1358 (quoting *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009)) (citation omitted). In other words, Implicit cannot now attempt to ███████████████████████████ ███████████████████████████████

The case of *Jacobs v. Nintendo of America, Inc.*, 370 F.3d 1097 (Fed. Cir. 2004), is particularly instructive on the applicability of Juniper's implied license defense to the present case. In *Jacobs*, two parties, Jacobs and Analog, entered into a license agreement. *Id.* at 1098. Of particular relevance here, the court noted that this agreement granted two distinct rights: first, the covenant not to sue the original licensee provided a "peace" from infringement claims; and second, the license grant provided a "prosperity," affording Analog the right to sell its component accelerometers to its customers. *Id.* at 1099. Subsequently, Nintendo, a third party, integrated Analog's components into its controllers. *Id.* Jacobs sued Nintendo, accusing the Nintendo controllers of infringement, and Nintendo asserted an implied license defense. *Id.* The court held that Nintendo enjoyed an implied license to use the component accelerometers in its products. *Id.*

at 1101–02. The court reasoned that Analog's "prosperity" right could only be understood as distinct from the "peace" right if the "prosperity" right also relieved Analog's customers from suit when they incorporated Analog's components into their own products. *See id.* at 1101. Without this implied right, Analog's right to sell components to customers would be meaningless. *See id.*

The implied license in this case is ███████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████ Juniper thus enjoys an implied license to incorporate Intel's licensed processors into its SRX products.

Accordingly, Juniper's implied license defense easily surpasses the minimal "non-frivolous" threshold, mandating that the Court should enforce Implicit's agreement to have this dispute resolved in the District of Delaware. *See Zix*, 2016 WL 7042221, at *4 (granting transfer motion where "implied license defense is strong enough to not be wholly frivolous").

**C.  Implicit Has Failed To Present Any Valid Basis For Ignoring The Venue Selection Clause**

In meeting and conferring with Juniper regarding this transfer motion, Implicit's sole response was to point out that its infringement case includes a handful of patent claims that recite

a "computer-readable medium" (i.e., so-called "*Beauregard*" claims). This argument is wholly insufficient to overcome transfer for several reasons.

First, even assuming that *Beauregard* claims were somehow immune from the effect of the Intel License (which they are not), it is undisputed that the vast majority of claims asserted against Juniper are not *Beauregard* claims. These non-*Beauregard* claims are clearly identified in both Implicit's complaint and contentions. *See* Dkt. 1 ¶ 57; McPhie Ex. 6. For example, claim 1 of the '683 Patent is directed to an apparatus with a "processing unit"—not merely a computer-readable medium. McPhie Ex. 13. Implicit's infringement allegations based on this claim (along with many other similar asserted claims) are clearly sufficient ████████████████████████████ ████████████████████████ Implicit has not even attempted any argument to the contrary.

At most, Implicit has suggested that it ***might*** eventually drop its non-*Beauregard* claims at some later point in the case, either by way of a properly noticed motion seeking to amend its infringement contentions or perhaps by way of a unilateral attempt (i.e., without leave of Court). However, to date, Implicit has taken no such action with respect to its infringement claims against Juniper, and it cannot fairly do so now in a belated attempt to avoid the impact of its own venue selection clause in the Intel License. Indeed, that venue selection clause was triggered the instant that Implicit filed its complaint against Juniper accusing products and functionality based on licensed Intel processors. *See Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*, 2019 WL 2904756, at \*2 (E.D. Tex. July 5, 2019) (transfer motions are evaluated "as of the time of filing"). Thus, in view of the currently operative allegations of the complaint, even a successful attempt by Implicit to amend its contentions would be unavailing. And even if Implicit were also permitted to untimely amend its pleadings (*cf.* Dkt. 152 at 4), it is far from clear that there is any amendment that could suffice to evade the impact of the forum selection clause. *See EVS Codec Techs., LLC*

*v. LG Elecs., Inc.*, 2019 WL 2904747, at *3 (E.D. Tex. July 5, 2019) (forum selection clause found to apply even after plaintiff amended complaint to expressly state it was no longer accusing products covered under license). In short, there is nothing Implicit can do to un-ring this bell.

Moreover (and in any event), contrary to Implicit's suggestion, there is nothing about the currently alleged infringement theories based on *Beauregard* claims of the asserted patents that causes those claims to fall outside the scope of the Intel License.[5] It is notable that Implicit's infringement contentions consistently rely on the same evidence—including references to SPUs and other Intel-based components—regardless of the class of subject matter claimed. *See, e.g.*, McPhie Ex. 6 at 2, 6, 378, 393 (citing "flow-based processing" by an "SPU" for claims 1 *and* 10). Moreover, the language of the claims themselves disproves Implicit's point. For example, claim 16 of the '378 Patent is not limited to "memories storing program instructions" but rather also requires a physical "***apparatus***" that is configured so that those instructions are "***executable***"— that is, that there must be a ***processor*** to process the claimed instructions. McPhie Ex. 18. By the same token, claim 10 of the '683 Patent does not merely claim a "computer-readable medium comprising software instructions"; it also recites a "computer system" for executing those instructions. McPhie Ex. 13. Again, Implicit's claim charts appear to recognize that these physical claim terms are actual limitations of the *Beauregard* claims, as the charts rely on much of the same evidence involving Intel processors that is cited for other claims. It is apparently only for purposes of this venue dispute that Implicit contends that these limitations should be ignored.

Finally, Implicit errs to the extent it suggests the mere existence of a disagreement regarding Juniper's license defense should be enough to overcome transfer. Implicit is, of course,

---

[5] Notably, *Beauregard* itself had nothing to do with infringement, patent licenses, or venue selection clauses. *See In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995). The issue in *Beauregard* had to do with the "printed matter doctrine," which is not relevant here. *Id.* at 1584.

welcome to present any arguments regarding the Intel License for consideration on the merits at an appropriate juncture. What Implicit cannot do is require *this* Court to address those arguments when it previously contracted to ████████████████████████████████████████ ████████ This transfer motion does not and should not require the Court to wade deep into the merits of infringement, claim construction, and contractual interpretation. This is not summary judgment; fact discovery is still pending, and the Court has not issued any claim construction ruling. Those types of arguments are for another day (and another place). *See Uniloc*, 2017 WL 959856, at *2 ("[S]ubstantive resolution of [the license] defense is neither appropriate nor necessary at this juncture."); *see also id.* at *4 (ordering transfer where parties' competing license arguments "demonstrate[d] nothing more or less than the fact that there is a live dispute between the parties").

## VI. THE PUBLIC INTEREST FACTORS FURTHER SUPPORT TRANSFER

Finally, the public interest factors further confirm that transfer is appropriate here, and do not remotely present any kind of "extraordinary circumstances" that might "clearly disfavor" transfer to the District of Delaware. *See Atl. Marine*, 571 U.S. at 52, 62.

For example, the local interest factor clearly favors transfer in this case, as Delaware courts have found they have a particularized interest in enforcing forum selection clauses that are governed by Delaware law, as is the case here. *See Advanced Reimbursement Mgmt., LLC v. Plaisance*, 2019 WL 2502931, at *4 (D. Del. June 17, 2019) ("[A]lthough this case involves only one Delaware entity, the Court finds that the existence of the parties' choice-of-law clauses provides Delaware with a 'substantial interest' in the parties' dispute.") (citing *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 168 (3d Cir. 2011)).

By contrast, this District has little (if any) localized interest in this case. As Juniper previously demonstrated, the accused Juniper products have no meaningful nexus to this venue. *See* Dkt. 18 at 1–2. And as this Court has previously noted, there is no local interest here based on

Implicit's presence. *See* Dkt. 18 at Exs. 24, 26. Accordingly, this factor favors transfer. *See Network Prot. Scis., LLC v. Juniper Networks, Inc.*, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) ("Even considering Plaintiff's small and fairly recent operations in Texas, the court concludes that the 'local interest' factor weighs in favor of transfer.").

Considerations of familiarity with governing law likewise favor transfer. The Intel License specifies that it must be interpreted in accordance with Delaware law. McPhie Ex. 1 § 12.11. Thus, the District of Delaware's familiarity with Delaware law favors transfer. *See Tessera*, 2018 WL 8014281, at *5 (granting transfer to Delaware where agreement specified Delaware law); *Uniloc*, 2017 WL 959856, at *4 (granting transfer based in part on fact that "the ultimate success of Cisco's license defense … will likely be controlled by … state law [of the transferee venue]").

The other public interest factors are neutral at best. The median time to trial for patent cases in the two districts is virtually identical (779 days in this District versus 775 days in Delaware). McPhie Ex. 19 at 3. And the license issues presented here do not present any particular problems of conflict of laws or in the application of foreign law. Thus, the relevant public interest factors collectively confirm that transfer is appropriate in this case.

## VII.   CONCLUSION

Implicit cannot meet its burden of demonstrating any extraordinary circumstance that could justify disregarding the agreed venue selection provision of the Intel License. To the contrary, Juniper's license arguments based on the Intel License are legally sound and easily clear the low hurdle of at least presenting a "non-frivolous" and "viable" defense. Thus, the parties' disputes regarding Juniper's license defense are necessarily governed by the terms of the Intel License itself. Juniper submits that this Court should simply enforce the plain terms of Implicit's bargained- for forum selection clause. Accordingly, this case should be transferred to the District of Delaware.

Date: December 9, 2019

Respectfully submitted,

By: */s/ Melissa R. Smith*

**IRELL & MANELLA LLP**
David C. McPhie
(CA State Bar No. 231520) [*pro hac vice*]
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone:   (949) 760-0991
Facsimile:   (949) 760-5200
Email:  dmcphie@irell.com

Jonathan S. Kagan
(CA State Bar No. 166039) [*pro hac vice*]
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199
Email:  jkagan@irell.com

**GILLAM & SMITH LLP**
Melissa Richards Smith
(Texas Bar No. 24001351)
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257
Email:  melissa@gilliamsmithlaw.com

**Attorneys for Defendant Juniper Networks, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 9th day of December 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Juniper has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on November 6, 2019. No agreement could be reached.

*/s/ Melissa R. Smith*
Melissa R. Smith

