**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IMPLICIT, LLC, | Civil Action No. 2:19-cv-37-JRG-RSP |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| JUNIPER NETWORKS, INC., | |
| *Defendant*. | |

**DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO DISQUALIFY**
**DR. KEVIN ALMEROTH AS AN EXPERT FOR PLAINTIFF IMPLICIT, LLC**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

    A.  Dr. Kevin Almeroth Works Extensively For Juniper In Other Patent
        Disputes Involving Related Subject Matter ............................................................ 2

    B.  Juniper Promptly Objects To Implicit's Disclosure Of Dr. Almeroth As
        An Expert Witness In This Case ........................................................................... 4

    C.  Implicit Ignores Juniper's Objections To The Conflicts Of Interest ................... 4

III.  DR. ALMEROTH SHOULD BE DISQUALIFIED BECAUSE HIS PRIOR
     WORK FOR JUNIPER PRESENTS A CONFLICT IN THIS CASE ........................... 5

    A.  Juniper Engaged Dr. Almeroth In A Confidential Relationship .......................... 5

    B.  Dr. Almeroth Had Extensive Access To Privileged And Confidential
        Juniper Information Relevant To This Case .......................................................... 7

    C.  The Conflicts Of Interest And Integrity Of The Judicial Process Favor
        Disqualification .................................................................................................... 9

IV.  CONCLUSION ........................................................................................................ 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Koch Refining Co. v. Boudreaux*,
    85 F.3d 1178 (5th Cir. 1996) .......................................................................................... *passim*

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
    2012 WL 708354 (E.D. Tex. Mar. 5, 2012) ..........................................................................8, 9

*Marvin Lumber Co. v. Norton*,
    113 F.R.D. 588 (D. Minn. 1986)...................................................................................................6

*Mobile Telecommc'ns Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*,
    2015 WL 11117313 (E.D. Tex. July 22, 2015) ..........................................................6, 7, 8, 10

*Nike, Inc. v. Adidas Am. Inc.*,
    2006 WL 5111106 (E.D. Tex. Sept. 29, 2006)....................................................6, 8, 9, 10, 11

*Sensormatic Elecs. Corp. v. WG Sec. Prod., Inc.*,
    2006 WL 5111116 (E.D. Tex. Dec. 5, 2019).........................................................................10

*Sol IP, LLC v. AT&T Mobility LLC*,
    2019 WL 6615465 (E.D. Tex. Dec. 5, 2019)....................................................................7, 8, 9

## I.       INTRODUCTION

Defendant Juniper Networks, Inc. respectfully moves to exclude Dr. Kevin Almeroth as an expert witness for Plaintiff Implicit, LLC, due to his extensive prior engagement as an expert for Juniper in multiple patent disputes involving overlapping and closely related subject matter. Juniper engaged Dr. Almeroth in 2013 in connection with patent litigation in the Northern District of California and District of Delaware as well as related IPR proceedings.  McPhie Decl. ¶¶ 6–8. As part of this engagement, Dr. Almeroth obtained access to significant privileged and confidential Juniper information including litigation strategy and substantive information regarding technologies, products, and prior art that are also implicated in this case such as flow/session functionalities, the Juniper JUNOS operating system, and Juniper's SRX products.  McPhie Ex. 2 at 2, 6.  Dr. Almeroth completed at least two expert reports for Juniper, sat for a deposition, and was ultimately compensated at least $85,808.02 for time spent in connection with his work for Juniper.  McPhie Decl. ¶¶ 8, 11, 13.

On August 2, 2019, Implicit disclosed Dr. Almeroth as a potential expert witness in this case.  McPhie Ex. 1.  Juniper objected within a matter of hours.  McPhie Ex. 2 at 7.  Specifically, Juniper informed Implicit that Dr. Almeroth had done "significant work for Juniper," had gained "access to confidential and privileged Juniper information, strategy, etc.," and that "there is risk of substantial overlap in subject matter here."  *Id.*  Later that same day, Juniper provided the case numbers for the corresponding litigation matters and IPR proceedings relating to Dr. Almeroth's prior retention by Juniper.  *Id.* at 6.  Juniper further noted that Dr. Almeroth's prior opinions had involved "flow/session technologies, intrusion and detection prevention, JUNOS, and the SRX products (the accused products in this case)."  *Id.*  In light of the "highly sensitive" nature of this conflict, Juniper requested confirmation that Implicit would have "no substantive communications with Dr. Almeroth that could give rise to a problem."  *Id.*  In response, Implicit assured Juniper,

"We have not had such communications with him [Dr. Almeroth].  And will not until we [Juniper and Implicit] talk."  *Id.* at 5.

Despite its assurances to the contrary, Implicit proceeded to engage in detailed substantive work with Dr. Almeroth—including analysis and development of expert opinions adverse to Juniper—without any further discussion with Juniper or other attempt to resolve the conflict.  *See* McPhie Ex. 2 at 4–5; McPhie Decl. ¶ 3.  Most recently, Dr. Almeroth's work with Implicit culminated in a 58-page expert report that was served on Juniper on November 26, 2019.  *See* McPhie Ex. 2 at 4–5.

Juniper now seeks exclusion of Dr. Almeroth's expert report and disqualification of Dr. Almeroth as an expert for Implicit going forward.  As detailed below, Dr. Almeroth received confidential and privileged information from Juniper related to the instant case, including substantive discussions with Juniper's counsel on litigation strategies for the very products and prior art at issue here.  Fifth Circuit precedent requires disqualification of an expert where, as here (1) there is an objectively reasonable basis for a confidential relationship with the expert, and (2) confidential information relevant to the instant case was disclosed during that prior relationship.  *Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996).

Accordingly, the Court should disqualify Dr. Almeroth and exclude his opinions based on his prior confidential relationship with Juniper.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Dr. Kevin Almeroth Works Extensively For Juniper In Other Patent Disputes Involving Related Subject Matter

Dr. Kevin Almeroth was retained by Juniper in 2013 in connection with Juniper's disputes with Palo Alto Networks ("PAN").  McPhie Decl. ¶¶ 6–8.  This engagement included (among other things) IPR proceedings for Juniper's U.S. Patent No. 7,107,612 (Case No. IPR2013-00369

and U.S. Patent No. 7,734,752 (Case No. IPR2013-00466), as well as related litigation in the District of Delaware (Case No. 1:11-cv-01258-SLR) and in the Northern District of California (Case No. 4:13-cv-04510-SBA), where the Juniper SRX products were accused of infringement. *Id.*, McPhie Ex. 2 at 2, 6; McPhie Ex. 3 ¶ 10.  In undertaking this engagement, Dr. Almeroth was under an obligation not to disclose or use Juniper's confidential information, including legal theories, confidential work product, or any other privileged or confidential information belonging to Juniper, except as allowed within the scope of his work for Juniper's disputes with PAN.[1]

The technical subject matter of Dr. Almeroth's retention included flow/session technologies, intrusion and detection prevention, the Juniper "JUNOS" operating system, and Juniper's SRX products.  *See* McPhie Ex. 2 at 2, 6.  For example, as Juniper's expert, Dr. Almeroth prepared expert reports in the IPR proceedings with opinions on issues of claim construction, invalidity, and non-obviousness (including secondary considerations based on Juniper's own SRX products).  *See, e.g.*, McPhie Ex. 4.  Moreover, Dr. Almeroth's opinions included analyses of the Decasper and Check Point references, which are also prior art references in the instant case. *Compare* McPhie Ex. 4 at 55, 60–62, *with* Ex. 5 at 1, 5–8 (discussing Decasper) *and, e.g.*, Ex. 5 at 2 (identifying Check Point FireWall-1 White Paper), 3 (identifying Check Point FireWall-1 Architecture and Administration), 4 (identifying Check Point FireWall-1 Security Target).[2]  In connection with his engagement, Dr. Almeroth had confidential and privileged discussions regarding Juniper's litigation strategies and the JUNOS and SRX technologies.  *See* McPhie Decl. ¶ 12; Ex. 2 at 2, 6; Ex. 4 at 45.  Dr. Almeroth produced at least two expert reports for Juniper and

---

[1] A copy of Dr. Almeroth's retention letter containing this agreement is available for in camera review by the Court if necessary.

[2] Likewise, as part of his work on Case No. IPR2013-00369, Dr. Almeroth also reviewed the Coss and Dietz references, which have been cited as prior art in this case as well.  *Compare* McPhie Ex. 4 at 54, 57–60 *with* McPhie Ex. 5 at 9.

was deposed in connection with one of Juniper's IPR proceedings.  McPhie Decl. ¶¶ 8, 11.  He was paid at least $85,808.02 in connection with his work for Juniper.  McPhie Decl. ¶ 13.

### B.    Juniper Promptly Objects To Implicit's Disclosure Of Dr. Almeroth As An Expert Witness In This Case

On August 2, 2019, Implicit sent an email disclosing its intent to retain Dr. Almeroth as a technical expert who would be adverse to Juniper in this case.  McPhie Ex. 1.  Juniper objected within hours, informing Implicit that Dr. Almeroth had done "significant work for Juniper in connection with its disputes with Palo Alto Networks a few years ago (including access to confidential and privileged Juniper information, strategy, etc.) and it appears there is risk of substantial overlap in subject matter here."  McPhie Ex. 2 at 7.  Later the same day, counsel for Juniper further detailed that it had "a number of substantive (confidential/privileged) meetings and communications with Dr. Almeroth as part of his prior work for Juniper" and provided the specific case numbers for the litigation and IPR proceedings relating to his earlier retention.  *Id.* at 6.  Counsel for Juniper also agreed to make itself available to discuss the issue further.  *Id.* at 5–6.  Implicit stated that it would not proceed with Dr. Almeroth until after the parties had met and conferred in an attempt to resolve the conflict issue.  *Id.* at 5.  However, Implicit did not engage in any further discussion with Juniper on this issue.  McPhie Decl. ¶ 3.  Instead, Implicit went forward with review of Juniper's source code using a different technical expert (Erik de la Iglesia), to whom Juniper had raised no objection.  *Id.*

### C.    Implicit Ignores Juniper's Objections To The Conflicts Of Interest

Despite Juniper's warnings and Implicit's assurances regarding Dr. Almeroth, Implicit proceeded to engage in substantive work with Dr. Almeroth adverse to Juniper.  For example, on November 26, 2019, Implicit served a detailed expert report from Dr. Almeroth that had been prepared at Implicit's request in connection with the claim construction proceedings in this case.

*See* McPhie Ex. 2 at 4–5.  Within 24 hours, Juniper reiterated the objections it had made months earlier, and requested that Implicit confirm it would withdraw the report and cease any further work with Dr. Almeroth in a manner adverse to Juniper.  *Id.* at 2–5.  To Juniper's surprise, Implicit refused this request, claiming that Juniper had never disclosed "[w]hen" and "[i]n which matters" Dr. Almeroth worked for Juniper.  *See id.* at 3.  Juniper then re-sent the body of its August 2019 email that had disclosed exactly "[w]hen" and "[i]n which matters" Dr. Almeroth worked with Juniper.  *See id.* at 2–3.

On December 2 and 4, 2019, the parties met and conferred in an attempt to reach an agreed resolution of these conflict issues.  McPhie Decl. ¶ 5.  These efforts were unsuccessful, necessitating the present motion.

## III.   DR. ALMEROTH SHOULD BE DISQUALIFIED BECAUSE HIS PRIOR WORK FOR JUNIPER PRESENTS A CONFLICT IN THIS CASE

Federal courts have the inherent authority to disqualify experts.  *Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir. 1996).  In determining whether to disqualify an expert witness, the movant must demonstrate that (1) there was an objectively reasonable basis for a confidential relationship with the expert, and (2) confidential information relevant to the instant case was disclosed to the expert during that prior relationship.  *Id.*  In addition, some courts consider the public interest in allowing or disqualifying an expert.  *Id.* at 1182–83.

As detailed below, all of these factors weigh in favor of disqualification of Dr. Almeroth based on his extensive prior work for Juniper on subject matter closely related to the issues presented in this case.

### A.    Juniper Engaged Dr. Almeroth In A Confidential Relationship

It is undisputed that Dr. Almeroth established a confidential relationship with Juniper with his extensive engagement as an expert in connection with Juniper's prior litigation and IPR

proceedings against PAN.  A confidential relationship exists where there are "longstanding series of interactions" between the former expert and the moving party which "have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Koch*, 85 F.3d at 1182 (alteration in original) (quoting *Marvin Lumber Co. v. Norton*, 113 F.R.D. 588, 591 (D. Minn. 1986)); *see also Nike, Inc. v. Adidas Am. Inc.*, 2006 WL 5111106, at *2 (E.D. Tex. Sept. 29, 2006) (quotation omitted).  This is in contrast to situations where "the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services." *See* 85 F.3d at 1182 (citation omitted).

In this case, the evidence demonstrates that Dr. Almeroth had a "longstanding series of interactions" with Juniper that is more than enough to establish the requisite legal standard.  Dr. Almeroth worked extensively with Juniper over the span of many months, during which time he was paid at least $85,808.02.  *See* McPhie Decl. ¶¶ 6, 13.  Further, in connection with his engagement, Dr. Almeroth completed two expert reports and was deposed on his expert testimony. *Id.* ¶¶ 8, 11.  Courts do not hesitate to find a "longstanding series of interactions" where, as here, an expert was earlier engaged as a consultant for multiple related proceedings and received a significant payment in fees.  *See Mobile Telecommc'ns Techs., LLC v. LG Elecs. Mobilecomm U.S.A., Inc.*, 2015 WL 11117313, at *1 (E.D. Tex. July 22, 2015) (undisputed that confidential relationship existed where an expert was retained in two legal proceedings and was paid over $30,000 for his work; relationship was more than a "simple consultation").

Notably, the *Koch* decision upheld a finding of a confidential relationship where the relationship was significantly less extensive than that of Dr. Almeroth's relationship with Juniper. *See Koch*, 85 F.3d at 1182.  In *Koch*, the court upheld a district court's finding of a confidential

relationship where an expert prepared two written reports and was paid $8,000 in fees.  *Id.*  In this case, Dr. Almeroth not only prepared two expert reports, but also participated in a deposition, and consulted significantly with Juniper's counsel on matters of strategy and the JUNOS and SRX technologies.  McPhie Decl. ¶¶ 11, 12.  Further, whereas the *Koch* confidential relationship was evidenced by only $8,000 in expert fees, in this case Dr. Almeroth received more than ten times that amount (well over $80,000).  McPhie Decl. ¶ 13.  Thus, Dr. Almeroth had a significant confidential relationship with Juniper, and Implicit has not disputed otherwise.

**B.      Dr. Almeroth Had Extensive Access To Privileged And Confidential Juniper Information Relevant To This Case**

Furthermore, as a result of his engagement by Juniper, Dr. Almeroth gained extensive access to privileged and confidential information that is highly relevant to the instant case, including substantive and strategic discussions with Juniper's counsel regarding Juniper's JUNOS operating system and Juniper's SRX devices (the accused products here).  *See, e.g.*, McPhie Decl. ¶ 12; Ex. 2 at 2, 6.

In examining the extent of prior access to relevant confidential information, courts consider whether the expert was exposed to "discussion of the [retaining party's] strategies in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses."  *Koch*, 85 F. 3d at 1181 (alteration in original, citation omitted).  In particular, prior confidential information is especially relevant to a subsequent dispute when that information encompasses products and/or prior art that is at issue in the later case.  *See, e.g.*, *Mobile Telecommc'ns*, 2015 WL 11117313, at *1 (prior retention encompassed "same devices accused in this case"); *see also Sol IP, LLC v. AT&T Mobility LLC*, 2019 WL 6615465, at *1 (E.D. Tex. Dec. 5, 2019).  In this case, Dr. Almeroth undertook significant review of confidential documents and

evidence regarding Juniper's JUNOS and SRX technologies and prior art references such as Decasper and Check Point, in addition to privileged strategic discussions with Juniper's counsel in preparing for reports and deposition testimony.   This meaningful overlap in issues weighs strongly in favor of exclusion. *Mobile Telecommc'ns*, 2015 WL 11117313, at *1.

Likewise, confidential information is relevant where the subject matter of the two cases is similar. *Nike, Inc. v. Adidas Am. Inc.*, 2006 WL 5111106, at *2 (E.D. Tex. Sept. 29, 2006) ("The evidence also shows that this confidential information is relevant to this case because the subject matter in the [prior] case is substantially similar to the subject matter in this case."); *see also Sol IP*, 2019 WL 6615465, at *1 (prior engagement was relevant where the patents in both cases involved closely related technologies).   Dr. Almeroth's prior involvement with Juniper included analysis and access to confidential information regarding flow/session technologies and intrusion and detection prevention, technologies which Implicit has accused of infringement here. *See, e.g.*, Dkt. 1 ¶ 33, 57–59 (citing SRX products including "components that implement flow-based processing"); Dkt. 164-9 at 1–14 (claim chart citing JUNOS, SRX products, and "intrusion prevention"); *see also* McPhie Decl. ¶ 12, Ex. 2 at 2, 6.  This overlap in subject matter provides additional reason for disqualifying Dr. Almeroth.   *See Sol IP*, 2019 WL 6615465, at *1 (disqualifying expert based on prior "extensive work" for the movant "on the same accused products as this case, on patents rooted in very closely related technology").

During the parties' meet-and-confer, counsel for Implicit relied upon *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, 2012 WL 708354, at *1–3 (E.D. Tex. Mar. 5, 2012) in arguing against disqualification.   However, the *Lake Cherokee* case is inapposite because it involved an expert who was the named inventor of the patents-in-suit, which is not the case here. *See id.*   Specifically, the Court made the unremarkable point that because the expert was a named

inventor of the patents-in-suit, his "ability to act as an expert outside of the infringement arena is unlikely to have been compromised by his exposure to Marvell's product roadmaps regarding storage." *Id.* at *3.  Indeed, this Court specifically reiterated in a later case that the testimony in *Lake Cherokee* was permitted because the expert was an inventor.  *See id.*; *Sol IP*, 2019 WL 6615465, at *1 ("But that was because the [*Lake Cherokee*] expert was the named inventor on both of the patents-in-suit, and therefore had unique first hand knowledge.  Plaintiff can make no such showing here.").  Of course, Dr. Almeroth is not a named inventor for any of the patents-in-suit in this case.  Therefore, the *Lake Cherokee* decision does nothing to alter the conclusion that disqualification is proper here.

### C. The Conflicts Of Interest And Integrity Of The Judicial Process Favor Disqualification

Finally, consideration of public interests further weighs in favor of disqualification.  In evaluating whether disqualification is in the public interest, courts balance competing policy objectives. *Nike*, 2006 WL 5111106, at *3.  For example, disqualification is in the public interest when it serves to eliminate conflicts of interest that could otherwise threaten the integrity of the judicial process.  *See id.* (citing *Koch*, 85 F.3d at 1182).  These conflicts of interest threaten the appearance of judicial integrity when privileged or confidential information obtained during an expert's prior retention by a party could be used against that party in subsequent litigation.  *See id.* ("The risk is too great that [the expert] would use the information he was given, even if inadvertently, in some manner that would harm Adidas.").

In *Nike*, the court found that conflicts of interest warranted disqualification where Nike's expert had previously been involved in two matters with Adidas.  *Id.*  The *Nike* court recognized the inherent conflicts presented by the expert's competing obligations: on the one hand, the expert

had already agreed to preserve the confidentiality of information it obtained from Adidas; on the other hand, the expert was hired to assist Nike in its case *against* Adidas.  *See id.*

Here, as in *Nike*, Dr. Almeroth participated in significant confidential strategy discussions and substantive analysis on products and prior art related to the present case.  As in *Nike*, Dr. Almeroth owes ongoing duties of confidentiality to Juniper relating to its prior retention.  Yet Dr. Almeroth cannot maintain his duties to Juniper while developing strategies ***against*** Juniper in litigation involving the same or similar technologies, products, and prior art.  *See id.*; *see also Sensormatic Elecs. Corp. v. WG Sec. Prod., Inc.*, 2006 WL 5111116, at *4 (E.D. Tex. Feb. 9, 2006) (integrity of the judicial process was threatened where expert owed obligations due to his prior expert retention by the moving party, supporting disqualification).  Thus, Dr. Almeroth's conflicts of interest threaten the integrity of the judicial process against the public interest.

Additionally, courts evaluate the basic fairness of the parties' conduct in weighing the public interest.  *See Koch*, 85 F.3d at 1183 (criticizing one party for its failure to notify opposing party of its intent to use expert that presented conflicts).  For example, in *Mobile Telecommc'ns*, the court noted with favor the fact that "Defendant objected within days of learning of [the expert's] involvement and was diligent in seeking disqualification."  2015 WL 11117313, at *1 (E.D. Tex. July 22, 2015).  In promptly objecting and seeking disqualification, the defendant reduced the potential for prejudice to the plaintiff, in favor of the public interest.  *See id.*

Here, counsel for Juniper likewise sought to reduce prejudice to the plaintiff.  Within mere hours of Implicit's disclosure, Juniper objected to Implicit's use of Dr. Almeroth as an expert.  Moreover, on the same day, Juniper detailed its concerns regarding Dr. Almeroth to Implicit and offered to discuss the matter further.  Thus, Juniper's attempt to reduce prejudice to Implicit by

promptly objecting (and now diligently seeking disqualification) is in favor of the public interest. *See id.*

To the extent that Implicit argues it will be prejudiced by disqualification, any possible prejudice is attributable to Implicit's own conduct in intentionally disregarding Juniper's warnings regarding the conflict with Dr. Almeroth.  Indeed, Implicit assured Juniper it would not move forward with Dr. Almeroth until Implicit met and conferred with Juniper to resolve the conflict, yet Implicit never had such a conversation with Juniper.  Thus, if anything, it is ***Juniper*** that has been unfairly prejudiced in relying upon Implicit's assurances that it would not proceed with Dr. Almeroth until these issues were resolved.

Finally, there is no prejudice to Implicit in having to use a different technical expert in this case other than Dr. Almeroth.  At the time of Juniper's objections, Implicit had "ample opportunity to hire another expert," and in fact has already hired and worked with at least one other technical expert (Erik de la Iglesia) to which  Juniper has raised no objection. *See Nike*, 2006 WL 5111106, at *3 (public interest supported disqualification where other experts were available); McPhie Decl. ¶ 3. Thus, disqualification of Dr. Almeroth is in the public interest.

## IV.    CONCLUSION

For the foregoing reasons, the Court should disqualify Dr. Kevin Almeroth as an expert witness for Implicit and exclude his expert opinions from consideration in this case.

Date: December 27, 2019                    Respectfully submitted,

By: */s/ Melissa R. Smith*

**IRELL & MANELLA LLP**
David C. McPhie
CA State Bar No. 231520 (*pro hac vice*)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone:   (949) 760-0991
Facsimile:   (949) 760-5200

Email:  dmcphie@irell.com

Jonathan S. Kagan
CA State Bar No. 166039 (*pro hac vice*)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:  (310) 277-1010
Facsimile:    (310) 203-7199
Email:  jkagan@irell.com

**GILLAM & SMITH LLP**
Melissa Richards Smith
Texas Bar No. 24001351
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:    (903) 934-9257
Email:  melissa@gilliamsmithlaw.com

**Attorneys for Defendant Juniper Networks, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 27th day of December 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Juniper has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on December 2, 2019 and on December 4, 2019. No agreement could be reached.

*/s/ Melissa R. Smith*
Melissa R. Smith