**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| IMPERVA, INC. | § | Case No. 2:19-cv-00040-JRG-RSP |
| | § | LEAD CASE |
| | § | |
| JUNIPER NETWORKS, INC. | § | Case No. 2:19-cv-00037-JRG-RSP |
| | § | |
|     Defendants. | § | |

**PLAINTIFF IMPLICIT, LLC'S OPPOSITION TO DEFENDANT JUNIPER
NETWORKS, INC.'S MOTION TO DISQUALIFY DR. KEVIN ALMEROTH AS AN
EXPERT FOR PLAINTIFF IMPLICIT, LLC (DKT. 177)**

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...........................................................................................................ii

**I.**    **INTRODUCTION** ................................................................................................. 1

**II.**   **FACTUAL BACKGROUND** ................................................................................ 2

**III.**  **APPLICABLE LAW** ............................................................................................ 4

**IV.**  **ARGUMENT** ......................................................................................................... 4

    A. By waiting five months before seeking disqualification, Juniper waived
       its objection to Implicit's use of Dr. Almeroth as an expert adverse to Juniper ..... 4

    B. Implicit's use of Dr. Almeroth as an expert in the Juniper case does not
       present a conflict or undermine the integrity of the judicial process ....................... 9

    C. Disqualifying Dr. Almeroth and striking the Almeroth Declaration would be
       unfairly prejudicial to Implicit .............................................................................. 13

**V.**    **CONCLUSION** .................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Central Milk Producers Coop. v. Sentry Food Stores*,
    573 F.2d 988 (8th Cir. 1978) ............................................................................................. 8

*Koch Ref. Co. v. Jennifer L. Boudreaux MV*,
    85 F.3d 1178 (5th Cir.1996) ............................................................................................. 4

*Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*,
    No. 2:10-cv-216-JRG, 2012 WL 708354 (E.D. Tex. Mar. 5, 2012) ................................. 11

*Nike, Inc. v. Adidas Am. Inc.*,
    No. 9:06-cv-43, 2006 WL 5111106 (E.D. Tex. Sept. 29, 2006) ...................................... 12

*Travelers Ins. Co. v. Liljeberg Enterprises*,
    38 F.3d 1404 (5th Cir. 1994) ............................................................................................. 8

## I.      INTRODUCTION

The Court should deny defendant Juniper Networks, Inc.'s Motion to Disqualify Dr. Kevin Almeroth as an Expert for Plaintiff Implicit, LLC (Dkt. 177) for several reasons.

First, Juniper waived its objection to Dr. Almeroth as an expert on claim construction issues as follows:

(a)  Juniper did not file a motion to seek a protective order within 15 days (by August 17, 2019) of making its objection as required by paragraph 5(e)(2) of the agreed Protective Order (Dkt. 111) and did not contact Implicit about the issue between August 7 to November 27, 2019;

(b) On November 4, 2019, Implicit disclosed Dr. Almeroth as its expert on claim construction issues in its Patent Rule 4-2 disclosures, but Juniper did not promptly object or raise any concerns with Implicit. It finally objected on November 27, 2019, but only after reviewing Dr. Almeroth's claim-construction declaration ("Almeroth Declaration"); and

(c) After objecting on November 27, 2019, Juniper again did not to seek a protective order within 15 days (by December 12, 2019) of making its objection as required by the Protective Order.  In fact, Juniper waited another month before finally filing its motion on December 27, 2019.

Because Juniper failed to seek disqualification for nearly **five months** after being aware of Implicit's intent to use Dr. Almeroth as an expert, Juniper has waived the issue.

Second, Implicit's use of Dr. Almeroth as a claim-construction expert in this consolidated action (which includes Juniper) does not present a conflict or undermine the integrity of the judicial process because:

(a) Dr. Almeroth is only providing expert opinions on claim construction issues, which focus on certain aspects of the Implicit Patents, not on Juniper's products or technologies.  Dr. Almeroth will not be serving as an infringement or validity expert in the Juniper case;

(b) Dr. Almeroth's claim-construction declaration addresses different subject matter than how Juniper's products processed flows back in 2014, and it does not address or rely on any prior knowledge of Juniper's products, technologies, or Juniper's confidential or privileged information.

(c) Public policy considerations weigh against disqualification.

Third, disqualifying Dr. Almeroth and striking the Almeroth Declaration would be unfairly prejudicial to Implicit given Juniper's lack of diligence, failure to reduce the prejudice to Implicit, and Implicit's inability to use Dr. Almeroth's declaration in the consolidated *Markman* proceedings.  For these reasons, Juniper's motion should be denied.

## II.    FACTUAL BACKGROUND

On August 2, 2019, Implicit disclosed Dr. Kevin Almeroth as a technical expert witness in this consolidated case.  Later that day, Juniper objected to Implicit's use of Dr. Almeroth based on prior work that he performed for Juniper beginning in 2013 in proceedings adverse to Palo Alto Networks.  Counsel for Juniper and Implicit conferred via email that day but did not resolve Juniper's objections.  On August 6, 2019, they tried to set up a phone call to confer further, but the call did not happen.  Juniper made no further attempts to confer with Implicit.

The Protective Order (Dkt. 111) at paragraph 5(e)(2) specifies a procedure and deadline for resolving disputes concerning the retention of experts:

The Parties agree to promptly confer and use good faith to resolve any such objection. **If the Parties are unable to resolve any objection, the objecting Party**

**may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.** The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

Dkt. 111, ¶ 5(e)(2) at 4 (emphasis added).

By August 17, 2019, which was Juniper's deadline to seek a protective order, Juniper had not filed any such motion. Nor had Juniper sought Implicit's agreement to extend the deadline by agreement. Nor had Juniper obtained Implicit's agreement to not use Dr. Almeroth as an expert against Juniper, and Implicit never offered to withdraw Dr. Almeroth as an expert.

From August 7 through November 27, 2019, Juniper did not contact Implicit concerning Dr. Almeroth.

On November 4, 2019, Implicit disclosed Dr. Almeroth as its expert on claim construction-related issues in its Patent Rule 4-2 disclosures. *See* Exhibit A, Implicit's P.R. 4-2 Disclosures, dated November 4, 2019, at 2-3 ("Implicit also identifies as extrinsic evidence expert testimony from Kevin C. Almeroth, Ph.D., and/or Erik de la Iglesia regarding the state of the art, technical background, and how a person of ordinary skill in the art at the time of filing and/or invention of the subject claims would have understood the meaning of the claim terms below . . ."). Juniper did not promptly object. In fact, Juniper did not object for over three weeks.

On November 26, 2019, Implicit served Dr. Almeroth's claim-construction declaration ("Almeroth Declaration"), which was limited to addressing certain claim construction issues. *See* Exhibit B, Almeroth Declaration. It does not contain or rely on any confidential or privileged information obtained from Juniper or any of Juniper's products, technologies, or strategies.

On November 27, 2019, after being served with the Almeroth Declaration, Juniper reiterated its objection to Dr. Almeroth.  The parties discussed Juniper's objection that day via email and by phone on December 2 and 4, 2019.  No agreement was reached to resolve the impasse.

After objecting on November 27, 2019, Juniper again did not to seek a protective order within 15 days (by December 12, 2019) of making its objection as required by the Protective Order.

Juniper did not file its disqualification motion until December 27, 2019.

## III.    APPLICABLE LAW

The Court has the inherent power to disqualify an expert. *Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir.1996). In *Koch*, the Fifth Circuit adopted the two-step analysis used by lower courts in disqualification cases: (1) whether the opposing party had a confidential relationship with the expert; and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert. *Id*. (citation omitted).  The party seeking disqualification bears the burden of proving these elements, and only if both prongs are met should the witness be disqualified. *Id*.  A number of courts also consider the public interest in deciding whether or not to allow a given expert to testify. *Id*.

## IV.    ARGUMENT

### A.    By waiting five months before seeking disqualification, Juniper waived its objection to Implicit's use of Dr. Almeroth as an expert adverse to Juniper.

In its motion, Juniper claims that it exercised diligence in seeking disqualification of Dr. Almeroth.  But Juniper did not file its motion to disqualify Dr. Almeroth until 147 days—nearly *five months*—after Juniper raised its objection on August 2, 2019.  A five-month delay does not paint a picture of diligence; it shows a lack of diligence.

It is true that Juniper objected on the same day that Implicit disclosed Dr. Almeroth as a potential expert.  But raising an objection does not resolve it nor is it the final word on whether Juniper exercised diligence.

Juniper objected on the basis that:

Dr. Almeroth did significant work for Juniper in connection with its disputes with Palo Alto Networks a few years ago (including access to confidential and privileged Juniper information, strategy, etc.) and it appears there is risk of substantial overlap in subject matter here. **Please confirm that Implicit does not intend to go forward with Dr. Almeroth** and let us know what steps (if any) you have taken to prevent improper access to any confidential and privileged Juniper information from him."

*See* Exhibit C, at 7 (emphasis added).

In response, Counsel for Implicit did not agree that Implicit would not "go forward" with using Dr. Almeroth.  He, however, did inform Juniper that "nothing produced by Juniper in this case has been transmitted to Dr. Almeroth" and "And we have not discussed Juniper at all with him." *Id.,* at 6.

Counsel for Juniper then replied:

I appreciate your attention to this matter -- this is obviously a highly sensitive issue for Juniper and **we want to ensure Implicit has no substantive communications with Dr. Almeroth that could give rise to a problem.** Dr. Almeroth was retained by Juniper in 2013 and provided assistance including deposition testimony and multiple expert reports in connection with Juniper's disputes with Palo Alto Networks. His involvement included IPR proceedings (Case Nos. IPR2013-00466 and IPR2013-00369) and also related to the litigation proceedings in Delaware and N.D. Cal. (1:11-cv-01258-SLR and 5:13-cv-04510-SBA). The technical subject matter included flow/session technologies, intrusion detection and prevention, JUNOS, and the SRX products (also accused here). I personally had a number of substantive (confidential/privileged) meetings and communications with Dr. Almeroth as part of his prior work for Juniper.

*Id*.

Counsel for Implicit then responded, "We have not had such communications with him. And will not until we talk. Am in the office Monday. Let me know when you free up." *Id*., at 5.

Juniper asserts that this response indicates that Implicit agreed it would not proceed with Dr. Almeroth as an expert against Juniper. Dkt. 177 at 4. That is incorrect. Implicit did **not** agree to stop working with Dr. Almeroth in its case against Juniper. Implicit agreed only that it would not have substantive communications with Dr. Almeroth concerning the work that he did for Juniper including any confidential or privileged information or communications, if any, that Dr. Almeroth obtained in the course of that work. Indeed, it remains true today that counsel for Implicit has not had such substantive discussions with Dr. Almeroth. The Almeroth Declaration does not rely on Dr. Almeroth's prior work for Juniper or any confidential or privileged information obtained from Juniper.

Juniper and Implicit were still at an impasse as of August 6, 2019 because their counsel exchanged emails in an attempt to set up a call for that, which did not occur. *Id.* Although a phone call did not occur on August 6, 2019, nothing prevented Juniper from setting up another call or emailing Implicit to resolve the dispute. "The objecting Party shall have the burden of proving the need for a protective order." Dkt. 111, Protective Order at ¶ 5(e)(2) at 4. But Juniper made no further attempt to contact Implicit.

Juniper's lack of diligence continued. Pursuant to paragraph 5(e)(2) of the Protective Order, Juniper as the objecting party had fifteen days after objecting to file a motion with the Court to resolve the objection if it could not be resolved by the parties. If Juniper had filed a motion by the August 17, 2019 deadline, this issue could have been resolved long ago. Yet despite knowing that its objection remained unresolved, that Implicit had not agreed to stop using Dr. Almeroth as an expert against Juniper, and that it had not even asked Implicit to extend the deadline by agreement, Juniper did not file a motion with the Court by the August 17, 2019 deadline or even soon thereafter.

Juniper does not take responsibility for this delay; it instead blames Implicit. But it is not Implicit's fault that Juniper did not promptly file a motion.  Nothing prevented Juniper from filing a motion as early as August, 2019.   Juniper bears full responsibility to promptly seek protection/disqualification given that it alleged that Implicit's retention of Dr. Almeroth was problematic and was of a "highly sensitive" nature.   But Juniper did not follow through by promptly filing a motion or even following up with a phone call to address the issue.

Given that Juniper did not seek to confer with Implicit after August 6, 2019 and did not file a motion by the August 17, 2019 deadline or even soon thereafter, Implicit understood that, after August 17, it was free to use Dr. Almeroth as an expert in this case.  This belief was reinforced by Juniper's ongoing lack of communication with Implicit about the issue.  Indeed, for the remainder of August, Juniper did not contact Implicit to discuss Dr. Almeroth.  And in September, Juniper did not contact Implicit to discuss Dr. Almeroth.  Then came October, and Juniper did not contact Implicit to discuss Dr. Almeroth.  For an issue that was allegedly of a "highly sensitive" nature, Juniper remained silent and did nothing about this issue through October 2019.

Juniper's lack of diligence flowed into November, 2019.  On November 4, 2019, Implicit disclosed Dr. Almeroth to Juniper a second time: this time as Implicit's expert on claim construction-related issues in its Patent Rule 4-2 disclosures.  *See* Exhibit A, at 2-3. Juniper omits this crucial fact from its motion.  Having known since August, 2019 that Implicit intended to use Dr. Almeroth in the case and then again upon receiving notice in November, 2019 via Implicit's P.R. 4-2 disclosures, one would have expected that Juniper would immediately object.  But Juniper said and did nothing about it for over three weeks. And it has offered no explanation for that delay.

But there's more.  Juniper did not raise an objection until November 27, 2019 and only did so after reviewing the Almeroth Declaration.  *See* Exhibit C, at 4.  Juniper and Implicit conferred

on November 27 and December 2 and 4, but no resolution was reached.  *Id*. at 1.  Juniper again did not to seek a protective order within 15 days (by December 12, 2019) of making its objection as required by the Protective Order or even soon thereafter.  Juniper did not file its motion until December 27, 2019.

Yet, Juniper claims that it was the model of diligence. The timeline shows otherwise.  After notifying Implicit on August 2, 2019 of its objection to Dr. Almeroth, Juniper did not file a motion to resolve its objection for ***147 days—nearly five months***.  Throughout those five months, there was never an agreement between Juniper and Implicit that Implicit would withdraw Dr. Almeroth as an expert or would not use him as an expert in the Juniper case.  An email from counsel for Juniper to Implicit on November 27, 2019 is telling in that it does not allege that Implicit agreed in August, 2019 to not use Dr. Almeroth as an expert or allege that Implicit had broken any such agreement. *See* Exhibit C, at 4-5.  Counsel for Juniper alleged that Implicit did not heed Implicit's "warning" but did not allege that Implicit had broken an agreement. *Id*.  And that is because there was no such agreement.  Similarly, subsequent emails from counsel for Juniper also do not allege that Implicit had agreed to not use Dr. Almeroth as an expert.  *Id*., at 1-3.  These emails undermine Juniper's current assertion that Implicit had agreed in August, 2019 that it would not proceed with Dr. Almeroth as an expert against Juniper.

"[I]t is well-settled that — for obvious reasons — one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification" *Travelers Ins. Co. v. Liljeberg Enterprises*, 38 F.3d 1404, 1410 (5th Cir. 1994); *Central Milk Producers Coop. v. Sentry Food Stores*, 573 F.2d 988, 992 (8th Cir. 1978) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."). Nothing prevented Juniper from filing a motion by the August 17, 2019

deadline pursuant to the Protective Order, filing one soon thereafter, or filing one shortly after Implicit's second disclosure of Dr. Almeroth on November 4, 2019.  Juniper does not acknowledge the Protective Order in its motion.  Perhaps Juniper will contend in reply that the agreed Protective Order does not apply.  But it does apply as it is the Court's and the parties' agreed mechanism for ensuring that, once an expert is disclosed, the parties must confer and, if there is an impasse, the objecting party has a limited window of time to file a motion for protection.  All of the relevant facts were known to Juniper by August 2, 2019.  Juniper ignored this requirement altogether, not just once, but twice. Even if the Protective Order does not apply, once Implicit disclosed Dr. Almeroth on August 2, 2019, the clock began running on Juniper to **promptly** file a motion if the parties have reached an impasse.  Juniper let that clock run for **147 days**, which by any measure is not prompt.

These facts establish waiver by Juniper.  Juniper had multiple opportunities to seek a prompt resolution of this issue but did not do so.  Juniper only has itself to blame for not acting promptly.  Granting Juniper's motion under these circumstances would encourage other litigants to believe that, as long as they have made an initial objection to an expert, they will not be bound by deadlines in protective orders and they do not need to promptly file a motion to resolve the objection.  Evidently, Juniper believes that delaying for five months is being diligent.

Juniper left the barn door open for five months and now, after Implicit has relied on Juniper's inaction and had Dr. Almeroth issue his Declaration, Juniper seeks to close the barn door and block Implicit from using Dr. Almeroth.  This is highly unfair and prejudicial to Implicit, particularly at this point in the claim-construction process.

Given Juniper's failure to exercise diligence, the Court should deny Juniper's motion.

**B.    Implicit's use of Dr. Almeroth as an expert in the Juniper case does not present a conflict or undermine the integrity of the judicial process.**

Implicit's use of Dr. Almeroth as a claim-construction expert in the Juniper case does not present a conflict or undermine the integrity of the judicial process for several reasons.

First, Dr. Almeroth's role as an expert in the case against Juniper is limited to providing his expert opinions on claim-construction issues as set forth in the Almeroth Declaration.  Counsel for Implicit has informed Juniper of this fact and that Dr. Almeroth has not and will not be serving as an infringement or validity expert in the Juniper case.   Juniper's assertion that there is overlapping and closely related subject matter between Dr. Almeroth's prior work for Juniper and his work in this case is incorrect because Dr. Almeroth's work in the Juniper case is limited to providing claim-construction opinions, which apply equally to all defendants and are not dependent on anything specific to Juniper or any other defendant or any other confidential or privileged information.

Dr. Almeroth's declaration only provides opinions and analysis limited to how those of skill in the art by *1999* would have understood the TCP and application processing claimed in Implicit's patents (*e.g.*, how network devices historically have processed packets up and down the protocol stack using pointers and other mechanisms to convert formats).  *See* Exhibit B, ¶¶ 99-108 (packet processing); ¶¶ 109-156 (how software routines identify the format of a packet and convert it into another format).  That analysis is solely based on public information and does not relate to Juniper's products or even Juniper's alleged broader subject matter of "flow/session technologies, intrusion detection and prevention" as that state of the technology existed in *2014*.  There is no meaningful overlap in issues that weigh in favor of exclusion.  The declaration also applies to claim-construction positions advanced by Fortinet and Imperva—it is not directed to an issue unique to Juniper.

The Almeroth Declaration contains no confidential or privileged information and does not rely on them for Dr. Almeroth's opinions expressed therein.  Implicit's counsel has not shown Dr. Almeroth any of Juniper's confidential information produced in this case, although it can freely do so given that Juniper waived its objection by failing to file a motion seeking a protective order by August 17, 2019 as discussed above. And Dr. Almeroth has not disclosed any of Juniper's privileged or confidential information to Implicit based on his prior work for Juniper.

Due to this difference in subject matter and the unique circumstances of this case (a claim-construction declaration served on all Defendants), Juniper's Motion should be denied.  In *Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc*., No. 2:10-cv-216-JRG, 2012 WL 708354, at *1-3 (E.D. Tex. Mar. 5, 2012), this Court allowed plaintiff to consult with its expert on issues relating to claim construction and patent validity, but not as to alleged infringement.  The expert was a former Senior Director at defendant Marvell, left Marvell only three years prior, and was a named inventor of the patents-in-suit.  Juniper argues that the result in *Lake Cherokee* turned on the fact that the expert was a named inventor.  Although the Court indicated, in considering the public interest to allow or not allow the expert to testify, that the "the public interest weighs equally clearly in favor of allowing Lake Cherokee an opportunity to consult with the actual inventor of the patents-in-suit on issues relating to claim construction and validity," the Court did not state that its decision turned on or was based primarily on the fact that the expert was the named inventor. *Id*., at *3.  And with respect to the Court's view that "[I]t is equally apparent that Foland's ability to act in an expert capacity outside of the infringement arena is unlikely to have been compromised by his exposure to Marvell's product roadmaps regarding storage," the Court did not, as Juniper argues, base that view on the fact that the expert was a named inventor. *Id.*  That portion of the Court's analysis does not reference the expert's named inventor status. *Id.*  As in

*Lake Cherokee*, in this case, Dr. Almeroth's ability to act in an expert capacity in the claim construction context is unlikely to be compromised by his exposure in 2013-2014, which is not close in time, to Juniper's confidential and privileged information and does not involve Juniper's products. Dr. Almeroth is also Implicit's technical expert for the Fortinet and Imperva cases, and Implicit should be allowed to provide Dr. Almeroth's claim-construction opinions to respond to a common claim-construction position that all Defendants raise.

Third, public policy considerations weigh against disqualification. Because Implicit is only using Dr. Almeroth's opinions on limited claim-construction issues, that work is unlikely to be compromised by his exposure in 2013-2014 to Juniper's confidential and privileged information, and there is no conflict of interest that could potentially undermine the integrity of the judicial process. Juniper relies on *Nike* to support disqualification, but that case is distinguishable because Dr. Almeroth's declaration is limited to claim-construction issues and does not involve or rely on Juniper's confidential information or its technologies, products, patents, or strategies. *Nike, Inc. v. Adidas Am. Inc.,* No. 9:06-cv-43, 2006 WL 5111106 (E.D. Tex. Sept. 29, 2006).

The fairness of the parties' conduct weighs heavily against disqualification. Juniper admits that diligence in promptly objecting and seeking disqualification is an important consideration. Dkt. 177 at 10. The timeline, however, shows that Juniper was not diligent. Though it could have filed a Motion in early August, 2019, Juniper did not file a motion until December 27, 2019. That timeline also shows that Juniper did not try to reduce prejudice to Implicit.

Any prejudice to Juniper is outweighed by Juniper's lack of diligence. The greater the harm that Juniper alleges it will suffer if Dr. Almeroth is not disqualified, the greater the burden on Juniper to promptly seek disqualification. The integrity of the judicial process would be better

served by holding Juniper to its burden, as contemplated by the Protective Order, of **promptly** seeking disqualification if there is a conflict that the parties have not resolved by agreement. Disqualifying Dr. Almeroth when Implicit has given early, prompt and multiple notices about its intention to use him as an expert while Juniper waited 147 days before seeking disqualification would undermine the judicial process and encourage gamesmanship.

Juniper's motion should be denied for these reasons even if the Court concludes that Juniper's failure to seek disqualification for 147 days does not amount to waiver.

### C.     Disqualifying Dr. Almeroth and striking the Almeroth Declaration would be unfairly prejudicial to Implicit.

Finally, striking the Almeroth Declaration would unfairly prejudice Implicit.  Juniper's waiver of its objection due to its lack of diligence and the absence of a conflict, as discussed above, are independent reasons for why striking the Almeroth Declaration would be unfair to Implicit.  In the months leading up to the issuance of the Almeroth Declaration, Implicit saw that Juniper chose not to file a motion by the August 17, 2019 deadline contemplated by the Protective Order or even soon thereafter and saw that Juniper did not reach raise the issue again for the rest of August and all of September and October.  Then, even after Implicit identified Dr. Almeroth again as an expert in its P.R. 4-2 Disclosures on November 4, 2019, Juniper did not promptly object.  Given Juniper's consistent lack of action, it was reasonable for Implicit to proceed with having Dr. Almeroth issue his Declaration.  Then Juniper waited over three weeks after it was served with notice of Implicit's intent to rely on a declaration from Dr. Almeroth to object.  It would be unfair and highly prejudicial to Implicit if the Almeroth Declaration is struck because Juniper laid behind the log for so long.  Implicit should not be left with no supporting declaration from its claim-construction expert when it gave prompt disclosure of Dr. Almeroth in August 2019 and again in November 2019 while Juniper waited 147 days before seeking disqualification.

Also, the Almeroth Declaration was served in this consolidated case for use in the Juniper, Fortinet, and Imperva cases.  Even if the Court is inclined to strike the Almeroth Declaration with respect to the Juniper case, it should not strike it as to Implicit's case against Fortinet and Imperva, which have not objected.  Juniper would have the Court strike the Almeroth Declaration as to Implicit's case against every defendant, which would be unfair to Implicit.

## V.      CONCLUSION

Implicit respectfully requests that this Court deny Juniper's motion to disqualify Dr. Kevin Almeroth.

Dated:  January 17, 2020                         Respectfully Submitted,

By: */s/ Edward Chin*
William E. Davis, III (TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt (TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty William Wilson
(TX Bar No. 24106583)
twilson@bdavisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for Plaintiff Implicit, LLC*

---

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this January 17, 2020.

/s/ *Edward Chin*
Edward Chin