# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br><br>   *Plaintiff*,<br> v.<br>IMPERVA, INC.,<br><br>   *Defendant*. | Civil Action No. 2:19-cv-40-JRG-RSP<br>LEAD CASE |
| IMPLICIT, LLC,<br><br>   *Plaintiff*,<br> v.<br>FORTINET, INC.,<br><br>   *Defendant*. | Civil Action No. 2:19-cv-39-JRG-RSP |
| IMPLICIT, LLC,<br><br>   *Plaintiff*,<br> v.<br>JUNIPER NETWORKS, INC.,<br><br>   *Defendant*. | Civil Action No. 2:19-cv-37-JRG-RSP |

**DEFENDANTS' JOINT OPPOSITION TO IMPLICIT'S MOTION TO AMEND
FOURTH AMENDED DOCKET CONTROL ORDER**

I.  INTRODUCTION

Defendants Juniper Networks, Inc., Imperva, Inc., and Fortinet, Inc. (collectively "Defendants") hereby jointly oppose the motion of Plaintiff Implicit, LLC to amend the Court's Fourth Amended Docket Control Order dated December 19, 2019 (Dkt. 172) (the "Motion").

The Court should deny the Motion as Implicit has failed to establish any good cause for its proposed extensions to the case schedule. Notably, Implicit filed its Motion just four days after its former lead counsel (Hosie Rice LLP) withdrew from this case with an express representation that "*[t]he withdrawal of Hosie Rice will not delay the proceedings*." Dkt. 189 at 1 (emphasis added). Yet delay is exactly what Implicit now seeks in its Motion.

Implicit offers just two justifications for its proposed modifications to the case schedule, neither of which has any merit. First, Implicit argues that it would be more "efficient" to delay the fact and expert deadlines until after *Markman* proceedings are completed. Yet this issue was expressly discussed with Implicit's prior counsel in December 2019, and the parties reached agreement at that time on the current stipulated schedule without any adjustment of other dates. Moreover, as this Court is well aware, the Implicit patent family has already been construed numerous times before, and Implicit is currently challenging the Court's constructions in post-trial briefing in the *NetScout* case and on appeal to the Federal Circuit in the *Sandvine* case. Thus, to the extent that Implicit is concerned that uncertainty about claim construction will lead to "inefficiency" in fact and expert discovery, Defendants have offered to stay this case altogether until those issues are resolved in *NetScout* and *Sandvine*. Tellingly, Implicit has refused this proposal.

Second, Implicit argues that it is necessary to delay certain case deadlines to facilitate deposition discovery. However, the factual record shows a total lack of diligence on Implicit's

part, which reflects the absence of "good cause." For example, although this case was filed nearly a year ago, Implicit made no attempt to schedule depositions until late in the day on December 20, 2019 (the Friday before the holidays), when it suddenly attempted to serve 15 deposition notices for early January in violation of the Discovery Order. Defendants have since been working diligently to provide dates (Juniper has provided dates within the discovery period for all of its witnesses) and believe it is reasonable for the parties to allow modest accommodations for any particular witness that needs to be scheduled after the current fact discovery cutoff. Apparently Implicit believes this as well, as the only dates it offered for its one and only witness (Mr. Balassanian) were several weeks *after* the current fact discovery deadline. Such accommodations do not require upending the entire case schedule.

In short, although Implicit may now wish for a different schedule from the one that its former counsel recently agreed to before withdrawing from this case, that fact does not remotely satisfy Implicit's burden to show "good cause"—especially in view of its representation just days ago that this withdrawal would "not delay the proceedings." Accordingly, the Court should deny Implicit's Motion.

## II.   PROCEDURAL BACKGROUND

### A.   Prior Proceedings and Schedule Adjustments

Implicit is a patent holding company that has brought numerous lawsuits on its "demultiplexing" patents, none of which has proven successful on the merits. Implicit lost its first case against Juniper on summary judgment (non-infringement and invalidity) in the Northern District of California. More recently, a jury found Implicit's patents not infringed after a full trial in *Implicit, LLC v. NetScout Sys., Inc.*, No. 2:18-cv-00053-JRG, Dkt. 222 (E.D. Tex. Dec. 13,

2019). Following this verdict, Implicit entered a stipulation of non-infringement in *Implicit LLC v. Sandvine Corp.*, No. 2:18-cv-00054-JRG, Dkt. 17 (E.D. Tex. Dec. 17, 2019).

Shortly before the beginning of the *NetScout* trial, Implicit reached out to propose extending the deadline for its opening claim construction brief in this case. In an effort to accommodate this request, the parties undertook a broader discussion about adjusting the overall claim construction schedule. On December 18, 2019, counsel for Juniper had a phone call with then-counsel for Implicit (from the law firm Hosie Rice) regarding scheduling issues. McPhie Decl. ¶ 3. Counsel specifically discussed whether modifying the *Markman* schedule might negatively impact other case deadlines. *Id.* Counsel for Juniper noted that the parties had already received substantial guidance from the Court regarding claim construction, as the disputed family of patents had already been construed multiple times. *Id.* As a result of this discussion, counsel for both parties ultimately agreed upon the proposed modifications to the *Markman* dates without any need to adjust any other dates. *Id.* The Fourth Amended Docket Control Order was entered on December 19, 2019. Dkt. 172.

Following the adverse judgments in *NetScout* and *Sandvine*, Implicit filed an unopposed motion to withdraw Hosie Rice as counsel of record. Dkt. 189. Implicit specifically represented in its motion that "[t]he withdrawal of Hosie Rice will not delay the proceedings." *Id.* at 1. The Court granted this motion on January 16, 2020. Dkt. 192.

At the same time that Hosie Rice was preparing to withdraw as counsel of record, Implicit's remaining counsel began efforts to seek a further modification of the case schedule. Defendants expressed concern that Implicit's newly proposed schedule was unreasonably compressed in view of the existing trial date. For example, Implicit's proposed schedule provided only two weeks for Defendants to prepare rebuttal reports on the topics of both infringement and damages. The parties

met and conferred about these issues and have continued to meet and confer following the filing of Implicit's Motion. *See, e.g.*, McPhie Decl. ¶¶ 4, 5; Ex. 1 (1/17/2020 Davis Email). However, the parties have not been able to reach agreement on a modified schedule.

### B. Depositions

Although this case was filed nearly a year ago, Implicit made no attempt to schedule any depositions with any defendant in this case before until sending an email late in the day on December 20, 2019—the Friday before the Christmas and Hanukkah holidays. McPhie Decl. ¶ 8. Specifically, Implicit's email attached 15 deposition notices with dates set for early January, but without having spoken with or otherwise conferred with any of the Defendants in advance regarding those dates. *Id.* Accordingly, Implicit was immediately informed that these attempted notices were in violation of the Discovery Order, which requires "before noticing a deposition of a party or witness affiliated with a party, the noticing party must confer about the scheduling of the deposition with opposing counsel." *Id.*; Dkt. 107 (Discovery Order) ¶ 10. Implicit was also asked on that same date to provide dates for the inventor of the patents-in-suit, a Rule 30(b)(6) witness, and third party Resolution Strategies, who Implicit had previously indicated should be contacted through Implicit's counsel.

**Juniper.** Implicit and Juniper met and conferred to discuss deposition scheduling on January 16, 2020. Juniper provided dates for four Juniper witnesses, all of which were within the fact discovery period.[1] However, Implicit failed to provide any dates within the fact discovery period. Instead, it offered to produce its principal and named inventor for deposition on March 4, 5, and 6, 2020—several weeks *after* the current fact discovery cutoff of February 11, 2020. Implicit

---

[1] Juniper explained that the fifth witness requested by Implicit was no longer relevant as he had been identified only in connection with a Juniper product that is no longer accused of infringement following Implicit's dismissal of the "server" patents.

also informed Juniper for the first time that it would not provide dates for Resolution Strategies. Juniper reiterated its request that Implicit provide dates within the current fact discovery period.

**Fortinet.** On December 30, 2019, Fortinet informed Implicit that the dates and location in the deposition notices directed to Fortinet would not work and that it would identify convenient days and locations as soon as possible. Since then, Fortinet has diligently worked with its employees to determine availability in view of their job responsibilities and time commitments and the short notice period provided by Implicit; Fortinet anticipates making available at least its technical witnesses before the close of fact discovery on February 11, 2020.

**Imperva.** Implicit and Imperva have yet to meet and confer regarding deposition scheduling. On December 23, 2019, Imperva informed Implicit that several of its witnesses are located in Israel, and that it would work with these witnesses to identify dates of availability that would reduce the burden of travel on all parties. Imperva continues to work to determine dates for depositions of its witnesses within the discovery period, or shortly thereafter. On January 16, 2020, Implicit demanded from Imperva an immediate meet and confer on Implicit's forthcoming motion to compel all of Imperva's witnesses' availability for deposition, among other discovery disputes Implicit raised for the first time in that communication. On January 18, 2020, Imperva responded to Implicit's demand by agreeing to meet and confer on January 21, 2020, and requested that Implicit provide dates on which it would produce its principal and named inventor for deposition. Implicit responded less than 30 minutes later to inform all Defendants that Implicit was immediately "withdrawing" the dates that it has proposed earlier for the Rule 30(b)(6) deposition of Implicit and deposition of named inventor Mr. Balassanian until resolution of its Motion. Ex. 8 (1/19/20 Hurt Email).

To date, Implicit has failed to offer *any* available deposition dates for *any* Implicit-affiliated witness, much less any identify any available dates within the current fact discovery period.

## III. LEGAL BACKGROUND

"Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner." *Virtual Chart Sols. I, Inc. v. Meredith*, 2019 WL 856400, at *3 (E.D. Tex. Jan. 16, 2019). Federal Rule of Civil Procedure 16(b) requires that a party seeking to modify a scheduling order show "good cause." "The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003); *see also Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180756, at *3 (E.D. Tex. May 1, 2008). "In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule." *SynQor, Inc. v. Artesyn Techs.*, Inc., 2013 WL 12138997, at *1 (E.D. Tex. July 11, 2013). "In determining whether good cause exists, courts consider a four-part test: '(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'" *Meier v. UHS of Del., Inc.*, 2019 WL 2515365, at *3 (E.D. Tex. June 18, 2019) (quoting *S&W Enters.*, 315 F.3d at 535.

## IV. ARGUMENT

Implicit's Motion should be denied as all four of the applicable factors fail to satisfy Implicit's burden to "good cause" to modify the schedule. First, Implicit has not explained why it did not request alternations to these deadlines earlier, especially given that the parties submitted a

joint motion to amend the case schedule just a month ago (which the Court granted). At that time, the parties had discussed the possibility of altering additional deadlines besides the *Markman* dates, but Implicit ultimately decided not to pursue further amendments. Second, Implicit has not demonstrated that it cannot reasonably meet the deadlines despite its alleged diligence. In its motion, Implicit has not identified any meaningful efforts on its part to meet these upcoming deadlines—nor could it in light of its own failure to offer deposition dates for Implicit's witnesses before the close of discovery. Third, the timing of the *Markman* hearing after the close of fact discovery and expert reports can be readily accommodated in this case, including because this Court has already construed these very same terms on numerous occasions (which Implicit is currently challenging on appeal of the *Sandvine* action and in post-trial briefing in the *NetScout* action). Fourth, Implicit's proposed schedule will substantially prejudice the Defendants because it severely compresses the deadlines through trial, providing significantly shortened period to prepare expert reports and depositions and summary judgment briefings. In light of these reasons, Implicit has not shown good cause, and the Court should deny Implicit's request to modify the fourth amended docket control order.

*First*, Implicit has not explained why it failed to request alterations to these deadlines earlier. It was just recently on December 18, 2019, when the parties jointly sought modification of the docket control order, which occurred after lengthy discussion between all parties. *See* Dkt. 170; McPhie Decl. ¶ 2; Gaudet Decl. ¶ 2; Larson Decl. ¶ 3. It was Implicit that initiated these discussions because the deadline for Implicit's opening claim construction brief fell on December 26, 2019 (a date that Implicit had originally opted for during the parties' original discussions regarding scheduling in July 2019). *See* Ex. 2 (12/16/19 Martin Email); Ex. 3 (7/12/19 Martin Email, Combined Proposals); McPhie Decl. ¶ 6. Implicit reached out to Juniper on December 7,

2019, about adjusting the claim construction deadlines, and further requested modification of the schedule in an email to all Defendants dated December 16, 2019. Ex. 2 (12/16/19 Martin Email); Ex. 4 (12/7/19 Martin Email).

Contrary to Implicit's assertion, the parties did consider at that time whether the other non-*Markman* deadlines required amendment as well. For example, Implicit's then-counsel from Hosie Rice (Brandon Martin) and Juniper's counsel (David McPhie) had a conversation on December 18, 2019, in which they explicitly discussed the interplay between the *Markman* dates and other deadlines including the fact discovery cutoff, expert report deadlines, and currently scheduled dates for pre-trial submissions and trial. *See* McPhie Decl. ¶ 3. The parties ultimately agreed that no further amendment to the other deadlines was necessary. *See id.*; Dkt. 170. Now, less than a month after the Court entered the fourth docket control order on December 19, 2019, and after having its prior counsel Hosie Rice dismissed from the case, Implicit is inexplicably seeking a do-over. *See* Dkt. 172; Ex. 5 (1/8/20 Chin Email). This does not demonstrate good cause.

*Second*, Implicit has not demonstrated "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enterprises*, 315 F.3d at 535; *see also EMG Tech., LLC v. Chrysler Grp., LLC*, 2013 WL 12147662, at *5 (E.D. Tex. July 3, 2013) ("the Court is not inclined to consider a continuance in view of Plaintiff's failure to demonstrate due diligence"). Regarding fact discovery, parties have already made significant productions of documents (including source code) and have both served and responded to written discovery— mainly in July through October 2019. *See* Dkt. 170; McPhie Decl. ¶ 7; Gaudet Decl. ¶ 4; Larson Decl. ¶ 5. It was not until December 20, 2019, the Friday night before the holiday weekend, that Implicit served all of the Defendants with improper deposition notices without even attempting to

meet and confer as required under the Discovery Order. *See* Ex. 6 (12/20/19 Hurt Email); Dkt. 107 ¶ 10.

In any event, the parties continue to work diligently to complete fact discovery by the currently scheduled cutoff date, and it appears that the parties will be able to do this with respect to document production, written discovery, and some or most of the outstanding depositions. And to the extent that some witnesses may require a modest individual accommodation after the discovery cutoff, Defendants believe that this is something the parties can and should be able to arrange without having to adjust any other case deadlines.

For instance, Juniper met and conferred with Implicit's counsel on January 16, 2020 regarding the scheduling of the depositions that Implicit and Juniper noticed on December 20, 2020. *See* Ex. 7 (1/17/19 Petersen Email); McPhie Decl. ¶ 9. Juniper provided available deposition dates for four witnesses on technical and financial issues as Implicit had requested, and all of these offered dates are on or before the close of discovery on February 11, 2020. *See* Ex. 7 (1/17/19 Petersen Email); McPhie Decl. ¶ 9. By contrast, during that meet and confer, Implicit failed to offer deposition dates for any of its witnesses before the close of discovery even though Juniper requested such dates on December 20, 2019—the very same day that Implicit requested dates from Juniper. *See* Ex. 6 (12/20/19 Petersen Email); Ex. 7 (1/17/19 Petersen Email); McPhie Decl. ¶ 9. In its motion, Implicit does not offer a reason for why it cannot diligently meet the current discovery deadline, and Implicit did not provide a reason during the meet and confer regarding why its witnesses are unavailable until March 4, 5, and 6, 2020. *See* Ex. 7 (1/17/19 Petersen Email); McPhie Decl. ¶ 10.

After receiving Implicit's deposition notices, Imperva informed Implicit on December 23, 2019 and through subsequent correspondence that several of its witnesses are located in Israel, and

that Imperva is actively working with its witnesses to identify dates that would reduce the burden of travel on all parties. Without previously notifying Imperva of any purported deficiency in its document production or interrogatory responses, on January 16, 2020 Implicit demanded a meet and confer on Implicit's forthcoming motion to compel Imperva's production of documents, interrogatory responses, and its witnesses' availability for deposition. Imperva responded by agreeing to meet and confer on January 21, 2020, and requested that Implicit provide further details and support for why it contends Imperva's discovery responses to date are deficient, and dates its principal and named inventor would be available for deposition by Defendants. Less than 30 minutes later, Implicit notified all Defendants that it was immediately withdrawing making its principal and named inventor available for deposition until resolution of its Motion. Nevertheless, Imperva remains willing to work with Implicit to attempt to resolve these issues within the current discovery period.

Fortinet has diligently worked with its employees to determine their availability for depositions in view of their job responsibilities and time commitments and the short notice provided by Implicit. Despite receiving deposition notices on December 20, 2019, Fortinet anticipates making available at least its technical witnesses before the close of fact discovery on February 11, 2020.

***Third***, Implicit's proposed schedule would unreasonably compress the deadlines for expert reports and discovery, summary judgment briefing, and pretrial activity without yielding any meaningful benefits in terms of "efficiency" (as Implicit contends). In particular, Implicit's purported concerns about the timing of the *Markman* proceedings relative to other deadlines are unfounded, especially in a case where the Court has already construed these very same claim terms at issue from the Implicit patent family on numerous occasions. *See Implicit, LLC v. NetScout Sys.,*

*Inc.*, 2019 WL 1614725 (E.D. Tex. Apr. 15, 2019); *Implicit, LLC v. Huawei Techs. USA, Inc.*, 2018 WL 1169137 (E.D. Tex. Mar. 6, 2018); *Implicit, LLC v. Trend Micro, Inc.*, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017). The parties, therefore, have numerous resources that shed light on potential constructions, which they can use to prepare expert reports and complete fact discovery. Moreover, the parties have been on notice regarding their respective proposed constructions since November 26, 2019, and the deadline to complete claim construction discovery (December 2, 2019) has also already passed. *See* Dkt. 152, 161.

This sequence of events under the current case schedule is not uncommon. In fact, "parties 'regularly' have to write expert reports addressing alternative constructions when Court does not issue its final claim construction ruling until after expert reports are due." *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 2012 WL 1015993, at *5 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) (citing *Xerox Corp. v. Google, Inc.*, Claim Constr. Hr'g. Tr. (C.A. No. 10–136 D.I. 197 at 11)). Courts have recognized that when a *Markman* hearing occurs after the close of expert discovery, "it [is] incumbent upon [the patentee] to have [its expert] examine [defendant's] claim construction and offer alternative opinions on infringement and validity." *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 731-32 (E.D. Va. 2001); *cf. Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667-68 (E.D. Tex. 2007) ("A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions."). And regardless of whether the *Markman* hearing occurs before the close of fact discovery and expert reports, there is no guarantee that the Court will actually issue its order before those deadlines in any event.

Moreover, Implicit has appealed the Court's claim constructions in the *Sandvine* action and is still engaged in post-trial briefing regarding those constructions in the *NetScout* action. Indeed,

in *Sandvine*, Implicit and Sandvine stipulated to noninfringement because "[t]he requested relief will conserve judicial and party resources by allowing the parties to forego further litigation of the '683, '790, and '104 patent infringement claims in this Court, while preserving Implicit's right to appeal the Court's claim construction." *See Implicit LLC v. Sandvine Corp.*, No. 2:18-cv-00054-JRG, Dkt. 17 (E.D. Tex. Dec. 17, 2019). In view of these developments, Defendants asked whether Implicit was willing to stay this consolidated action until the completion of the *Sandvine* appeal and/or the *Netscout* post-trial briefing. However, Implicit responded that it would not consider a stay. *See* Ex. 1 (1/17/19 Davis Email). Therefore, Implicit's argument that an amended schedule is needed so the parties can have greater certainty regarding claim construction is disingenuous—Implicit's approach of appealing the Court's construction while going forward with this action presents the risk that this entire dispute will be rendered moot.

*Fourth*, the new deadlines will substantially prejudice the Defendants and none of Implicit's proposed adjustments adequately remedy that prejudice. Under Implicit's proposed schedule, the Defendants would have only two weeks after Implicit's service of expert disclosures to provide rebuttal expert disclosures. Additionally, under Implicit's proposed schedule, dispositive motions would be due just two weeks after expert reports are completed. The briefing of dispositive motions also will not be complete until less than a month before the pretrial conference and just two days before motions *in limine* are due, which will require the Defendants to spend more resources preparing for a trial that might not occur. And all of the revised deadlines will result in Defendants having to prepare case strategy and submissions under a significantly compressed timeline relative to the current (already aggressive) schedule.

## V. CONCLUSION

Simply put, Implicit has fallen fall short of its burden of proving "good cause" for its belated proposed amendments to the schedule in this case. In light of the foregoing reasons, the Court should deny Implicit's Motion.

Dated: January 20, 2020         By:   *David McPhie*

**IRELL & MANELLA LLP**
David McPhie (*pro hac vice*)
(CA State Bar No. 231520)
Ingrid Petersen (*pro hac vice*)
(CA State Bar No. 313927)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: 949-760-0991
Facsimile: 949-760-5200
dmcphie@irell.com
ipetersen@irell.com

Jonathan S. Kagan (*pro hac vice*)
(CA State Bar No. 166039)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: 310-277-1010
Facsimile: 310-203-7199
jkagan@irell.com

**GILLAM & SMITH LLP**
Melissa Richards Smith
(Texas Bar No. 24001351)
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257
melissa@gillamsmithlaw.com

**Attorneys for Defendant Juniper Networks, Inc.**

Dated:  January 20, 2020          By:   *Christopher L. Larson*

**FENWICK & WEST LLP**
Michael J. Sacksteder (Lead Attorney)
CA Bar No. 191605 (Admitted E.D. Tex.)
Christopher L. Larson
CA Bar No. 308247 (Admitted E.D. Tex.)
Jessica L. Benzler
CA Bar No. 306164 (Admitted E.D. Tex.)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  415-875-2300
Facsimile:  415-281-1350
msacksteder@fenwick.com
clarson@fenwick.com
jbenzler@fenwick.com

Geoffrey R. Miller
(Texas State Bar No. 24094847)
801 California Street
Mountain View, CA 94041
Telephone:  650-335-7943
Facsimile: 650-938-5200
gmiller@fenwick.com

**Attorneys for Defendant Imperva, Inc.**

Dated:  January 20, 2020          By:   *Matthew C. Gaudet*

**THE DACUS FIRM, P.C.**
Deron R. Dacus
State Bar No. 00790553
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone:  903-705-1117
Facsimile:  903-581-2543
ddacus@dacusfirm.com

**DUANE MORRIS LLP**
Matthew C. Gaudet (GA SBN 287789)
Admitted E.D. Tex.
David C. Dotson (GA SBN 138040)
Admitted E.D. Tex.
John R. Gibson (GA SBN 454507)
Admitted E.D. Tex.

Alice E. Snedeker
Admitted E.D. Tex.
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone:  404-253-6900
Facsimile:  404-253-6901
mcgaudet@duanemorris.com
dcdotson@duanemorris.com
jrgibson@duanemorris.com
aesnedeker@duanemorris.com

Christopher J. Tyson (VA SBN 81553)
Admitted E.D. Tex.
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone:  202-776-7800
Facsimile:  202-776-7801
cjtyson@duanemorris.com

**Counsel for Defendant Fortinet, Inc.**

- 16 -

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was electronically served on all counsel of record, on this the 20th day of January 2020.

*/s/ Melissa R. Smith*
