**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC | | |
| | Plaintiff, | |
| | | Case No. 2:19-cv-00040-JRG-RSP |
| vs. | | (Lead Case) |
| IMPERVA, INC., | | |
| | Defendant. | |
| vs. | | |
| FORTINET, INC., | | Case No. 2:19-cv-00039-JRG-RSP |
| | Defendant. | |

**FORTINET, INC.'S MOTION TO STAY PENDING SANDVINE APPEAL
AND RESOLUTION OF FORTINET'S PENDING MOTIONS TO TRANSFER**

## TABLE OF CONTENTS

I.    BACKGROUND ............................................................................................................... 1

    A.    The Current Action ............................................................................................. 1

    B.    The Prior Actions ............................................................................................... 2

II.   A STAY IN THE FORTINET ACTION IS APPROPRIATE ...................................... 3

    A.    A Stay Will Simplify the Fortinet Action ......................................................... 4

        1.    Implicit Is Estopped From Arguing Differing Constructions
           for the Disputed Terms Construed in the Sandvine Action and
           the Fortinet Action Should be Stayed during the Sandvine
           Appeal to Simplify the Issues and Trial ............................................... 4

        2.    Fortinet Has a Non-Frivolous Argument for Transfer Under
           the Explicit Forum Selection in the Intel License and a Stay
           Simplifies the Venue Issue ................................................................... 11

    B.    The Early Stage of the Case Weighs in Favor of a Stay ................................. 12

    C.    A Stay of the Case Will Not Unduly Prejudice Implicit ................................. 12

III.  CONCLUSION ............................................................................................................. 13

## **TABLE OF AUTHORITIES**

### **Cases**

*Allergan Sales, LLC v. Sandoz Inc.*, No. 2:12-cv-207-JRG,
  2016 U.S. Dist. LEXIS 41013 (E.D. Tex. Mar. 29, 2016) ..................................................... 11

*In re Arunachalam*, 709 F. App'x 699 (Fed. Cir. 2017) ................................................................ 4

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377 (Fed. Cir. 2013) ................................ 8

*Black Hills Media, LLC v. Samsung Elecs. Co.*, No. 2:13-CV-379-JRG-RSP,
  2014 U.S. Dist. LEXIS 201106 (E.D. Tex. Mar. 14, 2014) (Gilstrap, J.) ............................ 12

*Crossroads Systems, Inc. v. Dot Hill Systems Corp.*, Case No. 13-CA-1025,
  2015 U.S. Dist. LEXIS 77526, 2015 WL 3773014 (W.D. Tex. June 16, 2015) ................... 13

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808
  (E.D. Tex. 2014) (J. Bryson) ............................................................................................... 9-10

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) ....................... 9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2016 WL 1162162
  (E.D. Tex. Mar. 23, 2016) ....................................................................................................... 3

*Implicit, LLC v. Imperva, Inc.*, No. 2:19-cv-00040-JRG (E.D. Tex.) ..................................... 2-3

*Implicit, LLC v. Sandvine Corporation*, No. 2:18-cv-00054-JRG, Dkt. 20
  (E.D. Tex.) ............................................................................................................................... 1

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................................. 3

*Nestle USA, Inc. v Steuben Foods, Inc.*, 884 F.3d 1350 (Fed. Cir. 2018) ..................................... 9

*NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB,
  2015 U.S. Dist. LEXIS 29573 (E.D. Tex. Mar. 11, 2015) .................................................... 12

*In re Nintendo Co.*, 544 F. App'x 934 (Fed. Cir. 2013) .............................................................. 11

*Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333 (Fed. Cir. 2013) ..................................... 8

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373 (Fed. Cir. 1999) ..................... 10

*Soverain Software, LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660
  (E.D. Tex. 2005) ....................................................................................................................... 3

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684
  (5th Cir. 2014) ......................................................................................................................... 9

*Stingray Music USA, Inc. v. Music Choice*, No. 2:16-CV-00586-JRG-RSP,
2017 U.S. Dist. LEXIS 223322 (E.D. Tex. Dec. 12, 2017)...................................................... 13

*Stragent LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446,
2017 U.S. Dist. LEXIS 192695 (E.D. Tex. July 11, 2017)...................................................... 13

*Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RWS,
2019 U.S. Dist. LEXIS 114601 (E.D. Tex. Apr. 16, 2019)...................................................... 8

*United Access Techs., LLC v. Centurytel Broadband Servs. LLC*, 778 F.3d 1327
(Fed. Cir. 2015)...................................................................................................................... 8

*United States v. Shanbaum*, 10 F.3d 305 (5th Cir. 1994) ............................................................. 9

Defendant Fortinet, Inc. ("Fortinet") hereby respectfully moves to stay this patent infringement lawsuit.  A stay is appropriate on two bases, either of which supports granting Fortinet's motion and together demonstrate the necessity of a stay.  First, a stay is appropriate pending resolution of the appeal in *Implicit, LLC v. Sandvine Corporation*, No. 2:18-cv-00054-JRG, Dkt. 20 (E.D. Tex.), ("Sandvine Action," "Sandvine Appeal").  As explained below, those same terms are at issue in this case, and despite being collaterally estopped from arguing claim constructions in this case differing from the ones determined in the Sandvine Action, Implicit is doing just that.  Second, a stay is appropriate at least until the Court's rules on Fortinet's motions to transfer, particularly its supplemental motion to transfer based upon the forum selection clause in the Intel license (Dkt. 26 in No. 2:19-cv-39, Dkt. 185 in No. 2:19-cv-40).  Under either basis, granting a stay will conserve party and judicial resources and promote efficiency. Indeed, each of the three factors the Court considers when deciding whether to stay a case favors granting one here.

## I.  BACKGROUND

### A.  The Current Action

Implicit, LLC ("Implicit") initiated this lawsuit on February 4, 2019, and filed its First Amended Complaint for Patent Infringement in this action on March 19, 2019, alleging infringement of several patents, including but not limited to, United States Patent Nos. 8,694,683 (the "'683 Patent"); 9,270,790 (the "'790 Patent"); 9,591,104 (the "'104 Patent"); 10,027,780 (the "'780 Patent"); 10,033,839 (the "'839 Patent"); and 10,225,378 (the "'378 Patent") (collectively, the "Asserted Patents"). Dkt. 15 in No. 2:19-cv-39 ("Fortinet Action").  Implicit currently asserts claims 1-2, 4-5, 8-10, and 24-27 of the '683 Patent; claims 1-5, 8-10, 12-13, and 15-19 of the '790 Patent; claims 1-6, 10-13, 16, and 19-20 of the '104 Patent; claims 1-3, 11, 13-16, 18, and 20 of

1

the '780 Patent; claim 1 of the '839 Patent; and claims 1-3, 11, and 14-20 of the '378 Patent (collectively, the "Asserted Claims").

Fortinet moved to transfer venue to the Northern District of California on June 4, 2019. Dkt. 26 in No. 2:19-cv-39.  On June 5, 2019, the Court consolidated the Fortinet Action with *Implicit, LLC v. Imperva, Inc.*, No. 2:19-cv-00040-JRG (E.D. Tex.).[1]  The motion was fully briefed, and a hearing was held on September 12, 2019. Dkts. 70, 80, 91, 121, 130.  On January 8, 2020, Fortinet filed a supplemental motion to transfer based on the forum selection clause in a patent license Implicit granted to Intel. Dkt. 185.  Fortinet is an Intel customer, and in its supplemental motion, Fortinet demonstrates that the Intel License applies to this matter and requires that disputes arising under that license be resolved in the District of Delaware. *See generally* Dkt. 185. Implicit's response to this supplemental motion is due on January 22, 2020.  Juniper Networks, Inc., a co-defendant in the consolidated action, has likewise moved to transfer based on the Intel License (Dkt. 164) and similarly sought to stay its case while the motion is pending (Dkt. 174).

### B.     The Prior Actions

Implicit filed the Sandvine Action on March 8, 2018, alleging infringement of three of the same patents asserted in this action – the '683 Patent, the '790 Patent, and the '104 Patent (the "Overlapping Patents"), and the additional patents asserted in the Fortinet Action are continuations of the Overlapping Patents. That same day, Implicit filed suit against NetScout Systems, Inc., also alleging infringement of the Overlapping Patents, No. 2:18-cv-00053-JRG (E.D. Tex.), ("NetScout Action").  The Court subsequently consolidated the Sandvine and NetScout Actions, and on April 15, 2019, the Court issued its Memorandum Opinion and Order construing certain terms of the

---

[1] Unless otherwise indicated, all docket citations are to the lead case in the consolidated action, No. 2:19-cv-40.

Overlapping Patents. NetScout Action Dkt. Nos. 111 and 117.   A jury trial commenced in the NetScout Action on December 9, 2019, and on December 13, 2019, the jury returned its unanimous verdict finding that NetScout did not infringe the Overlapping Patents. *Id.* at Dkt. 222.   The Court entered a final judgment of noninfringement in the NetScout Action on December 16, 2019 ("NetScout Final Judgment").  *Id.* at Dkt. 225.  Following the NetScout Final Judgment, the parties in the Sandvine Action entered into a stipulation of noninfringement on December 17, 2019 ("Sandvine Stipulation"). Sandvine Action Dkt. 17.   The Court entered a final judgment of noninfringement in the Sandvine Action on December 18, 2019 ("Sandvine Final Judgment"), "pursuant to the Stipulation" that was "based on the Court's claim construction order."  *Id.* at Dkt. 18 at 1.  Implicit is now appealing the Sandvine Action and the Court's claim construction. *Id.* at Dkt. 20.

## II.      A STAY IN THE FORTINET ACTION IS APPROPRIATE

"A district court has the inherent power to control its own docket, including the power to stay proceedings before it." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In determining whether to grant a stay, this Court considers the following factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  *See Soverain Software, LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  Here, all three factors support a stay pending resolution of the Sandvine Appeal or at least through the Court's resolution of

Fortinet's Motions to Transfer.

### A.     A Stay Will Simplify the Fortinet Action

Judicial efficiency favors a stay.  A stay pending (1) Implicit's appeal of the Sandvine

Action and the Court's claim construction in that matter, or (2) the Court's resolution of Fortinet's

motions to transfer will simplify the issues in the Fortinet Action.

### 1.     Implicit Is Estopped From Arguing Differing Constructions for the Disputed Terms Construed in the Sandvine Action and the Fortinet Action Should be Stayed during the Sandvine Appeal to Simplify the Issues and Trial

A stay in the Fortinet Action will simplify the issues regarding claim construction and non-

infringement and, as a result, trial of the case.  Even though the Court construed certain claims of

the Overlapping Patents in the Sandvine and Netscout Actions, Implicit has asserted different

constructions of those claim terms in the Fortinet Action. Netscout Action Dkt. Nos. 111 and 117.

As discussed *infra*, Implicit is estopped from offering different constructions in the Fortinet Action.

*See In re Arunachalam*, 709 F. App'x 699, 703 (Fed. Cir. 2017) (patentee collaterally estopped

from construing claims because the same terms were previously construed).  Thus, the Court

should stay this action while its constructions are at issue in the Sandvine Appeal.

Implicit's desire to proceed in this case while, in parallel, appealing this Court's

constructions in the Sandvine and Netscout Actions appears to be premised on Implicit's hope that

this Court will issue different constructions in this case than it issued in the Sandvine and Netscout

Actions. In other words, Implicit's strategy in this case is to convince this Court to change the very

constructions that will form the basis of Implicit's appeal from the Netscout verdict and that led

Implicit to stipulate to non-infringement for Sandvine.  Implicit thus submitted a new, fifty-eight

page expert declaration in this case, almost entirely dedicated to attacking this Court's prior

constructions.

Implicit's desire for this Court to change its mind is foreclosed by collateral estoppel, as described below.  Accordingly, proceeding with this case while those same constructions are subject to an appeal causes the parties and the Court to incur the full expense of litigation when Implicit's only hope of success on the merits would be for the Federal Circuit to reverse those constructions—an outcome the parties will not know for another year.  Between now and then, Implicit's hope for this Court to reverse its own constructions which is, in any event, precluded by collateral estoppel) is not a sufficient basis to incur the full cost of patent litigation.

Below is a chart of the disputed terms with the claim constructions as proposed by Implicit in this action (Dkt. 161) and as construed by the Court in the Sandvine and NetScout Actions (Dkt. 111 and 117) (emphasis added).  Of the thirteen disputed terms below, the Court construed in the Sandvine and NetScout Actions at least seven of them *en toto* and construed at least a portion of three of the disputed terms.

| # | Claim Term | Implicit's Proposed Construction | Sandvine Court Construction |
|---|---|---|---|
| 2A | "sequence of [two or more] routines" <br> '683 Patent: Claims 1, 4, 5, 8, 9 <br> '790 Patent: Claims 1, 3, 4, 5, 8, 10, 12, 15, 17, 18 <br> '104 Patent: Claims 1, 3, 5, 10, 12, 13, 16 <br> '780 Patent: Claims 1, 2, 3, 16, 20 <br> '839 Patent: Claim 1 <br> '378 Patent: Claims 1, 2, 3, 16, 17, 20 | "an ordered arrangement of [two or more] software routines that was not **identified (i.e., configured) prior to receiving a first packet of the message**" | "an ordered arrangement of [two or more] software routines that was not **selected from a set of arrangements created before receiving a first packet of the message**" |
| 2B | "one or more routines" <br> '780 Patent: Claims 1, 2, 3, 16, and 20 <br> '378 Patent: Claims 1, 2, 3, 16, 17, and 20 <br> '839 Patent: Claim 1 | Plain and ordinary meaning. No construction necessary. | Did not construe |
| 2C | "routines in the sequence of routines" <br> '683 Patent: Claim 8 | Plain and ordinary meaning. No construction necessary. | Did not construe; however, see 2A |

| # | Claim Term | Implicit's Proposed Construction | Sandvine Court Construction |
|---|---|---|---|
| | | | construction for a portion of the terms |
| 3 | "list of conversion routines" '683 Patent: Claim 1 | "an ordered arrangement of software routines **for changing the form of data that was not identified (i.e. configured) prior to receiving a first packet of a message**" | "an ordered arrangement of software conversion routines **that was not selected from a set of arrangements created before receiving a first packet of the message**" |
| 5 | "a routine that is used to execute a Transmission Control Protocol (TCP) to convert one or more packets having a TCP format into a different format" "a routine that is executable to perform a Transmission Control Protocol (TCP) to convert at least one of the packets of the message into a different format" "a routine that is used to execute a Transmission Control Protocol (TCP) to convert packets having a TCP format into a different format" "a particular routine that is used to execute a Transmission Control Protocol (TCP) to convert packets having a TCP format into a different format" '683 Patent: Claim 1 '790 Patent: Claims 1, 8, 15 '780 Patent: Claims 1, 16 '839 Patent: Claim 1 '378 Patent: Claims 1, 16 | Plain and ordinary meaning. No construction necessary. Alternatively, "a software routine for **processing the packet from the TCP layer to another layer in the protocol stack**" | a routine that is used to **"operate on one or more packets whose outermost header is a TCP header"/ "operable on one or more packets whose outermost header is a TCP header"**

to **"convert the outermost header structure of the packet(s) from TCP to another type of header structure"**

The Court also concluded the following: "[t]o whatever extent Plaintiff contends that the terms 'convert one or more packets having a TCP format into a different format,' 'convert one or more packets in a transport layer format into a different format,' and 'convert packets of the different format into another format' encompass merely moving a reference, the |

| # | Claim Term | Implicit's Proposed Construction | Sandvine Court Construction |
|---|---|---|---|
| | | | Court hereby expressly rejects any such interpretation as lacking support in the record." |
| 6 | "a session associated with a transport layer protocol that is executed to convert one or more packets in a transport layer format into a different format" '683 Patent: Claim 10 | Plain and ordinary meaning. No construction necessary. Alternatively, "a session corresponding to a software routine for processing the packet from the transport layer to another layer in the protocol stack" | Did not construe; however, see 5 construction for a portion of the terms |
| 7A | "a second routine that is used to execute a second, different protocol to convert packets of the different format into another format" '683 Patent: Claim 2 '790 Patent: Claim 3 | Plain and ordinary meaning. No construction necessary. | "operate on packets whose outermost header is a [second/third], different protocol header" |
| 7B | "a [third] routine that is used to execute a [third], different [application layer] protocol to further convert the packets" '683 Patent: Claim 2 '790 Patent: Claim 4 | Plain and ordinary meaning. No construction necessary. | "operate on packets whose outermost header is a [second/third], different protocol header" |
| 11 | "a routine that is used to execute a Transmission Control Protocol (TCP) to process packets having a TCP format" "a routine that is used to execute TCP to process at least one of the subsequent packets having a TCP format" '104 Patent: Claims 1, 10, 16 | Plain and ordinary meaning. No construction necessary. | "operate on one or more packets whose outermost header is a TCP header" |
| 12 | "a second routine that is used to execute a second protocol to process packets having a format other than the TCP format, wherein the second protocol is an application-level protocol" '104 Patent: Claim 3 | Plain and ordinary meaning. No construction necessary. | "execute a second protocol to operate on packets whose outermost header is other than a TCP header, wherein the second protocol is an |

| # | Claim Term | Implicit's Proposed Construction | Sandvine Court Construction |
|---|---|---|---|
| | | | application-level protocol" |
| 14 | "session associated with a [transport layer/different] protocol" "another session associated with a different protocol that is executed, wherein the different protocol corresponds to the different format" '683 Patent: Claim 10 | Plain and ordinary meaning. No construction necessary. | Did not construe |
| 15 | "a TCP session associated with [the received] one or more [received] packets" "a single TCP session" '790 Patent: Claim 20 '780 Patent: Claim 13 | Plain and ordinary meaning. No construction necessary. | Did not construe |
| 16 | "sessions corresponding to [various/respective] ones of the sequence of [two or more] routines" '790 Patent, Claims 5, 12, 17 '104 Patent: Claim 5, 12 | Plain and ordinary meaning. No construction necessary. | Did not construe; however, see 2A construction for a portion of the terms |

Under Fifth Circuit and Federal Circuit precedent, Implicit is estopped from arguing a different construction for terms that were previously construed in a prior litigation of a related patent.  "In patent cases, issue preclusion is analyzed under the law of the regional circuit." *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:15-CV-00551-RWS, 2019 U.S. Dist. LEXIS 114601, at *8 (E.D. Tex. Apr. 16, 2019) (citing *United Access Techs., LLC v. Centurytel Broadband Servs. LLC*, 778 F.3d 1327, 1330 n.1 (Fed. Cir. 2015)).  However, the Federal Circuit "appl[ies its] . . . own precedent to those aspects of such a determination that involve substantive issues of patent law." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (citing *Aspex Eyewear, Inc. v. Zenni Optical Inc*., 713 F.3d 1377, 1380 (Fed. Cir. 2013)). The Fifth Circuit has held that collateral estoppel (also known as issue preclusion) applies if:

First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (citing *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)).  "Importantly, the collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision."  *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014) (J. Bryson).

First, a majority of the disputed terms listed above in Section II.A.1. are identical to the terms previously construed.  *See, e.g.*, "sequence of [two or more] routines" and "list of conversion routines."  Also, at least portions of terms at issue in this case were also construed in the Sandvine and NetScout Actions.  The fact that there is not complete identify between the terms does not preclude application of collateral estoppel.  *See Nestle USA, Inc. v Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) ("[O]ur precedent makes clear that collateral estoppel is not limited to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." (quotation marks omitted)). Nor does it matter that additional patents are at issue in the Fortinet Action give their relationship to the Overlapping Patents.  *See Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1030 (Fed. Cir. 2002) ("the same term or phrase should be interpreted consistently where it appears in claims of common ancestry).

Second, these terms were "fully and vigorously litigated in the prior action," culminating in final judgments.  For example, Implicit is clearly arguing constructions that were previously considered and rejected by the Court. *Compare e.g.*, Net Scout Action Dkt. 111 at 8 and 14, where Implicit argued that a "sequence of [two or more] routines" should be construed as "an ordered

9

arrangement of [two or more] software routines that was not ***identified (i.e., configured) prior to receiving a first packet of a message***" and the Court construed "sequence of [two or more] routines" as **"an ordered arrangement of [two or more] software routines that was not *selected from a set of arrangements created before receiving a first packet of the message*"** *with* Exhibit A to Dkt. 161 where Implicit's current proposed construction of "sequence of [two or more] routines" is "an ordered arrangement of [two or more] software routines that was not ***identified (i.e., configured) prior to receiving a first packet of the message.***"  Implicit is therefore impermissbly attempting to get another bite at the apple.  The fact that an appeal is pending does not negate this factor. *DietGoal*, 70 F. Supp. 3d at 812.  Additionally, the inquiry for this factor is "'quite narrow' and does not consider 'whether the prior finding . . . was correct.'" *Id.* at 815 (quoting *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,* 170 F.3d 1373, 1380 (Fed. Cir. 1999)).

Third, construction of the disputed terms was necessary to support the final judgments in the Sandvine and NetScout Actions.  In the Sandvine Action, the construction of these terms was essential to the final judgment of noninfringement "pursuant to the Stipulation" that was "based on the Court's claim construction order."  Sandvine Action Dkt. 18 at 1.  The Sandvine Stipulation specifically stated, "Implicit and Sandvine stipulate that under the Court's construction of the above terms, there is no infringement of the Asserted Claims by the Accused Products." Sandvine Action Dkt. 17 at 4.

The construction of these terms was also essential to the final judgment of noninfringement in the NetScout Action, which must have been based on Court's claim construction order as well. This requirement "does not mean that the finding must be so crucial that, without it, the judgment could not stand. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later

10

litigation." *Allergan Sales, LLC v. Sandoz Inc.*, No. 2:12-cv-207-JRG, 2016 U.S. Dist. LEXIS 41013, at *22-23 (E.D. Tex. Mar. 29, 2016).  As this Court has stated, "Claim construction is not incidental or non-essential to issues of validity and infringement. Indeed, it is the first step in the process of deciding those issues." *Id.* The Court should therefore find that the construction of these terms was "at least implicitly essential to the judgment[s]" of noninfringement in the Sandvine and NetScout Actions. *Id.*

Finally, there is "no special circumstance that would render preclusion inappropriate or unfair" here. In fact, it would be unfair if Implicit were not precluded, as they would be able to relitigate the same constructions they previously lost in the Sandvine and NetScout Actions.

Thus, the Court should stay the Fortinet Action, given that Implicit is collaterally estopped from arguing for different constructions from those in the Sandvine and Netscout Actions; a majority of those terms are at issue in the Fortinet Action; and those terms are currently on appeal. If the parties and Court were to proceed with the claim construction process and an order issued in this case prior to a determination by the Federal Circuit, an inconsistency could arise.  Staying the Fortinet Action pending the Sandvine Appeal would result in substantial savings to the parties and conserve judicial resources.

### 2.    Fortinet Has a Non-Frivolous Argument for Transfer Under the Explicit Forum Selection in the Intel License and a Stay Simplifies the Venue Issue

A stay will also simplify the issues regarding venue and, as a result, where the trial of the case should take place.  Fortinet believes a stay to resolve venue is particularly necessary, now, in light of its non-frivolous argument that it is licensed under the Intel license, in which Implicit clearly agreed to litigate any issues arising thereunder in Delaware. The Fortinet Action should not continue to proceed on the merits until the Court has had an opportunity to consider and rule upon Fortinet's motions (Dkt. 26 in No. 2:19-cv-39, Dkt. 185).  *See In re Nintendo Co.*, 544 F.

App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case").  This ensures that neither the parties nor the Court spend resources on a proceeding that should be transferred to another district,  promotes efficiency, and streamlines the judicial process.

### B.   The Early Stage of the Case Weighs in Favor of a Stay

Discovery is not complete in this case.  The deadline for completion of fact discovery is not until February 11, 2020, and the parties have not yet started taking depositions.  Indeed, Implicit has filed an opposed motion to amend the docket control order to extend several discovery and expert deadlines.  Dkt. 190.  Also, claim construction briefing has not begun, and the *Markman* hearing is not scheduled until March 17, 2020.  This factor weighs in favor of a stay.

### C.   A Stay of the Case Will Not Unduly Prejudice Implicit

The argument that a patentee would be prejudiced because a stay will delay the timely enforcement of a patent is "present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, at *7 (E.D. Tex. Mar. 11, 2015).  Here, the bases for Fortinet's motion to stay the case arise from Implicit's own actions in litigating its patents.  Moreover, Juniper has separately sought to stay its case based on its pending transfer motions and notes therein that Imperva is not opposed to a stay.  *See* Section I.A., *supra*.

Nor would there be any prejudice in the marketplace.  Implicit does not appear to compete with Fortinet or, to Fortinet's knowledge, actually sell any products that practice the claimed inventions.  (Implicit's Am. Infr. Cont. at 7.)  Thus, the parties are not competitors, which cuts against any prejudice that could be alleged by Implicit. *See, e.g., Black Hills Media, LLC v. Samsung Elecs. Co.,* No. 2:13-CV-379-JRG-RSP, 2014 U.S. Dist. LEXIS 201106, at *4 (E.D. Tex. Mar. 14, 2014) (Gilstrap, J.) (rejecting plaintiff's prejudice argument in part because plaintiff did

not compete with defendants).  Also, Implicit chose not to seek a preliminary injunction and the patents have all expired, expect for the '790 patent expiring in February 2020, which further weighs against a finding of undue prejudice. *See*, *e.g.*, *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-CV-00586-JRG-RSP, 2017 U.S. Dist. LEXIS 223322, at *9 (E.D. Tex. Dec. 12, 2017) ("[A] stay does not diminish the monetary damages to which a successful infringement plaintiff is entitled. And here, . . . the plaintiff did not move for a preliminary injunction, which contradicts [plaintiff's] assertion it cannot wait for a decision on infringement.").  Because Implicit "seeks exclusively monetary damages, as opposed to a preliminary injunction or other relief, 'mere delay in collecting those damages does not constitute undue prejudice.'" *Stragent LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446, 2017 U.S. Dist. LEXIS 192695, at *6 (E.D. Tex. July 11, 2017) (quoting *Crossroads Systems, Inc. v. Dot Hill Systems Corp.,* Case No. 13-CA-1025, 2015 U.S. Dist. LEXIS 77526, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015)).  More specifically, Implicit seeks a reasonable royalty—as opposed to lost profits—which further lessens any prejudice a stay may cause.

This factor weighs in favor of a stay pending resolution of the Sandvine Appeal and Fortinet's motions to transfer.

## III.    CONCLUSION

For the foregoing reasons, Fortinet submits that good cause exists for staying this action pending resolution of the Sandvine Appeal and Fortinet's motions to transfer.  Accordingly, Fortinet respectfully requests that the Court grant this motion.


Dated:  January 23, 2020                    Respectfully submitted,

                                            */s/ Matthew C. Gaudet*
                                            Matthew C. Gaudet (GA SBN 287789)
                                            mcgaudet@duanemorris.com

13

David C. Dotson (GA SBN 138040)
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
jrgibson@duanemorris.com
Alice E. Snedeker (GA SBN 151066)
aesnedeker@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Fax: 404.253.6901

Christopher J. Tyson (VA SBN 81553)
cjtyson@duanemorris.com
**DUANE MORRIS LLP**
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Telephone: 202.776.7800
Fax: 202.776.7801

Deron R. Dacus
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas
Telephone: 903.705.1117
Fax: 903.581.2543

*Counsel for Defendant Fortinet, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically on January 23, 2020, in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Fortinet has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted in late December 2019 and early January 2020. No agreement could be reached in the personal conference or through subsequent communications.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet