**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMPLICIT, LLC,<br>　　　　Plaintiff,<br><br>v.<br><br>IMPERVA, INC.<br>　　　Defendant. | Case No. 2:19-cv-00040-JRG-RSP<br>LEAD CASE |
| IMPLICIT, LLC,<br>　　　　Plaintiff,<br><br>v.<br><br>FORTINET, INC.<br>　　　Defendant. | Case No. 2:19-cv-00039-JRG-RSP |

**PLAINTIFF IMPLICIT, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT FORTINET'S SUPPLEMENTAL MOTION TO TRANSFER
VENUE TO THE DISTRICT OF DELAWARE (DKT. NO. 185)**

██████████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

I.      INTRODUCTION .............................................................................................1

II.     FACTUAL & PROCEDURAL BACKGROUND ...........................................1

III.    APPLICABLE LAW .........................................................................................2

IV.     ARGUMENT .....................................................................................................3

        A.    Fortinet Has Not Made the Predicate Showing that It Is an Intended Third-Party
              Beneficiary of the ████████████ ...........................................................3

        B.    Fortinet Has Not Made a Sufficient Showing of an Express
              License Defense .....................................................................................5

        C.    The ████████████ Does Not Provide Fortinet with an Implied License .............9

        D.    Several of the Asserted Claims Are Not Covered by the Forum Selection
              Clause ....................................................................................................11

        E.    Exceptional Circumstances Weigh Against Transferring this Case to
              Delaware ...............................................................................................13

        F.    Implicit Respectfully Requests a Severance from this Court ...............14

              1.    Alternatively, Implicit Respectfully Requests Leave to Amend Its
                    Pleadings .....................................................................................15

V.      CONCLUSION ...............................................................................................16

███████████████████████

# **TABLE OF AUTHORITIES**

**Cases**

*Acer Am. Corp. v. Hitachi Ltd.*
　　No. M 07-1827 SI, 2014 U.S. Dist. LEXIS 55234 (N.D. Cal. Apr. 14, 2014)................. 14

*ActiveVideo Networks, Inc. v. Verizon Commc'ns.*
　　694 F.3d 1312 (Fed. Cir. 2012............................................................................. 3

*Atl. Marine Constr. Co. v. United States District Court*
　　571 U.S. 49 (2013) ........................................................................................ 3

*Eastman Chem. Co. v. Alphabet Inc.*
　　No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477 (D. Del. Nov. 18, 2011) .............. 5

*Exelis Inc. v. Cellco P'ship*
　　No. 09-190-LPS, 2012 U.S. Dist. LEXIS 159085 (D. Del. Oct. 9, 2012)........................ 11

*Fortis Advisors LLC v. Meds. Co.*
　　No. 2019-0236-KSLM, 2019 Del. Ch. LEXIS 1405 (Ch. Dec. 18, 2019)........................ 4

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*
　　651 F.3d 1355 (Fed. Cir. 2011) ....................................................................... 2

*In re Rolls Royce Corp*
　　775 F.3d 671 (5th Cir. 2014) ............................................................... 12, 14, 15

*Invue Sec. Prods. v. Mobile Tech, Inc.*
　　No. 3:17-cv-000270-MOC-DSC, 2017 U.S. Dist. LEXIS 102692
　　(W.D.N.C. July 3, 2017)................................................................................ 15

*Jacobs v. Nintendo of Am., Inc.*
　　370 F.3d 1097 (Fed. Cir. 2004) ................................................................. 10, 11

*Madison Realty Partners 7, LLC v. AG ISA, LLC*
　　No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37 (Del. Ch. Apr. 17, 2011) ........................... 3

*New Moon Shipping Co. v. MAN B&W Diesel AG*
　　121 F.3d 24 (2d Cir. 1997) ............................................................................ 12

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*
　　871 F.2d 1082 (Fed. Cir. 1989) ....................................................................... 9

*Saint Lawrence Communs. LLC v. Amazon.com, Inc.*
　　No. 2:19-cv-00027-JRG, 2019 U.S. Dist. LEXIS 111968, (E.D. Tex. July 5, 2019) ..... 2, 3

*Sony Corp. v. Fujifilm Holdings Corp.*
    2017 U.S. Dist. LEXIS 164127, (S.D.N.Y. Sep. 28, 2017)....................................................5

*TransCore, LP v. Elec. Transaction Consultants Corp.*
    563 F.3d 1271 (Fed. Cir. 2009) ..............................................................10, 11

*UltimatePointer, L.L.C. v. Nintendo Co.*
    No. 6:11-CV-496-LED, 2013 U.S. Dist. LEXIS 74276 (E.D. Tex. May 28, 2013) ...11, 12

*Univ. of W. Va. v. Van Voorhies*
    278 F.3d 1288 (Fed. Cir. 2002) ..................................................................9

*Verde v. Stoneridge, Inc.*
    137 F. Supp. 963 (E.D. Tex. 2015)................................................................3

*Zix Corp. v. Echoworx Corp.*
    Civil Action No. 2:15-cv-1272-JRG, 2016 U.S. Dist. LEXIS 189227 (E.D. Tex. June 9, 2016)......................................................................................3

██████████████████████████

## I.    <u>INTRODUCTION</u>

The Court should deny Fortinet's Supplemental Motion to Transfer to Venue to the District of Delaware ("Motion"). (Dkt. No. 185). First, Fortinet has not provided any evidence or argument showing that it is an intended third-party beneficiary that is entitled to invoke the forum-selection clause in the ██████████    Second, in seeking an express license, Fortinet only attempts to show that some of its products use ██████████ which is insufficient under the unambiguous language of the Agreement.  Third, for its implied license defense, Fortinet provides a flawed legal analysis coupled with an inapposite case cite.  Fourth, Implicit's asserted *Beauregard* claims do not implicate the forum selection clause. This partial applicability results in exceptional circumstances that justify declining to enforce the forum selection clause.

If the Court finds that transfer is appropriate, Implicit respectfully requests that the Court sever the transferable claims into a separate matter number and transfer only that matter to Delaware.  If the Court declines to sever, then Implicit would respectfully request leave of Court to amend its complaint to dismiss the transferable claims from this action.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Implicit filed this patent infringement action against Fortinet on February 4, 2019.  Case No. 2:19-cv-37, Dkt. No. 1.  The products accused of infringement include Fortinet's FortiGate and FortiADC products lines and corresponding virtual products.  This Court consolidated the *Fortinet* case with the *Imperva* and *Juniper* cases on June 5, 2019.  Case No. 2:19-cv-40, Dkt. No. 25.  The patents-at-issue in all three of these cases are U.S. Patent No. 8,694, 683 ("the '683 patent"); U.S. Patent No. 9,270, 790 ("the '790 patent); U.S. Patent No. 9,591,104 ("the '104 patent); U.S. Patent No. 10,027,780 ("the '780 patent); U.S. Patent No. 10,033,839 ("the '839 patent"); and U.S. Patent No. 10,255,378 ("the '378 patent) (collectively, "Asserted Patents").  Of



the asserted claims, the following are *Beauregard* claims: claim 10 of the '683 patent; claims 15-19 of the '790 patent; claims 10-13 of the '104 patent; and claims 16-20 of the '378 patent.[1]

entered the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ The ▮▮▮▮▮▮▮ settled a patent infringement suit between the parties ▮▮▮▮▮▮▮▮▮▮▮▮▮ The ▮▮▮▮▮▮ was produced to Fortinet around September 2019. On November 6, 2019, a day after Fortinet "reached out" to Implicit, Implicit served Fortinet with interrogatories requesting information on the existence of processors within the Accused Products and their functionality. Ex. A, Implicit's ROG Request (11/6/19). On December 6, 2019, Fortinet served its response, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Ex. B, Fortinet's ROG Response (12/6/19). The instant Motion was then filed on January 8, 2020. Dkt. No. 185.

## III.   <u>APPLICABLE LAW</u>

When a party moving under 28 U.S.C. § 1404(a) raises the applicability of a forum selection clause, "the court must first consider whether the party asserting the clause and the defense or claim triggering that clause crosses the threshold required to trigger the application of the forum selection clause." *Saint Lawrence Commc'ns. LLC v. Amazon.com, Inc.*, No. 2:19-cv-00027-JRG, 2019 U.S. Dist. LEXIS 111968, at *4 (E.D. Tex. July 5, 2019) (citing *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011)). To cross this threshold, a defense must be "non-frivolous." *Gen. Protecht. Grp.*, 651 F.3d at 1359. The "attachment point"

---

[1] The remaining asserted claims are claims 1, 2, 4-5, and 8-9 of the '683 patent; claims 1, 3-5, 8-10, 12, and 13 of the '790 patent; claims 1-6, 16, 19, and 20 of the '104 patent; claims 1-3, 11, 13-14, 16, 18, and 20 of the '780 patent; claim 1 of the '839 patent; and claims 1-3, 11, and 14 of the '378 patent.

███████████████████████████████████████████████

for "non-frivolous" is located before "the mid-point of the spectrum" and is "[p]robably found

nearer the one-quarter marker." *Zix Corp. v. Echoworx Corp.*, Civil Action No. 2:15-cv-1272-

JRG, 2016 U.S. Dist. LEXIS 189227, at *10 (E.D. Tex. June 9, 2016).  If the movant satisfies this

showing, then the "usual § 1404 analysis is altered in two relevant ways: (1) the plaintiff's choice

of forum merits no weight, and (2) the district court should consider arguments about public

interest factors only." *Saint Lawrence Commc'ns.*, 2019 U.S. Dist. LEXIS 111968, *6 (citing *Atl.*

*Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 63-64 (2013)).[2]

## IV.   ARGUMENT

### A.   Fortinet Has Not Made the Predicate Showing that It Is an Intended Third-Party Beneficiary of the ████████████

To enforce the forum selection clause, Fortinet must first show that it was an intended

third-party beneficiary under Delaware law.[3] *See Madison Realty Partners 7, LLC v. AG ISA, LLC*,

No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37, at *5 (Del. Ch. Apr. 17, 2011) (reciting three-part

test).  Fortinet has failed to make that showing.  Instead, it simply assumes that it is a third-party

beneficiary, asserting that ████████████████████████████████████████████

████████████████████████ Mot., at 9.  Such an assertion, without more, is

insufficient to make a "non-frivolous" showing.  *See ActiveVideo Networks, Inc. v. Verizon*

*Commc'ns., Inc.*, 694 F.3d 1312, 1336 (Fed. Cir. 2012) (finding "ambiguous language of the

agreement" by itself was insufficient to raise a factual issue of intended third-party beneficiary).

---

[2] Neither Fortinet nor Implicit dispute that this case could have originally been filed in the District of Delaware.  *See* Mot., at 8.

[3] Delaware law applies to interpreting the ██████████████ including if Fortinet is a third-party beneficiary. ████████████████████████████; *Verde v. Stoneridge, Inc.*, 137 F. Supp. 963, 977 (E.D. Tex. 2015) ("[T]he Court applies [the law selected by the agreement's choice-of-law clause] in determining whether Mr. Verde is an intended third-party beneficiary . . . .").

3

██████████████████████████████████████████████

Fortinet also has not shown that it is a third-party beneficiary under the language of the

████████████████ .   The Agreement ███████████████████████████████████

█████████████   That Section ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████   The Agreement then ████████

███████████████████████████████████████████████

████████████████████████████████   Fortinet has not provided evidence

that Implicit had any potential claims against it ██████████████   based on Fortinet's status

as ████████████   such that Fortinet would fall within the class of third-party beneficiaries

██████████████████████████   This failure is dispositive of Fortinet's Motion.

Given that ████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████   *See Fortis Advisors LLC v. Meds. Co.*, No. 2019-0236-

KSLM, 2019 Del. Ch. LEXIS 1405, at *9 (Ch. Dec. 18, 2019) (finding inclusion of a specific

"third-party beneficiary" definition excluded others).  Disregarding this principle, Fortinet points

to ███████████████████████   asserting that all entities encompassed in the ██████

█████████████████████████   Mot., at 9-10.  But █████████████████████

██████████████████████████   And such a term should not be inferred within the

Section.  A point made clear by the fact that, under Fortinet's interpretation, the potential class of

third-party   beneficiaries   ████ █ ████ █████ █ █ █████ █████ █

██████████████████████████████████████████████████

██████████████████████████   Absent some other evidence, an inference that the

parties intended to make such a sweeping grant of rights is insupportable by the contract's

█████████████████████████████████████████████

language.  *See Eastman Chem. Co. v. Alphabet Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477, at *19 (D. Del. Nov. 18, 2011) (applying Delaware law and finding no evidence that the contracting parties intended to grant third-party beneficiary rights to the broad category of "Affiliates").

Further, even if Fortinet could show that it is a third-party beneficiary ███████████████ (which it cannot), it has provided no argument or evidence for why this would translate into it also being third-party beneficiary ███████████████████   *See Sony Corp. v. Fujifilm Holdings Corp.*, 2017 U.S. Dist. LEXIS 164127, at *19 (S.D.N.Y. Sep. 28, 2017) ("[T]he Court cannot find . . . that Sony has shown a likelihood of success on the merits of its claim that third-party beneficiaries of the licensing section are also implied third-party beneficiaries of the forum selection clause.").  A conclusion reinforced by the fact that ███████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████

## B.     Fortinet Has Not Made a Sufficient Showing of an Express License Defense

It is not enough that a Fortinet product may contain an ████████████ to implicate the ████ ████████   The purpose of the ████████████ was to protect ██████   It was not to extend rights to third-parties that may use ████████████ ████████████ ██████████████████████████ where ██████████████████████████ that is alleged to infringe the claims.  For that reason, ████████ states that the ████████████████ only applies in limited cases: ████████
██████████████████████████████████████████████
██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████  Fortinet has made no such showing.

Fortinet argues only that "Implicit's allegations against Fortinet's 'Accused Products' encompassed numerous products whose 'processing unit' was indisputably an ███████████." Mot., at 4 (emphasis in original). This statement misses the mark in terms of what the ████ ████████ requires. For the ████████████ to apply, the Agreement requires that a claim

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████  Fortinet's argument says nothing as to the actual functionality of the ███ ████████  how that functionality is alleged to have infringed; or why infringement would not exist in the absence of the ████████████—all of which are necessary.

Further, Fortinet fails to provide evidence that raises an issue of an express license defense. Namely, Fortinet depends upon Mr. Cooper's declaration, which merely states that "Fortinet uses ████████████ in . . . products" accused of infringement and lists the "FortiGate, FortiProxy, and FortiADC" product families as examples. Dkt. No. 185-1, Cooper Dec., at ¶ 6. This is not enough to exceed a bare allegation, especially in light of Mr. Cooper's general identification of "products." This forces one to guess as to which particular model within the listed product families he is actually referring to. *See* Ex. C, Fortinet's Product Matrix (listing thirty (30) different models under the Fortigate product family alone). Further, Mr. Cooper is Fortinet's "Director of Litigation, Intellectual Property, and Privacy," meaning his responsibilities (and personal knowledge) do not relate to the technical aspects of the Accused Products or the ███████████ Fortinet could have selected a declarant knowledgeable on such subject matter, but it declined to.

██████████████████████████████████████████

See Ex. D, Fortinet's Supp. Initial Disclosures, at 13 (listing employees knowledgeable of the design, development and functionality of the Accused Products).

Fortinet also makes the brief statement that the virtual Accused Products run on a "████████████████" that "████████████████." Mot. at 5.  To the extent that this can be considered an argument that these products fall within the Agreement, it too must be rejected.  Mr. Cooper's declaration actually provides no assertions relating to the developer of the software, rendering Fortinet's statements, at most, attorney argument.  Dkt. No. 185-1, Cooper Dec., at ¶ 8.

In regard to the required showing that the claim be ████████████████████ ████████████████  Fortinet relies on the disclosures within Implicit's infringement contentions.  Mot., at 10.  Fortinet has, however, already disclaimed an ability to rely on Implicit's contentions in such a way, responding to an interrogatory (which it has failed to supplement after the service of Implicit's amended contentions): "Implicit's infringement contentions . . . do not provide Defendant with sufficient information to understand the bases for Implicit's infringement allegations;" and "Implicit has not yet identified where and how each element of each asserted claim is found within the accused products and services . . . ."  Ex. E, Fortinet's ROG Res. (9/27/19), at 41-47.  Fortinet should not be able to claim that it does not "understand the bases for Implicit's infringement allegations" for purposes of withholding discovery and then assert that it does understand Implicit's infringement contentions when it needs to carry its burden in an evidentiary motion.  See FED. R. CIV. P. 37(c).  In any event, Fortinet only asserts that (1) Implicit's contentions identify products that contain an ████████████ and (2) that the contentions provide the term "CPU" as an example of a processor.  Mot., at 4.  Fortinet, however, never identifies which particular "CPU" disclosed by Implicit's contentions it believes to be an ████████████ And, even if it did, its evidentiary showing would still be insufficient.

7

████████████████████████████████

As can be seen in Implicit's contentions, the Accused Products appear to include multiple processors capable of performing the claimed technology, which is related to, *inter alia*, flow-based packet processing and application layer inspection.  *See,* Ex., F, '689 Patent Claim Chart (Element 1[a]).  For instance, Fortigate products are capable of "parallel processing," which involves "flow-based sessions [that] can be . . . accelerated . . . to enhance offloading of pattern matching to CP8 and CP9 content processors." *Id.* at 5.  Fortinet confirms the existence of these multiple processors, explaining on website that its Fortigate models can include "main processing," "content processors," "security processors," and "network processors."  Fortinet Ex. G, Hardware acceleration overview.

Further, Implicit's contentions point to processors which are not off-the-shelf ████ ████████ but are Fortinet's own processors, e.g., the "[p]urpose built FortiASIC processors." Ex. F, at 1.  The documents produced by Fortinet also provide that these, and other processors, are made by Fortinet itself.  *See* Ex. H, Fortinet-Implict_062109 at 062172 ("Within a year the third-party FPGA was replaced with the first custom developed FPGA called a CPI (Content Processor v1).").  In fact, ████████████████ provides that ████████████████████ for various processors.  ████████████████████████████████ ████████████████████████████  At least one Fortinet-produced processor appears to be included in many, if not all, the Accused Products: "All FortiGate appliances contain at least the following hardware: CPU, RAM, network interfaces, *ASIC Content Processor*, and a form of permanent storage."  *See* Ex. H, at 062199 (emphasis added).  Information on Fortinet's website provides the same: "In traditional security appliances, multi-purpose CPU-based architectures become an infrastructure bottleneck . . . . To accelerate the processing of security and networking functions, we design our own unique security

████████████████████████████████████████

processors . . . .” Ex. I, “Fortinet Security Processors.”[4]   The upshot of this is that the current

factual record shows that (1) the Accused Products include multiple processors; (2) Fortinet has

not identified which processing each of them do, and (3) at least one of these processors is a non-

████████   This means that Fortinet has not shown that ███████████████████████████

█████████████████████████████████████   as the Agreement requires.   For

this, and the other reasons identified above, Fortinet’s express license defense has not met the

threshold showing required to invoke the forum-selection clause.

**C.     The ████████████ Does Not Provide Fortinet with an Implied License**

Fortinet has also failed to make the required showing on its implied license.   First, the right

Fortinet believes that Implicit has attempted to “take back” is the right “granted to Fortinet as a

third-party beneficiary under the ████████.”   Mot., at 11.   This is, however, an allegation of

breach of an *express* contractual right.   And the legal result of a promisor breaching an express

license agreement is a breach of contract claim in favor of the promisee; it is not, as Fortinet

contends, the granting of an implied license by virtue of legal estoppel.   *See Power Lift, Inc. v.*

*Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989) (“A license agreement is

a contract governed by ordinary principles of state contract law.”).   Thus, even assuming

(*arguendo*) that Fortinet’s allegation is true, Fortinet’s recourse would be only to attempt to enforce

the terms of the express Agreement, not some separate implied license that embraces the same

subject matter.   *See Univ. of W. Va. v. Van Voorhies*, 278 F.3d 1288, 1302 (Fed. Cir. 2002)

(affirming district court’s dismissal of breach of implied contract claim by reasoning “to imply an

---

[4]   *See also*  https://www.youtube.com/watch?v=We4MQrjySHw  (video of Fortinet executives
discussing Fortinet’s development and functionality of its latest security processor (“FortiSOC4”),
an image of which can be seen at the time mark 0:33/2:18).

agreement in the face of an express agreement covering the same subject matter . . . is legally unsound").

Second, Fortinet is also incorrect in its belief that the *Jacobs* decision supports this legally flawed analysis.  Contrary to Fortinet's interpretation, the Federal Circuit did not base its holding on an actual affirmative right to sell accelerometers that was conveyed from Jacobs to Analog by virtue of the covenant-not-to-sue and license-grant provisions.  *See Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1101 (Fed. Cir. 2004); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (reaffirming the principle that "a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit").  Instead, the Court examined these two provisions to discern the intent and purpose of the parties in entering into the agreement, finding significant that the license expressly referenced the conduct of selling "accerlerometers . . . for use in tilt-sensitive control boxes." *Jacobs*, 370 F.3d. at 1101.  If Jacobs could freely sue Analog's accelermometer customers, then Analog would essentially be put back in the position it was in prior to the license agreement, *i.e.*, each of its accelerometer sales would generate infringement liability under Jacobs' patent.  Or, in the words of the Federal Circuit, the license would be rendered "commercially worthless." *Id*.  The doctrine of estoppel was, therefore, turned to by the Federal Circuit to prevent conduct that, while not constituting a technical breach of an actual contractual right, would nonetheless fully deprive Analog of the benefit the parties clearly intended it to receive under the bargain.  *See id*.

Here, the situation is different.  Fortinet has not provided evidence or argument that ▮ has had a benefit interfered with, let alone a benefit it has been fully deprived of.  Fortinet, instead, argues that one of its own rights—the right to "integrate ▮▮▮ into its products"—has

been derogated from.  Mot., at 10-11.  This argument is not only unsupported by *Jacobs* but is also premised on an affirmative right that no patent owner (including Implicit) could convey via a license agreement.  *See TransCore*, 563 F.3d 1271 at 1275.  Fortinet's argument should be rejected. *See Exelis Inc. v. Cellco P'ship*, No. 09-190-LPS, 2012 U.S. Dist. LEXIS 159085, at *15 (D. Del. Oct. 9, 2012) (finding a patent license agreement did not provide an implied license to the licensee's manufacturers because doing so would "terminate [the licensor's] otherwise existing rights against manufacturers and . . . would violate the intent, purpose, and plain language of the [patent license agreement]").

### D. Several of the Asserted Claims Are Not Covered by the Forum Selection Clause

If this Court does decide that Fortinet has sufficiently raised a license defense, several of Implicit's claims would still fall outside of the forum selection clause, namely, Implicit's *Beauregard* claims.[5]  *See* Ex. J, Asserted Beauregard Claims.  This is due to the fact that, as *Beauregard* claims, they do not claim a processing component of a system.  *See UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-CV-496-LED, 2013 U.S. Dist. LEXIS 74276, at *62 (E.D. Tex. May 28, 2013) (stating *Beauregard* claims "is a generally accepted style for claiming a computer-readable medium containing program instructions for a computer to perform a particular purpose").  Fortinet asserts that these claims, nonetheless, Implicate the ███████ because "Implicit's infringement contentions consistently rely on the same evidence . . . regardless of the subject matter claimed."  Mot., at 13-14.  But this argument is directed at the sufficiency of the disclosures within Implicit's infringement contentions, as opposed to the substantive issue of what Implicit's asserted claims actually cover.  Infringement of a *Beauregard* claim would exist absent

---

[5] Claim 10 of the '683 patent; claims 15-19 of the '790 patent; claims 10-13 of the '104 patent; and claims 16-20 of the '378 patent.  *See supra* § II.

an ▮▮▮, or any other kind, of processor and Fortinet has not argued otherwise.  Fortinet's other counterargument—that the claims recite physical components of system other than a computer-readable medium—is also without merit.  It is a condition of patent eligibility that a claim directed to a computer-readable medium have a functional relationship with an associated computer system.  M.P.E.P. 2111.05 (BIII).  The associated computer system—including its processors—is not, however, claimed.  *See UltimatePointer*, 2013 U.S. Dist. LEXIS 74276, at *62.

Thus, Implicit's asserted *Beauregard* claims fall outside of the Agreement and must be subjected to an unaltered Section 1404(a) analysis.  *See In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) (instructing that, in the event only some of the claims are directed at a signatory of a forum selection clause, a district court "must  consider the private factors of the parties who have *not* signed a forum selection agreement").  Fortinet left these private factors unaddressed in its Motion.[6]  It, instead, argues that the forum selection clause is nonetheless enforceable against the *Beauregard* claims by virtue of the clause's purported enforceability against Implicit's other claims.  Mot., at 12-13.  But this is a misunderstanding of a proper forum selection clause analysis, which must proceed on a *claim-by-claim* basis.  *See New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997) (instructing district court on remand to conduct a claim-by-claim factfinding on a motion to transfer where claims arose from multiple agreements, only some of which contained a valid forum selection clause).

Finally, Fortinet errs in asserting that the existence of this *Beauregard*-related dispute is, by itself, sufficient to trigger the forum selection clause.  Fortinet only argues (1) that Implicit's

---

[6] Implicit has previously shown in its briefing in opposition to Fortinet's original Motion to Transfer that Implicit's sources of proof are located in this District and that a convenience transfer to the Northern District of California would be inappropriate. (Case No. 2:19-cv-39, Dkt. No. 26; Case No. 2:19-cv-40, Dkt. Nos. 70 & 91).

███████████████████████████████████████

*Beauregard* claims cover more than a computer-readable medium and (2) regardless, a valid forum selection clause need only apply to some claims in order to be enforceable against them all.  These questions can be answered with complete indifference to the terms of the Agreement, as the former is a claim construction issue and the latter is an issue of general contract law.  Accordingly, even if this Court finds Implicit's other claims to be transferable, Implicit respectfully requests that the Court finds the opposite conclusion in terms of Implicit's *Beauregard* claims.

### E.    Exceptional Circumstances Weigh Against Transferring this Case to Delaware

If this Court finds that the forum selection clause is enforceable as to any of Implicit's claims, it should still decline to order a transfer due to the unusual circumstances surrounding this case.  To begin with, in terms of the public interest factors, the factor of court congestion weighs against transfer, as this District Court can bring a case faster to trial than the District of Delaware. Ex. K, Fed. Judiciary Statistics.  The local interest factor is either neutral or weighs against transfer, as both parties have a place of business within this District.  *See* Case No. 2:19-cv-39, Dkt. No. 26-18, Cooper Declaration, at ¶ 13 (identifying Fortinet's Plano sales office).  As federal patent law will govern in either forum, the remaining two public factors are neutral.

Most significantly is the fact that granting Fortinet's Motion will result in an unacceptable level of wasted of judicial resources.  As shown above, Implicit's *Beauregard* claims are not encompassed by the ███████████  Further, even under Fortinet's argument, only some of the Accused Products contain █████████████████████████████████████████

████████████████████████████████████████████████

Thus, some of Implicit's claims against Fortinet will remain within this District.  Parallel litigation of near-identical suits has been recognized as a sufficient, independent basis to decline enforcement of a valid forum selection clause, a point confirmed by the Fifth Circuit: "[T]he

need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *In re Rolls Royce*, 775 F.3d at 679.  Multiple district courts have applied this principle.  *See, e.g.*, *Acer Am. Corp. v. Hitachi Ltd. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, No. M 07-1827 SI, 2014 U.S. Dist. LEXIS 55234, at *76 (N.D. Cal. Apr. 14, 2014) (supporting its refusal to enforce a valid forum selection clause with the fact that doing so "would splinter Gateway's Sherman Act claims from its California state law claims").  The same result is called for here, as a transfer would create witnesses having to give depositions in different fora, duplicative motion practice, and the potential for conflicting rulings on materially identical issues (e.g., as claim construction, validity, and patentability).

Further, this is a consolidated action with two of the defendants having moved to transfer to Delaware (Juniper and Fortinet) and the third (Imperva) has not.  Imperva has also recently raised a defense under the ███████████ regarding its products.  Thus, this Court will have to address the merits of the license defense regardless of how Fortinet's and Juniper's Supplemental Motions to Transfer are ultimately resolved.  Additionally, if the claims against Fortinet and Juniper are transferred, it is unknown if they will be assigned to the same judge, or that they will be consolidated.  *See* Ex. L, Del. L.R., at 40.1(a) ("All matters pertaining to a case will be heard by the Judge to whom it has been assigned, unless otherwise ordered).  Currently, Implicit's infringement claims are being efficiently litigated in a single proceeding against multiple Defendants and critical deadlines are quickly approaching, such as the March 17, 2020 *Markman* hearing.  *See* Dkt. No. 172.  The forum selection clause, if applicable, should not be enforced in this unique circumstance where it will cause duplicate proceedings addressing the same patents and same ███████████ in two different courts (and potentially before three different judges).

**F.      Implicit Respectfully Requests a Severance from this Court**

████████████████████████████████

Should the Court conclude that transfer is still warranted, Implicit respectfully requests that the Court sever the asserted claims of the *Fortinet* case that the Court concludes should be transferred under the ████████████ into a new matter number and transfer only that matter to Delaware for adjudication. *See* FED. R. CIV. P. 21; *Rolls Royce*, 775 F.3d at 680 n.40 ("Even when venue is proper to all defendants, the court may sever . . . an unrelated claim and give it separate treatment . . . .") (quoting Wright & Miller, Fed. Prac. & Proc. § 1689 (3d ed. 2004)).  This would provide Implicit the opportunity to proceed with its claims against Fortinet that do not implicate the ████████████ under the current schedule in the current forum (as opposed to the entire *Fortinet* action, including the allegations that do not implicate the ████████████.

### 1. Alternatively, Implicit Respectfully Requests Leave to Amend Its Pleadings

In the eventuality that this Court declines to sever the transferable claims, Implicit respectfully requests the opportunity to move for leave of Court to amend its complaint and dismiss its non-*Beauregard* claims.  Doing so would moot Fortinet's Motion and allow Implicit to maintain litigating the remainder of its claims in the current forum.  *See Invue Sec. Prods. v. Mobile Tech, Inc.*, No. 3:17-cv-000270-MOC-DSC, 2017 U.S. Dist. LEXIS 102692, at *1 (W.D.N.C. July 3, 2017) (finding alleged infringer's motion to dismiss/transfer was mooted by a subsequently filed amended complaint).  Fortinet is incorrect that Implicit is foreclosed from further amending its complaint, as the standard imposed by Federal Rule of Civil Procedure 15(a)(2) ("when justice so requires") would easily be satisfied if the *Fortinet* action were to be transferred absent leave to amend and the amendment would narrow the scope of the disputed issues.

## V. CONCLUSION

For the foregoing reasons, Implicit respectfully requests that Fortinet's Supplemental Motion to Transfer (Dkt. No. 185) be denied by the Court.

Date: January 22, 2020

Respectfully Submitted,

By: */s/William E. Davis, III*
William E. Davis, III
(TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt
(TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty Wilson
(TX Bar No. 24106583)
twilson@davisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suit, 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by  email on this 22nd day of January, 2020.

*/s/William E. Davis, III*
William E. Davis, III

16

