**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

IMPLICIT, LLC,
     Plaintiff,

v.

IMPERVA, INC.
     Defendant.

Case No. 2:19-cv-00040-JRG-RSP
LEAD CASE

## PLAINTIFF IMPLICIT, LLC'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT IMPERVA, INC.

## I.      INTRODUCTION

Plaintiff Implicit, LLC ("Implicit") moves to compel certain discovery from Defendant Imperva, Inc. ("Imperva").    This includes the production of documents, responses to interrogatories, and to make witnesses available in the United States for deposition.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a consolidated patent infringement case[1] in which Implicit accuses Imperva's products including the Web Application Firewall product line ("SecureSphere") and its Cloud Web Application Firewall ("Cloud WAF," formerly referred to by Imperva as "Incapsula").

Imperva has produced predominantly public-facing or customer-facing documentation and source code. ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████. Imperva has not produced any granular cost or profitability data, including any information regarding Imperva's acquisition by Thoma Bravo in 2018.  For the period preceding this acquisition, the only additional financial-related information are 10-K forms filed by Imperva from 2012 through 2017.   Absent are any internal company presentations, competitor analyses, customer surveys, employee training materials, and product schematics or other product design documents.  Also missing are Imperva's patent license agreements.

Implicit has requested this information since August 2019.  Implicit sent Imperva a letter describing sixty-four categories of documents it expected the latter to produce under this Court's Discovery Order.  *See* Dkt. No. 107, at ¶ 3(b).  These requests encompassed internal marketing and technical documents.  Further, for a time period beginning November 8, 2011 (the approximate

---

[1] The patents-at-issue are U.S. Patent No. 8,694,683; U.S. Patent No. 9,270,790; U.S. Patent No. 9,591,104; U.S. Patent No. 10,027,780; U.S. Patent No. 10,033,839; and U.S. Patent No. 10,255,378 (collectively, "Asserted Patents").

earliest date on which some of the Accused Products appear to have been offered for sale) to the present, Implicit sought information sufficient to show revenue, costs (including both direct and indirect), and the profitability related to the Accused Products.  Implicit sought this information on both a worldwide and United States specific basis.

On August 26, 2019, Implicit served its First Set of Common Interrogatories to Defendants, which included fifteen interrogatories, and Imperva served its responses and objections on October 2, 2019.  Imperva provided non-substantive responses to Interrogatory Nos. 7, 9-11, 13, and 15, responding that "[a]ny additional responsive and non-privileged information on this subject will be provided in expert reports and other submissions at the appropriate time . . . ." *See* Ex. A, at ROG Nos. 7, 9-11, 13, and 15.  Imperva also provided the same non-response to an interrogatory seeking identification of factual matters, namely, Imperva's efforts to identify or avoid infringement.  *See id.*, at ROG No. 14.  Accordingly, Imperva has failed to provide sufficient responses to ROGs No. 7, 9-11, and 13-15.

On December 20, 2019, Implicit served Imperva six depositions notices—five individual notices under Rule[2] 30(b)(1) and one corporate representative notice under Rule 30(b)(6).  On December 23, Imperva informed Implicit by email that its witnesses would not be made available on the noticed dates and that some depositions would have to occur in Israel.  Imperva, however, provided no alternative dates, never identified which witnesses would act as corporate representatives, and did not respond to Implicit's questioning concerning the identification of the Israel-based employees, whether these employees ever traveled to North America in the ordinary course of their business, or whether any United States-based employees were knowledgeable

---

[2] The term "Rule" is used herein to refer to the Federal Rules of Civil Procedure, unless indicated otherwise.

████████████████████████████████

concerning the technological aspects of the Accused Products.   It appears that there are knowledgeable technical Imperva witnesses in the United States because Imperva's Chief Technology Officer, Kunal Anand, appears to be based in California.

The parties met-and-conferred on this Motion on January 20.  During this meet-and-confer, Imperva informed Implicit that, in terms of technical and marketing documents, it satisfied its discovery obligations by producing publicly available information and source code.  Imperva also stood on its objection that Implicit's interrogatories required expert testimony.  Finally, Imperva failed to provide dates for any of the noticed depositions and adhered to the position that the depositions of its technical witnesses would have to occur in Israel.  The parties had further correspondence but were unable to resolve the issues.

## III.   ARGUMENT

### A.   The Court Should Compel Imperva to Produce Documents

Imperva has not produced any internal technical or marketing documents.   ███████████

████████████████████████████████████████

███████████████████████████████████████ This is a rare case in which a defendant refuses to produce any internal documentation.  Imperva believes that it can satisfy its discovery obligations by making its source code available and scraping documents from its public and customer-facing websites.

Imperva is wrong.  Imperva was obligated to collect and produce internal technical documents that show how the source code operates and was designed, including architecture documents that show internally how Imperva's products work.  Imperva has not produced those documents or internal design documents.  It is unlikely that Imperva hires new engineers and only provides those engineers with public documents and unexplained source code to educate them on

████████████████████████████████████████████

how the products work.  It is also unlikely that Imperva does not have any internal marketing, competitive analysis, market share documents, projections or other documents that show how Imperva's Accused Products are positioned in the market and why Imperva's customers buy those Products.  These documents are relevant to damages and should have been produced months ago.

Imperva's financial information (*e.g.*, granular cost and profit information) is also relevant to damages.  Cost and profit information is relevant to many *Georgia-Pacific* factors for damages, including Nos. 6, 8, and 11-13.  For that reason, that type of information is routinely produced in patent infringement cases.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

This representation cannot be squared with the real-world facts.  Imperva was a public company until 2017 that disclosed aggregated financial data in its SEC filings.  The granular underlying data that Imperva rolled up into those filings (whether on a product-by-product basis, product-line basis, business-unit basis, or another level) is relevant to damages and should have been produced.  Moreover, Imperva represented in its SEC filings which entities it considers to be competitors and described its position in the marketplace relative to these competitors.  The underlying data for these conclusions must exist and must be produced, ████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████  Indeed, Imperva would have this Court believe that that Thoma Bravo acquired Imperva for $2.1 billion without any detailed financial analysis of how profitable Imperva's products are, how much it costs to operate Imperva's business and make and sell its

████████████████████████████████

products, and where Imperva fits within the competitive landscape.  There is no basis for Imperva

to withhold this discoverable information.

    **B.**    **Implicit Has Good Cause to Obtain Email and Chat Production From Imperva**

    Imperva has not produced sufficient documentation.  ██████████████████████

████████████████████████████████  Implicit inquired about if that

information would be contained in email or messages (*e.g.*, Slack).  Imperva asserted that it would

not attempt to collect and produce this information due to the Court's E-Discovery Order.  *See*

Dkt. No. 112.

    Given the state of Imperva's document production, Implicit respectfully submits that it has

good cause to seek production of internal corporate chat, emails, and all other forms of electronic

correspondence specified in Paragraphs 6F and 7 of the E-Discovery Order.  Dkt. 112, at ¶¶ 6F

and 7.  Accordingly, Implicit respectfully requests leave to conduct such discovery.  *Id.*  Imperva's

document production is deficient on a level that rare in patent infringement cases.  As detailed

above, Imperva has not produced any internal documentation except for one Excel spreadsheet.  It

does not appear that Imperva has done a custodian search of hard drives or any internal document

repositories, such as DropBox.  Those sources are not covered by the E-Discovery Order and

would likely yield the types of technical and marketing documents that should have been produced

long ago.  But if Imperva truly does not have those documents in those sources, Implicit requests

that it search for those documents as attachments to emails or other messaging platforms, such as

Slack.

    Imperva's currently produced documents provide only high-level descriptions that do not

explain at a detailed level how those products operate or the architecture or structure of the source

code.  Imperva has argued that it would be "highly burdensome" to produce these communications

because the chats would be in Hebrew.  But Imperva is headquartered in the United States.  *See* https://www.imperva.com/company/locations/.  It surely has U.S.-based custodians that engage in discussions in English.  Indeed, the Chief Technology Officer of Imperva is based in the United States.  *See* https://www.linkedin.com/in/kunalanand/.  Implicit is entitled to discover the key facts about how Imperva's products operate, how they are marketed, and how much money Imperva makes off them.  Imperva has not produced that information.  And if that information is contained in email and messages, then Implicit has good cause to get it produced.

> ### C.   Imperva Must Supplement Its Deficient Interrogatory Responses

Federal Rule of Civil Procedure 33 explicitly provides for contention interrogatories and this Court has confirmed a party cannot completely avoid answering them by objecting that they seek information properly disclosed via expert reports.  *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP, 2017 U.S. Dist. LEXIS 160562, at *7-8 (E.D. Tex. Apr. 19, 2017).  If such an objection was viable, then "contention interrogatories would cease to be a discovery device because answers to such interrogatories would come only after expert reports had been served and after fact discovery closed."  *Id.*  Without a response to these interrogatories, Implicit will be unable to probe during fact discovery the underlying merits of Imperva's contentions on issues including non-infringing alternatives and technical/financial apportionment of the Accused Products.  *See* Ex. A.  Such an inability prejudices Implicit and requires the compulsion of responses from Imperva.  *See Saint Lawrence Communications LLC v. ZTE Corp. et al*, 2:15-cv-349-JRG, Dkt. No. 442 (E.D. Tex. Feb. 22, 2017) (striking expert's opinions on non-infringing alternatives first disclosed in rebuttal report in light of previously served interrogatory).

> ### D.   Imperva Should Be Compelled to Make Individuals Available for Depositions

Imperva is obligated to provide dates and make witnesses available for the five noticed individual depositions and the one noticed corporate representative deposition.  More than a month has elapsed since Implicit first served its notices.  Further, the parties have met-and-conferred extensively on this issue.  Moreover, Imperva has failed to move for a protective order under Rule 26(c) as it must if it wishes to bar any testimony on the topics noticed under Rule 30(b)(6).  *See Ferko v. NASCAR*, 218 F.R.D. 125, 133 (E.D. Tex. 2003).  A definite deadline should be placed upon Imperva to make all of the noticed individuals and a corporate representative(s) knowledgeable on the entirety of the noticed topics available for deposition by February 21, 2020.

Implicit also requests that the Court order Imperva to produce its witnesses for deposition in the United States.  Imperva plans to produce its technical witnesses for deposition in Israel, even though Imperva is a U.S.-based company and its Chief Technology Officer resides in the United States.  Implicit thus respectfully requests that the Court compel Imperva to produce all of its witnesses in the United States to avoid the expenditures associated with undertaking international depositions.

## IV.  CONCLUSION

For the foregoing reasons, Implicit respectfully requests to compel discovery from Imperva to the extent provided by the proposed Order attached hereto.

Date: January 30, 2020

Respectfully Submitted,

By: */s/ William E. Davis, III*
William E. Davis, III
(TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt
(TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com

Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty Wilson
(TX Bar No. 24106583)
twilson@davisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suit, 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Barry Golob
bgolob@cozen.com
Thomas Fisher
tfisher@cozen.com
**Cozen O'Connor**
1200 19th Street, NW
Washington, DC 20036
Telephone:  (202) 912.4815
Facsimile:  (202) 618.4843

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being

filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served

on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V).

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of

record not deemed to have consented to electronic service will be served with a true and correct copy

of the foregoing by email on this 30th day of January, 2020.

*/s/ William E. Davis, IIII*
William E. Davis, III

**CERTIFICATE OF CONFERENCE**

The undersigns certifies that the parties have complied with the meet-and-confer requirements pursuant to Local Rule CV-7(h) and the motion is opposed.   The personal conferences required by Local Rule CV-7(h) were conducted telephonically on January 21, 2020 with lead counsel for Defendant (Michael Stacksteder, Christopher Larson, and Jessica Benzler) and lead counsel for Plaintiff (Bo Davis and Christian Hurt).   Email correspondence concerning this discovery dispute was also exchanged between the parties, including on January 16 through January 18, 2020 and January 21, 2020.   The parties were unable to reach agreement because they dispute the Defendant's discovery obligations in this case.   The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ William E. Davis, III*
William E. Davis, III