**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| IMPERVA, INC. | § | Case No. 2:19-cv-00040-JRG-RSP |
| | § | LEAD CASE |
| | § | |
| JUNIPER NETWORKS, INC. | § | Case No. 2:19-cv-00037-JRG-RSP |
| | § | |
| Defendants. | § | |

**PLAINTIFF IMPLICIT, LLC'S SURREPLY IN OPPOSITION TO DEFENDANT
JUNIPER NETWORKS, INC.'S MOTION TO DISQUALIFY DR. KEVIN ALMEROTH
AS AN EXPERT FOR PLAINTIFF IMPLICIT, LLC (DKT. 177)**

Disqualification of Dr. Almeroth is inappropriate in this case given that Juniper delayed seeking disqualification for five months, his role as a claim-construction expert in the case against Juniper does not present a conflict, and disqualification would unfairly prejudice Implicit.

## I.    Juniper's Motion is Untimely; Thus, Juniper Waived Seeking Disqualification.

By waiting five months before filing its motion, Juniper was not diligent and has waived its right to seek disqualification. Juniper does not dispute that it could have sought disqualification in August, 2019, when it was aware of its grounds for disqualification.  Juniper carried the burden to promptly seek disqualification; a burden that never shifted to Implicit.  Implicit never withdrew Dr. Almeroth as its expert and thus, had no reason to "provide notice [to Juniper] in the event that Implicit sought to go forward with Dr. Almeroth" as Juniper contends. Dkt. 205 at 4.  Juniper had to do more than merely object if it wanted to disqualify Dr. Almeroth.  Juniper contends that "given Implicit's assurances, there was no need for Juniper to do anything further on this issue." *Id*.  But Juniper cannot so easily wash its hands of its burden to promptly seek disqualification.  Implicit did not give any assurances to Juniper that it would not proceed with using Dr. Almeroth as an expert.  Implicit agreed only that it would not have substantive communications with Dr. Almeroth concerning the work that he did for Juniper including any confidential or privileged information or communications, if any, that Dr. Almeroth obtained in the course of that work.  And Implicit has lived up to that agreement.  Moreover, the Almeroth Declaration does not rely on his prior work for Juniper or any confidential or privileged information obtained from Juniper.

Given that Implicit never stated that it would withdraw Dr. Almeroth as an expert, Juniper should have promptly sought disqualification in August, 2019 rather than casually assume that "there was no need for Juniper to do anything further on this issue." Dkt. 205 at 4.  Juniper's position appears to be that it only had to object and then do nothing further.  A diligent party would

know that it must do more than merely object – it must **promptly** file a motion to disqualify. *See Hinterberger v. Catholic Health Sys., Inc.,* No. 08-CV-380S(F), 2013 U.S. Dist. LEXIS 73143, at *88-90 (W.D.N.Y. May 21, 2013) ("[T]he only relevant communication of an objection to a challenged expert or consultant's services to an opponent is not to the objected expert or consultant, or, for that matter, to the opponent's counsel, but to the court by a formal request to disqualify."). And that Juniper did not do.  Juniper waived its right to seek disqualification by delaying five months before making a formal request to disqualify.  Other courts have denied disqualification motions where the objecting party delayed filing a motion for three to five months.[1]

By arguing that "*less than two months* elapsed between Implicit's 'notice' and Juniper's motion," Juniper would have the Court believe that the date [November 4, 2019] that Dr. Almeroth was identified in Implicit's P.R. 4-2 Disclosures is when Implicit first provided notice. Dkt. 205 at 5.  But Juniper wholly ignores the fact that Implicit disclosed Dr. Almeroth *three months earlier* on August 2, 2019.  The disclosure on August 2, 2019 clearly gave sufficient notice to Juniper because Juniper boasted that it objected "within a matter of hours." Dkt. 177 at 1; *see English Feedlot, Inc., v. Norden Labs, Inc.,* 833 F.Supp.2d 1498, 1504 (D. Colo. 1993) (relevant time period to determine waiver question measured from date defendant first became aware of existence

---

[1] *See, e.g., Creagri, Inc. v. Pinnaclife Inc.,* No. 5:11-CV-06635-LHK, 2013 U.S. Dist. LEXIS 178534, at *30 (N.D. Cal. Dec. 18, 2013) ("[T]he Court finds that disqualifying Dr. Visioli would prejudice Pinnaclife. CreAgri did not file the instant motion or otherwise raise the issues contained in the instant motion to the Court until **five months** after it discovered that Pinnaclife's expert had a potential conflict and that Pinnaclife was unwilling to withdraw the expert."); *Dekany v. City of Akron,* No. 5:16-CV-1829, 2018 U.S. Dist. LEXIS 4530, at *2-3 (N.D. Ohio Jan. 10, 2018) ("[I]f Defendants hold a genuine belief that Rini received and will utilize confidential information during his prior engagement, it defies logic that counsel would wait roughly **three months** to seek his exclusion."); *Walsh v. Krantz,* No. 1:07-CV-0616, 2008 U.S. Dist. LEXIS 99026, at *18-19 (M.D. Pa. Dec. 8, 2008) ("Walsh waited **three months** before moving to disqualify . . . Walsh's failure to seek disqualification, . . . demonstrates a failure to exercise the reasonable diligence required by the law. . . . Walsh neglected to act with reasonable diligence; thus, his motion to disqualify based upon the court's August 22, 2008 directive regarding expert reports is untimely.")

of ground for disqualification to date of motion filed with court).  Juniper cannot have it both ways by cherry-picking dates to suit different purposes, *e.g.,* it relies on August 2, 2019 to show that it promptly objected, but then relies on November 4, 2019 as to date the Court should use to calculate the elapsed time between Implicit's notice and Juniper's motion.  November 4, 2019 is significant because that is when Implicit gave its <u>second</u> notice to Juniper about Dr. Almeroth, and Juniper failed to promptly object, which it has yet to provide an explanation, or promptly seek disqualification.  The Court should deny Juniper's Motion due to Juniper's lack of diligence.

## II.   Dr. Almeroth's Role as a Claim-Construction Expert Does Not Present a Conflict.

Implicit's use of Dr. Almeroth as a claim-construction expert in the Juniper case does not present a conflict because there is no meaningful overlap in issues.  His role in the case against Juniper is limited to providing his expert opinions on claim-construction issues as set forth in the Almeroth Declaration, which does not depend on anything specific to Juniper or any of Juniper's confidential or privileged information.  Juniper has not identified anything in the Almeroth Declaration that depends on anything specific to Juniper or any of Juniper's confidential or privileged information.  Juniper asserts that in Dr. Almeroth's prior work for Juniper, he "prepared expert reports in the IPR proceedings with opinions on issues of claim construction." Dkt. 177 at 3.  But Juniper only provided select excerpts from a 2014 Declaration by Dr. Almeroth in support of that contention. Dkt. 177-5.  These excerpts were not filed under seal.  The claim construction analysis portion from that 2014 Declaration shows that Dr. Almeroth analyzed only **publicly available information**; specifically, a single term ("Rule") from a patent ('612 Patent) that is not in the present case.  That declaration does not discuss Juniper's products, litigation strategies, or any of Juniper's confidential or privileged information as part of Dr. Almeroth's claim-construction analysis. Dkt. 177-5, at ¶¶ 42-50. Also, the declaration by counsel for Juniper

("McPhie Declaration") does not contend that Dr. Almeroth's claim-construction analysis in 2014 relied on or involved any Juniper's products, litigation strategies, or any of Juniper's confidential or privileged information. Dkt. 177-1.  In fact, the McPhie Declaration does not mention claim-construction at all.

The McPhie Declaration alleges generally that, as part of Dr. Almeroth's prior work for Juniper, counsel for Juniper "discussed privileged and confidential information belonging to Juniper" with him and that the discussions included "litigation strategy as well as substantive arguments regarding Juniper products and the prior art, including the issues addressed in his expert reports." Dkt. 177-1.  Even if Juniper's litigation strategies were discussed, "an expert's exposure to litigation strategy in an unrelated and different action is insufficient to warrant the extreme sanction of disqualification." *Chamberlain Group, Inc. v. Interlogix, Inc.,* 2002 U.S. Dist. LEXIS 6998, 2002 WL 653893, at *12 (N.D. Ill. Apr. 19, 2002).  Dr. Almeroth is not a patent lawyer. And there is no evidence that he acted as Juniper's litigation consultant.  Indeed, "it would be foolish for the retaining party to use a testifying expert [to advise on strategy], as the communications would be an open book, available for the opponent to review." *Id.,* at *13.  And even if prior art had been discussed with Dr. Almeroth, the subject matter of that discussion was material contained in publicly available patents, which is discoverable and does not rely on Juniper's confidential or privileged information.

Juniper bears the "burden of pointing to specific and unambiguous confidential disclosures" that it made to Dr. Almeroth which, if revealed, would prejudice Juniper.  *FTC v. Innovative Designs, Inc*., No. 16-1669, 2018 U.S. Dist. LEXIS 42510, at *21 (W.D. Pa. Mar. 15, 2018).  "Conclusory assertions, unproven statements, or generalized and vague allegations do not satisfy this burden." *Id*.  And that is all that Juniper has provided, which is not enough to carry its

burden.  Juniper did not even produce a copy of Dr. Almeroth's retention letter, which bears on the confidential relationship issue.  Given the lack of a conflict, the Court should deny Juniper's motion.

### III.    Disqualifying Dr. Almeroth Would Be Unfairly Prejudicial to Implicit.

Disqualifying Dr. Almeroth would be unfairly prejudicial to Implicit given Juniper's lack of diligence and the absence of a conflict.  Disqualification is a drastic measure that should be used sparingly. *Koch Refining Co. v. Boudreaux*, 85 F.3d 1178 (5th Cir. 1996).[2]  Implicit followed the rules, Juniper did not.  Implicit disclosed Dr. Almeroth on August 2, 2019, pursuant to the Protective Order.  Whereas Juniper's excuse for ignoring the Protective Order's requirement that it file a motion for protective order within 15 days is to portray the Protective Order as "entirely immaterial" and its five-month delay in seeking disqualification as merely a "hypertechnical violation."  Dkt. 205, at 1, 5.  "Consideration of prejudice is especially appropriate at late stages in the litigation, at which time disqualification is more likely to disrupt the judicial proceedings." *Life Techs. Corp. v. Biosearch Techs., Inc.,* No. 12-CV-0852, 2012 U.S. Dist. LEXIS 63975, 2012 WL 1604710, at *10 (N.D. Cal. May 7, 2012).  Implicit would suffer undue hardship if Dr. Almeroth were disqualified at this stage of the case given that it relied on the Almeroth Declaration in preparing its claim construction brief and would be left with no supporting declaration from its claim-construction expert.

### IV.    CONCLUSION

Implicit respectfully requests that this Court deny Juniper's Motion.

---

[2] *See also Weaver v. Mobile Diagnostech, Inc.*, No. 02-CV-1719, 2009 U.S. Dist. LEXIS 36277, at *24 (W.D. Pa. 2009) ("[D]isqualification of an expert witness is a drastic measure that is imposed reluctantly."); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) ("Disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely.").

Dated:  February 3, 2020

Respectfully Submitted,

By: */s/ Edward Chin*
William E. Davis, III (TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt (TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty William Wilson
(TX Bar No. 24106583)
twilson@bdavisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

*Counsel for Plaintiff Implicit, LLC*

---

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this February 3, 2020.

*/s/ Edward Chin*
Edward Chin