███████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br>　　　Plaintiff,<br><br>v.<br><br>IMPERVA, INC.<br>　　　Defendant. | Case No. 2:19-cv-00040-JRG-RSP<br>LEAD CASE |
| IMPLICIT, LLC,<br>　　　Plaintiff,<br><br>v.<br><br>FORTINET, INC.<br>　　　Defendant. | Case No. 2:19-cv-00039-JRG-RSP<br>CONSOLIDATED CASE |

### PLAINTIFF IMPLICIT, LLC'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT FORTINET, INC.

I.  **INTRODUCTION**

Plaintiff Implicit, LLC ("Implicit") moves to compel certain document production from Defendant Fortinet, Inc. ("Fortinet").

II. **FACTUAL AND PROCEDURAL BACKGROUND**

In this consolidated action, Implicit has accused Fortinet of directly and indirectly infringing its patents.[1] The products accused of infringement include Fortinet's FortiGate and FortiADC product series. ("Accused Products").

On August 21, 2019, Implicit sent a letter to Fortinet detailing the categories of documents Implicit expected Fortinet to produce under this Court's Discovery Order. *See* Dkt. No. 107, at ¶ 3(b). This letter included a request for all license, settlement, royalty, or other form of agreement that Fortinet is or has been a party to and that concern the Accused Products. Implicit sought this same form of information through interrogatories served on August 26, 2019. Ex. A, Implicit's First Set of Common Interrogatories. Fortinet served responses to these interrogatories on September 27, 2019 but provided no substantive response to Interrogatory No. 8—stating only that it was "willing to meet and confer as to the scope of [the] Interrogatory"—and only identified license agreements Implicit had entered into with third parties in response to Interrogatory No. 9. No information was provided concerning Fortinet's own license or settlement agreements.

In addition to lacking comparable licenses, Fortinet's document production is deficient as is consists predominantly of public-facing or customer-facing documentation (e.g., user guides, manuals, and quick start guides) and source code. Absent from production are internal competitor

---

[1] The patents-at-issue are U.S. Patent No. 8,694,683; U.S. Patent No. 9,270,790; U.S. Patent No. 9,591,104; U.S. Patent No. 10,027,780; U.S. Patent No. 10,033,839; and U.S. Patent No. 10,255,378 (collectively, "Asserted Patents").

█████████████████████████████████████████

analyses, customer surveys, employee training materials, engineering documents, and product schematics or other product design documents.

Fortinet supplemented its document production on four different occasions during the time period of August through December 2019—specifically, on August 19, September 24, October 24, and December 6. However, no patent license agreements were produced in any of these supplemental document productions; nor were any internal marketing or technical documents produced. On January 11, 2020, Implicit again sought information on comparable licenses by serving Fortinet with its Second Set of Individual Interrogatories. Ex. B, Fortinet's Objections and Responses to Implicit's Second Set of Individual Interrogatories to Fortinet, at Interrogatory No. 5.

On January 18, 2020, Implicit's counsel sent Fortinet's counsel an email that outlined Fortinet's current discovery deficiencies, including an explicit reference to its failure to produce any of its patent licenses. The parties then held a lead-and-local-counsel telephonic meet-and-confer on January 23. Following this meet-and-confer, Fortinet's counsel sent an email to Implicit's counsel that stated that Fortinet "anticipates producing its licenses around February 10 . . . ."

On February 10, Fortinet served its responses to Implicit's Second Set of Individual Interrogatories and supplemented its document production. ████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
█████████████████     ████████████████████     █████████████████
█████████████████████

2

These ▮▮▮▮ do not represent the totality of discoverable agreements Implicit has repeatedly sought and is entitled to receive. For instance, Fortinet filed a complaint against Palo Alto Networks, Inc. ("PAN") asserting (*inter alia*) claims of patent infringement arising from PAN's sale of its firewall products (i.e., similar products as those accused of infringement in the instant suit). *See Fortinet, Inc. v. Palo Alto Networks, Inc. et al.*, Case No. 5:09-cv-00036-RWS (Dkt. No. 1) (N.D. Cal. Jan. 6. 2009), at ¶¶ 25-31. After two years of litigation, this suit was voluntarily dismissed by the parties with prejudice. *Id.*, at Dkt. No. 252. The agreement reached by the parties leading to this voluntarily dismissal and all related documents are examples of documents that fall within Implicit's discovery requests but have yet to be produced by Fortinet. As another example, Fortinet filed a patent infringement suit against Sophos, Inc. ("Sophos") that related to the latter's selling of its "Anti-Virus" software. *Fortinet, Inc. v. Sophos, Inc. et al.*, Case No. 3:13-cv-05831-EMC (Dkt. No. 1) (N.D. Cal. December 16, 2013), at ¶¶ 38-64. This suit was voluntarily dismissed with prejudice by the parties on December 16, 2015, but the agreement leading to this dismissal and related documents have not been produced by Fortinet in this litigation. *Id.*, at Dkt. No. 338. As a third and final example, Trend Micro Incorporated ("Trend Micro") sued Fortinet for patent infringement that included various FortiGate products as accused products. *See Trend Micro Incorporated v. Fortinet, Inc.*, Case No. 5:04-cv-01785-RMW (Dkt. No. 1) (N.D. Cal. May 5, 2004). The agreement (and related documents) leading to the voluntary dismissal with prejudice of this suit (which occurred on February 13, 2006) have not been produced by Fortinet either.[2] *See id.*, at Dkt. No. 54.

---

[2] Notably, in a related breach of contract state court action, Trend Micro attached as an exhibit to a court filing a redacted version of the "Settlement and Patent License Agreement" entered into between it and Fortinet that resolved the federal court infringement suit. *Trend Micro Incorporated et al. v. Fortinet, Inc.*, Civil Case No. 1-09-CV-149262 (Sup. Ct. of Cal. April 4, 2011) (Third Amended & Verified Complaint for Breach of Contract & Declaratory Judgment).

███████████████████████████████████████████

### III. ARGUMENT

#### A. Licenses Related to the Accused Products Should Be Produced

Fortinet should be compelled to produce the totality of license agreements it has entered into relating to the Accused Products, including (but not limited to) the agreements and documents relating to the voluntary dismissals in the *PAN*, *Sophos*, and *Trend Micro* actions. A reasonable royalty analysis "may consider 'rates paid by the licensee for the use of other patents *comparable* to the patent in suit.'" *Paltalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 U.S. Dist. LEXIS 131093, at *3-4 (E.D. Tex. Mar. 8, 2009) (quoting *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)) (emphasis in original). Such licenses, which are relevant under *Georgia-Pacific* factors Nos. 2 and 3, require production in this case.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Its agreements with PAN, Sophos, and Trend Micro should be produced as well. PAN and Sophos operate in the same market and are competitors of Fortinet and FireEye, a fact that Fortinet admits in its SEC 10-K filings. And PAN, Sophos, and Trend Micro all sell products that encompass technology relating to that covered by the Asserted Patents. Indeed, Sophos (prior to its dismissal) was a consolidated defendant in the above-captioned action. *See* Dkt. No. 141. And Implicit has previously asserted a number of the same patents that are at-issue in this matter against PAN and Trend Micro. *See Implicit, LLC v. Palo Alto Networks, Inc.*, Case No. 6:17-cv-00336-JRG (Dkt. No. 1) (E.D. Tex. June 6, 2017); *Implicit, LLC v. Trend Micro, Inc.*, Case No. 6:16-cv-00080-JRG (Dkt. No. 1) (E.D. Tex. Feb. 23, 2016). The agreements

relating to *PAN*, *Sophos*, *Trend Micro* actions, along with remainder of the licenses in Fortinet's possession, custody, or control relating to the Accused Products should be produced.

A license agreement is not removed from the scope of discovery simply because it was entered into more than six years before a suit is filed. In determining relevancy, what matters is whether an actual license is potentially technologically and economically comparable to the hypothetical license. *See Elbit Sys. v. Hughes Network Sys. LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 U.S. Dist. LEXIS 94495, at *53 (E.D. Tex. June 20, 2017) (assessing reliability of expert's opinion based on the technological and economical comparability between opined-on licenses and the hypothetical license); *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 155754, at *11-12 (E.D. Tex. Nov. 9, 2016) (same). Temporal comparability is not the relevant analysis. The agreements arising from the *PAN*, *Sophos*, and *Trend Micro* actions possess the requisite level of comparability to be discoverable. And to the extent that Fortinet is withholding these documents on the basis that they fall outside some temporal limitation, it does so unjustifiably. In fact, Fortinet itself points to as relevant multiple license agreements entered into by Implicit prior to 2014. *See* Ex. B, at Interrogatory No. 5. Fortinet's argument should be rejected.

### B. Internal Marketing and Technical Documents Should Be Produced

Fortinet should be compelled to produce relevant internal marketing and technical documents. These documents include internal competitor analyses, customer surveys, employee training materials, engineering documents, and product schematics or other product design documents.

Regarding market-related documents, Fortinet is a publicly traded company that regularly files 10-Ks with the SEC. In these filings, Fortinet identifies which entities it considers to be

competitors in the marketplace and describes its position in the market relative to those competitors. The data underlying these conclusions, such as the results of customer research and surveys, must exist and is discoverable, but have yet to be produced. For technical documents, Fortinet has mainly produced publicly available information directed at customers. It is doubtful that Fortinet hires new engineers and educates these engineers solely through information distributed to customers and source code. Documents relating to the internal training of its technical employees that show in detail how the Accused Products function require production. In addition to these internal training materials, documents relating to the development and implementation of the Accused Products are discoverable—e.g., design documents, product diagrams, requirements documents, test plans, and diagnostic reports. The burden in collecting and producing these documents would be slight and their probative value to material issues in this case (infringement and damages) is significant. Fortinet should be compelled to produce them.

## IV.   CONCLUSION

For the foregoing reasons, Implicit respectfully requests to compel discovery from Fortinet to the extent provided by the proposed Order attached hereto.

Date: February 13, 2020

Respectfully Submitted,

By: */s/William E. Davis, III*
William E. Davis, III
(TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt
(TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com

Ty Wilson
(TX Bar No. 24106583)
twilson@davisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suit, 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Barry Golob
bgolob@cozen.com
Thomas Fisher
tfisher@cozen.com
**Cozen O'Connor**
1200 19th Street, NW
Suite 300
Washington, DC 20036
Telephone: (202) 912.4815
Facsimile: (202) 618.4843

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this the 13th day of February, 2020.

*/s/William E. Davis, III*
William E. Davis, III

## CERTIFICATE OF CONFERENCE

The undersigns certifies that the parties have complied with the meet-and-confer requirements pursuant to Local Rule CV-7(h) and the motion is opposed. The personal conferences required by Local Rule CV-7(h) were conducted telephonically on January 23, 2020 with lead counsel for Defendant (Matthew Gaudet and Alice Snedeker) and lead counsel for Plaintiff (Bo Davis and Christian Hurt). Email correspondence concerning this discovery dispute was also exchanged between the parties, including on January 20, 2020; January 30, 2020; and January 31, 2020. The parties were unable to reach agreement because they dispute the Defendant's discovery obligations in this case. The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/William E. Davis, III*
William E. Davis, III