**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

IMPLICIT, LLC,
      Plaintiff,

v.

IMPERVA, INC.
      Defendant.

Case No. 2:19-cv-00040-JRG-RSP
LEAD CASE

## PLAINTIFF IMPLICIT, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT IMPERVA, INC.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE (DKT. NO. 231)

███████████████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

I.      INTRODUCTION...................................................................................................1

II.     FACTUAL & PROCEDURAL HISTORY ............................................................1

III.    APPLICABLE LAW...............................................................................................2

IV.     ARGUMENT & AUTHORITIES...........................................................................3

        A.      Imperva Has Not Made the Predicate Showing that It Is an Intended Third-Party
                Beneficiary of the ██████████..................................................................3

        B.      Imperva Has Not Made a Sufficient Showing of an Express License
                Defense..................................................................................................7

        C.      The ██████████ Does Not Provide Imperva with an Implied License............8

        D.      Imperva Has Waived Any Right to Enforce the ██████████...........10

        E.      The ██████████████ Should Be Disregarded If Found to Be Valid and
                Enforceable..........................................................................................13

        F.      Implicit Respectfully Requests a Severance from this Court.............................15

V.      CONCLUSION ......................................................................................................15

## TABLE OF AUTHORITIES

### Cases

*AIG Eur. S.A. v. Franco Vago Int'l, Inc.*
    756 F. Supp. 2d 369 (S.D.N.Y. 2010) ........................................................................... 11

*Indus. Print Techs. LLC v. Canon U.S.A., Inc.*
    No. 2:14-cv-00019, 2014 U.S. Dist. LEXIS 175842,
    (E.D. Tex. Dec. 19, 2014) ............................................................................................. 13

*Corrugated Paper Prods., Inc. v. Longview Fibre Co.*
    868 F.2d 908  (7th Cir. 1989) ........................................................................................ 7

*Browne v. Robb*
    583 A.2d 949 (Del. 1990) ............................................................................................. 4

*De Olivera Dos Santos v. Bell Helicopter Textron, Inc.*
    651 F. Supp. 2d 550  (N.D. Tex. 2009) ........................................................................ 3

*Eastman Chem. Co. v. Alphabet Inc*
    No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477 (D. Del. Nov. 18, 2011) ............... 4

*Exelis Inc. v. Cellco P'ship*
    No. 09-190-LPS, 2012 U.S. Dist. LEXIS 159085
    (D. Del. Oct. 9, 2012) ................................................................................................. 10

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*
    651 F.3d 1355 (Fed. Cir. 2011) ................................................................................... 2

*Glob. Energy Fin. LLC v. Peabody Energy Corp.*
    No. 08C-10-129 RRC, 2010 Del. Super LEXIS 430 (Super. Ct. Oct. 14, 2010) ............... 4

*Hampton v. Equity Tr. Co.*
    736 F. App'x 430 (5th Cir. 2018) ......................................................................... 10, 12

*In re Rolls Royce Corp.*
    775 F.3d 671 (5th Cir. 2014) ..................................................................................... 14

*Insituform of N. Am., Inc. v. Chandler*
    534 A.2d 257 (Del. Ch. 1987) ...................................................................................... 4

*Invue Sec. Prods. v. Mobile Tech, Inc.*
    No. 3:17-cv-000270-MOC-DSC, 2017 U.S. Dist. LEXIS 102692
    (W.D.N.C. July 3, 2017) ............................................................................................. 15

*Jacobs v. Nintendo of Am., Inc.*
  370 F.3d 1097 (Fed. Cir. 2004)..................................................................................9, 10

*Madison Realty Partners 7, LLC v. AG ISA, LLC*
  No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37 (Del. Ch. Apr. 17, 2011) ...........................3

*Motorola Mobility, Inc. v. Microsoft Corp.*
  No. 11-3136 SC, 2011 U.S. Dist. LEXIS 134080 (N.D. Cal. Nov. 21, 2011) ..................6

*Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*
  795 F.2d 111 (1st Cir. 1986)........................................................................................5

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*
  871 F.2d 1082 (Fed. Cir. 1989)....................................................................................8

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*
  839 F.3d 422 ......................................................................................................10, 12

*Saint Lawrence Commc'ns. LLC v. Amazon.com, Inc.*
  No. 2:19-cv-00027-JRG, 2019 U.S. Dist. LEXIS 111968 (E.D. Tex. July 5, 2019)......2, 3

*Sony Corp. v. Fujifilm Holdings Corp.*
  2017 U.S. Dist. LEXIS 164127 (S.D.N.Y. Sep. 28, 2017)...............................................5

*Taylor v. Inv'rs Assocs.*
  563 F.3d 1271 (Fed. Cir. 2009)....................................................................................5

*TransCore, LP v. Elec. Transaction Consultants Corp.*
  563 F.3d 1271 (Fed. Cir. 2009)....................................................................................9

*UltimatePointer, L.L.C. v. Nintendo Co.*
  No. 6:11-CV-496-LED, 2013 U.S. Dist. LEXIS 74276 (E.D. Tex. May 28, 2013).........13

*Univ. of W. Va. v. Van Voorhies*
  278 F.3d 1288 (Fed. Cir. 2002)....................................................................................9

*Verde v. Stoneridge, Inc.*
  137 F. Supp. 963, 977 (E.D. Tex. 2015)....................................................................3, 4

*Wellogix, Inc. v. SAP Am., Inc.*
  648 F. App'x 398 (5th Cir. 2016) ...............................................................................10

*Zix Corp. v. Echoworx Corp.*
  Civil Action No. 2:15-cv-1272-JRG, 2016 U.S. Dist. LEXIS 189227
  (E.D. Tex. June 9, 2016)...............................................................................................2

████████████████████████████████████████████

## I.     INTRODUCTION

The Court should deny Imperva, Inc.'s ("Imperva") Motion to Transfer to the District of Delaware (Dkt. No. 231).  Imperva has not made the threshold evidentiary showing that it is an intended third-party beneficiary under the ████████████, including the ███████████████ Imperva does not provide any evidence on that threshold question and makes only incomplete, conclusory assertions.  On the merits of its defenses, Imperva also fails to make a sufficient evidentiary showing.  And, regardless, Imperva has waived its ability to enforce the ████ ████████ due to its substantial invocation of the judicial process, affirmative representations, and its delay in filing this Motion.

Practical considerations also favor denying Imperva's Motion.  Even if it is valid and enforceable, the ███████████ does not apply to all of Implicit, Inc.'s ("Implicit") claims. For that reason, it makes sense for the Court to keep this entire case rather than transfer the case to Delaware.  If the Court, however, finds otherwise, Implicit respectfully requests that the Court sever the claims falling outside of the ███████████ or, in the alternative, provide Implicit the opportunity to amend its pleadings to dismiss the claims the Court intends to transfer.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Implicit filed this patent infringement action against Imperva on February 4, 2019.  Dkt. No. 1.  The products accused of infringement include Imperva's WAF Gateway (which, itself, includes the SecureSphere Web Application Firewall hardware appliance and the On-Premises WAF software) and the Imperva Cloud Web Application Firewall (formerly referred to as Incapsula) (collectively, the "Accused Products").  The patents-at-issue in all three of these cases are U.S. Patent No. 8,694, 683 ("the '683 patent"); U.S. Patent No. 9,270, 790 ("the '790 patent"); U.S. Patent No. 9,591,104 ("the '104 patent"); U.S. Patent No. 10,027,780 ("the '780 patent");



U.S. Patent No. 10,033,839 ("the '839 patent"); and U.S. Patent No. 10,255,378 ("the '378 patent") (collectively, "Asserted Patents").  Of the asserted claims, the following are *Beauregard* claims: claim 10 of the '683 patent; claims 15-19 of the '790 patent; claims 10-13 of the '104 patent; and claims 16-20 of the '378 patent.[1]

In September 2009, Implicit and ███████████████ entered the ███████████ ███████████████████████████████████ settled a patent infringement suit between the parties in which Implicit alleged infringement of U.S. Patent No. 6,629,163, a patent not asserted in this matter.  The ████████████ was produced to Imperva around September 2019.  Imperva filed this Motion on February 19, 2020.  Dkt. No. 231.

## III.   **APPLICABLE LAW**

When a party moving under 28 U.S.C. § 1404(a) raises the applicability of a forum selection clause, "the court must first consider whether the party asserting the clause and the defense or claim triggering that clause crosses the threshold required to trigger the application of the forum selection clause." *Saint Lawrence Commc'ns. LLC v. Amazon.com, Inc.*, No. 2:19-cv-00027-JRG, 2019 U.S. Dist. LEXIS 111968, at *4 (E.D. Tex. July 5, 2019) (citing *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011)).  To cross this threshold, a defense must be "non-frivolous."  *Gen. Protecht Grp.*, 651 F.3d at 1359.  The "attachment point" for "non-frivolous" is located before "the mid-point of the spectrum" and is "[p]robably found nearer the one-quarter marker."  *Zix Corp. v. Echoworx Corp.*, Civil Action No. 2:15-cv-1272-JRG, 2016 U.S. Dist. LEXIS 189227, at *10 (E.D. Tex. June 9, 2016).  If the movant satisfies this

---

[1] The remaining asserted claims are claims 1, 2, 4-5, and 8-9 of the '683 patent; claims 1, 3-5, 8-10, 12, and 13 of the '790 patent; claims 1-6, 16, 19, and 20 of the '104 patent; claims 1-3, 11, 13-14, 16, 18, and 20 of the '780 patent; claim 1 of the '839 patent; and claims 1-3, 11, and 14 of the '378 patent.

████████████████████████████████████████

showing, then the "usual § 1404 analysis is altered in two relevant ways: (1) the plaintiff's choice of forum merits no weight, and (2) the district court should consider arguments about public interest factors only." *Saint Lawrence Commc'ns.*, 2019 U.S. Dist. LEXIS 111968, *6 (citing *Atl. Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 63-64 (2013)).[2]

## IV.    ARGUMENT

### A.    Imperva Has Not Made the Predicate Showing that It Is an Intended Third-Party Beneficiary of the ██████████

To enforce any of the provisions of the ██████████, Imperva must first show that it was an intended third-party beneficiary of the Agreement under Delaware law.[3]   *See Madison Realty Partners 7, LLC v. AG ISA, LLC*, No. CIV.A. 18094, 2001 Del. Ch. LEXIS 37, at *5 (Del. Ch. Apr. 17, 2011) (citing requirement that non-signatories of a contract be third-party beneficiaries in order to have standing to enforce its provisions).   This same requirement is imposed on Imperva in the specific context of enforcing the ██████████████████ ██████████ under § 1404(a).   District courts have permitted such enforcement only when the non-signatory is either "closely related to the signatories" (an allegation Imperva does not make) or when the non-signatory is a "third-party beneficiary of the disputed contract." *De Olivera Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009).

"The creation of third party beneficiary status requires that the contract confer an *intended* benefit on the third party, and the conferral of such benefit must be a *material* part of the contract's

---

[2] Neither Imperva nor Implicit dispute that this case could have originally been filed in the District of Delaware. *See* Mot., at 8.

[3] Delaware law applies to interpreting the ██████████, including if Imperva is a third-party beneficiary. *See* Dkt. No. 231-3, at 10.Dkt. No. ; *Verde v. Stoneridge, Inc.*, 137 F. Supp. 963, 977 (E.D. Tex. 2015) ("[T]he Court applies [the law selected by the agreement's choice-of-law clause] in determining whether Mr. Verde is an intended third-party beneficiary . . . .").

███████████████████████████████

purpose." *Glob. Energy Fin. LLC v. Peabody Energy Corp.*, No. 08C-10-129 RRC, 2010 Del. Super LEXIS 430, at *75 (Super. Ct. Oct. 14, 2010) (emphasis added).  There are two types of third-party beneficiaries that have standing to enforce a contract under Delaware law, a creditor beneficiary and a donee (also called intended) beneficiary.  *Browne v. Robb*, 583 A.2d 949, 954 (Del. 1990).  To be a creditor beneficiary, Imperva would have to show the existence of a preexisting obligation between it and ████ that Implicit satisfied through performing the ████

████████   *See id.*  It has not attempted to make that showing.

The only other route for Imperva is to show that it is a donee beneficiary.  This requires Imperva to show that a "gift" was *directly* conveyed to it by the contracting parties—not merely that it incidentally benefited from the Agreement.  *See Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 269 (Del. Ch. 1987) (finding no donee beneficiary status because the effect of the contract's performance on the third parties "*while a benefit to [them] and intended, was merely a means through which the benefit that motivated the contract was sought to be achieved for the signatories.*") (emphasis in original).  Imperva does not provide any evidence on that front either; it only asserts that it is a "third-party beneficiar[y]." *See* Mot., at 7-8.  This is insufficient.

The language of the Agreement further shows that Imperva is not an intended third-party beneficiary entitled to enforce ██████████  Imperva's Motion flows from the ████████████

████████████████████████████ however, ████████████

██████████████████.  And generic language of the sort relied on by Imperva—

████████—is insufficient, standing alone, to render third parties intended beneficiaries.  *See Eastman Chem. Co. v. Alphabet Inc.*, No. 09-971-LPS-CJB, 2011 U.S. Dist. LEXIS 158477, at *19 (D. Del. Nov. 18, 2011) (finding no evidence that the contracting parties of a patent license agreement intended to grant third-party beneficiary rights to the broad category of "Affiliates").

██████████████████████████████████████████████

Reading the Agreement as a whole confirms this conclusion.  The Agreement's ████████

████████████████████ provides a specific definition for the term ██████████████████

which it defines (in pertinent part) as █████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Imperva does not argue or provide any evidence that it faced any potential claims relating to an

████████ through ████████████████ that it might fall within this definition.  Further, as

████████ is the only portion of the Agreement in which an express definition of ████████

████████ is found, the proper interpretation is that the parties intended to exclude any other.

*See Fortis Advisors LLC v. Meds. Co.*, No. 2019-0236-KSLM, 2019 Del. Ch. LEXIS 1405, at *9

(Ch. Dec. 18, 2019) (finding inclusion of a specific "third-party beneficiary" definition excluded

others).  *See also Taylor v. Inv'rs Assocs.*, 29 F.3d 211, 215 (5th Cir. 1994) ("[T]he 'omission of

defendants from the clause allowing arbitration and as signatories should be regarded as

purposeful'") (quoting *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 111,

1116 (1st Cir. 1986)).

Another separate basis for denying Imperva's Motion is the fact that Imperva has not

provided any evidence that ████████ even if it conferred third-party beneficiary status for that

provision, also provides third-party beneficiary status for the separate ████████████  In

the absence of that evidence, Imperva cannot invoke ████████  *See Sony Corp. v. Fujifilm

Holdings Corp.*, 2017 U.S. Dist. LEXIS 164127, at *19 (S.D.N.Y. Sep. 28, 2017) ("[T]he Court

cannot find . . . that Sony has shown a likelihood of success on the merits of its claim that third-

party beneficiaries of the licensing section are also implied third-party beneficiaries of the forum

███████████████████████████████████████████████████████

selection clause."). Indeed, ████████████ expressly provides that ██████████████████ ███████████████████████████████████████████ The provision is unconnected to any benefits or obligations in the █████████████████ that may flow to ██████████████ *See id.*; *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 11-3136 SC, 2011 U.S. Dist. LEXIS 134080, at *18 (N.D. Cal. Nov. 21, 2011) ("[T]he Court cannot conclude that the forum selection clause, which expressly applies to the parties to the agreement, should extend to third parties.").

The Federal Circuit's decision in *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.* confirms that Imperva has not made an adequate showing. 694 F.3d 1312, 1335-36 (Fed. Cir. 2012). In that case, the third party (Verizon) argued that the language of the agreement, alone, proved it with third-party beneficiary status because it was a "customer" and "licensee" of TV Guide (a signatory of the agreement) and that the covenant not to sue "expressly bars any claims of patent infringement against customers and licensees of TV Guide." *Id.* at 1335. The Federal Circuit found that this this evidence was insufficient to establish third-party beneficiary status. *Id.* at 1336. The same is true here.

The surrounding circumstances and real-world facts further indicate that Imperva is not an intended beneficiary. Imperva alleges that it was unaware of the terms of the █████████████ until September 2019, despite having third-party beneficiary rights for almost a decade. Mot., at 5. The Agreement expressly allows ████ to █████████████████████████ █████████████████████ █████████████████████████ █████████████████████████████ That ████ never disclosed these provisions to Imperva— even after Implicit brought this case—confirms that Imperva is not an intended third-party beneficiary. ████ also has not █████████████████████ as the Agreement contemplates

████████████████████████████████████████████

when the former believes the latter ████████████████████████████ Nor

has Imperva made a claim of indemnification on ██ to Implicit's knowledge or asserted a claim

of breach of contract against Implicit in any forum.  These facts cannot be squared with Imperva's

claim that Implicit and ████ expressly intended that Imperva be directly conferred a "gift" from

the moment the ████████████ was entered into to the present.  *See Corrugated Paper Prods.,*

*Inc. v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir. 1989) ("The [third party] must show that

the benefit to [the third party] was a consequence which the parties affirmatively sought; in other

words, the benefit to [the third party] must have been, to some extent, a motivating factor in the

parties' decision to enter into the contract.").

> **B.**  **Imperva Has Not Made a Sufficient Showing of an Express License Defense**

Imperva has failed to make a showing of an express license defense.  It is not sufficient

under the ████████████ to only provide evidence that the Accused Products "use" ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Here, the only evidence

provided by Imperva on this issue is one statement in a declaration submitted by its "Director of

Operations" (Mr. Novick), namely, that ████████████████████████████

████████████████████████████████ This general reference to "use" is

insufficient to show the sort of functionality required by ████████ i.e., functionality upon which

a claim of infringement necessarily depends.  Mr. Novick also does not testify that he has personal

knowledge of what the ████████████ in Imperva's products do or how they function in relation

to Imperva's software.  In this case, Implicit accuses of infringement the technology embodied in

███████████████████████████████████████████████████

Imperva's software, not the off-the-shelf component parts used to run the software. "Use" of an off-the-shelf ██████████ is, therefore, not evidence of an express license under ██████████.

Imperva also has not provided sufficient discovery from which the relevant determination under the Agreement can be made. Mr. Novick's declaration is the first time Imperva has provided any internal discovery on if, and to what extent, Imperva utilizes ██████████. As detailed in Implicit's pending Motion to Compel (Dkt. No. 211), Imperva's document production and written discovery responses fail to disclose the functionality and contents of the Accused Products beyond what is provided publicly. Imperva also has not produced for inspection the relevant source code for its products and continues to withhold multiple relevant files. Because of this, Implicit cannot determine the component parts of the Accused Products and their particular functionalities. Any documents, data, or other information that underlies Mr. Novik's testimony and his "investigation and discussions" has not been provided to Implicit. *See* Dkt. No. 231-1, at ¶ 3. Imperva cannot be permitted to withhold information in violation of its discovery obligations and then use this same information to carry its burden in an evidentiary motion. *See* FED. R. CIV. P. 37(c).

C.    The ██████████ Does Not Provide Imperva with an Implied License

Imperva has also failed to make the required showing on its implied license. First, the right Imperva believes that Implicit has attempted to "take back" is the right ██████████ ██████████████████████████████████ Mot., at 9. This is, however, an allegation of breach of an *express* contractual right. And the legal result of a promisor breaching an express license agreement is a breach of contract claim in favor of the promisee; it is not the granting of an implied license by virtue of legal estoppel. *See Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989) ("A license agreement is a contract governed by ordinary principles of state contract law."). Thus, even assuming (*arguendo*) that Imperva's

allegation is true, Imperva's recourse would be only to attempt to enforce the terms of the express Agreement, not some separate implied license that embraces the same subject matter. *See Univ. of W. Va. v. Van Voorhies*, 278 F.3d 1288, 1302 (Fed. Cir. 2002) (affirming district court's dismissal of breach of implied contract claim by reasoning "to imply an agreement in the face of an express agreement covering the same subject matter . . . is legally unsound").

Second, contrary to Imperva's interpretation, the Federal Circuit in *Jacobs* did not base its holding on an actual affirmative right to sell accelerometers that was conveyed from Jacobs to Analog by virtue of the covenant-not-to-sue and license-grant provisions. *See Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1101 (Fed. Cir. 2004); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (reaffirming the principle that "a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit"). Instead, the Court examined these two provisions to discern the intent and purpose of the parties in entering into the agreement. *Jacobs*, 370 F.3d. at 1101. If Jacobs could freely sue Analog's acceleromometer customers, then Analog would essentially be put back in the position it was in prior to the license agreement, i.e., each of its accelerometer sales would generate infringement liability under Jacobs' patent. Or, in the words of the Federal Circuit, the license would be rendered "commercially worthless." *Id.* The doctrine of estoppel was, therefore, turned to by the Federal Circuit to prevent conduct that, while not constituting a technical breach of an actual contractual right, would nonetheless fully deprive Analog of the benefit the parties clearly intended it to receive under the bargain. *See id.*

Here, the situation is different. Imperva has not provided evidence or argument that ▮▮▮ has had a benefit interfered with, let alone a benefit it has been fully deprived of. Imperva, instead,

argues that one of its own rights—the right to ████████████████████████—has been derogated from. Mot., at 9-10. This argument is not only unsupported by *Jacobs* but is also premised on an affirmative right that no patent owner (including Implicit) could convey via a license agreement. *See TransCore*, 563 F.3d 1271 at 1275. Imperva's argument should be rejected. *See Exelis Inc. v. Cellco P'ship*, No. 09-190-LPS, 2012 U.S. Dist. LEXIS 159085, at *15 (D. Del. Oct. 9, 2012) (finding a patent license agreement did not provide an implied license to the licensee's manufacturers because doing so would "terminate [the licensor's] otherwise existing rights against manufacturers and . . . would violate the intent, purpose, and plain language of the [patent license agreement]").

**D.    Imperva Has Waived Any Right to Enforce the ██████████████**

Assuming (*arguendo*) that Imperva had a right to enforce the ███████████████, such a right has been waived. The Fifth Circuit has provided two possible tests for determining whether waiver of ██████████████ has occurred.[4] *Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 435 (5th Cir. 2018). Under the first test, waiver occurs if a party "intentionally or voluntarily relinquishe[s] its rights under the clause." *Id.* (quoting *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (5th Cir. 2016)). And under the second, "the party to the forum selection clause waives its right if it (1) substantially invokes the judicial process in derogation of the forum selection clause and (2) thereby causes detriment or prejudice to the other party." *Id.* (quoting *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426-27). Application of either test results in a finding of waiver here.

---

[4] "There is a lack of authority regarding whether federal or state law principles control the waiver [of a forum selection clause] analysis." *Single Box, L.P. v. Del. Valle*, No. 4:19-CV-A, 2019 U.S. Dist. LEXIS 159569, at *4-5 (N.D. Tex. Sep. 19, 2019).

████████████████████████████████████████████████████

Imperva has waived its rights under the first test.  From the time Imperva alleges it learned of ███████████████████ (early September 2019) to the time it filed the instant motion (February 19, 2020), around six months had elapsed.  On December 5 (after being in possession of the ███████████ for months) Imperva filed its Answer to Implicit's First Amended Complaint.  Dkt. No. 162.  No mention of the ████████████████ is present in this pleading, nor is there any mention of the ████████████████ being the proper or more convenient venue for this matter.  *Id.*  To the contrary, Imperva admits that venue is proper in the Eastern District of Texas and states: "Imperva contends that the United States District Court of Northern California is a more convenient forum for this action and reserves right to seeks a transfer . . . pursuant to 28 U.S.C. § 1404(a)."  *Id.* at ¶ 7.  If a defendant filed a § 1404(a) motion requesting a transfer to some venue not specified within a forum selection clause, this conduct should be considered a waiver of the defendant's right to subsequently enforce the clause.  *See Altman v. Liberty Equities Corp.*, 322 F. Supp. 377, 379 (S.D.N.Y. 1971) ("[T]he failure to raise a venue objection within the context of a section 1404(a) motion constitutes waiver of that particular objection.").  By expressing an intent within its Answer to file such a motion, Imperva engaged in an act inconsistent with the enforcement of ██████████ and evinced a relinquishment of its right to enforce it.  *See AIG Eur. S.A. v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) (supporting a finding of waiver with the recognition that "[n]othing in [defendant's] pleadings could reasonably put [plaintiffs] on notice that it intended to preserve the forum selection clause as a defense").

Imperva's delay in filing this Motion also expresses the same intent.  Imperva seems to contend that it should not be faulted for filing its Motion six months after it received the Agreement because it had to "undert[a]ke an analysis."  *See* Mot., at 5.  But Imperva never explains why this

████████████████████████████████████████████████████

took half a year—an inexplicable length of time in light of the fact that the "analysis" only managed to produce a one-line statement in a declaration. Dkt. No. 231-1, at ¶ 3. When taken together, Imperva's admissions identifying its desired forum as one other than the ██████████ ██████ and its participation in this forum for half a year without raising the issue of the ████ ████████████ objectively gives rise to an intent to waive ████████████████████████. *See* *Hampton*, 736 F. App'x at 437 (waiver of forum selection clause occurs with "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished") (quoting *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 426 (5th Cir. 2016)). The first test is, thus, satisfied.

The same is true for the second test. Imperva has had the ████████████████ since at least September 2019. It did not move to transfer at that time. It did not move to stay this case pending resolution of venue issues. And it did not file its Motion when Juniper and Fortinet filed their Motions in December and early January—even though Imperva's Motion is based on the same ████████████████████ Imperva instead waited. It chose not to file its Motion until late February, after attending the hearing on Juniper's and Fortinet's Motions on February 6, 2020. During this period of delay, Imperva has affirmatively engaged in discovery (serving interrogatories and requests for admission and actively seeking the deposition of Mr. Edward Balassanian, Implicit's owner); filed motions seeking affirmative relief (Dkt. Nos. 151, 157, and 170); submitted multiple exhibits and declarations to the Court (*see, e.g.*, Dkt. No. 226); and has engaged in the claim construction process (Dkt. No. 228). Indeed, Imperva has acted in ways that can only be interpreted as seeking to unnecessarily prolong this litigation, such as its refusal to remedy its extensive discovery deficiencies (*see* Dkt. No. 211). Imperva engaged in this conduct against the backdrop of its admissions that (1) this venue is proper and (2) its desired venue is the Northern

██████████████████████████████████████████████

California District Court—representations that distinguish this case from others where waiver was not found. *Cf. Indus. Print Techs. LLC v. Canon U.S.A., Inc.*, No. 2:14-cv-00019, 2014 U.S. Dist. LEXIS 175842, at *11 (E.D. Tex. Dec. 19, 2014) (supporting a finding of nonwaiver with the fact that the defendants "put the Court and [plaintiff] on notice in its Answer to [plaintiff's] Complaint" by specifically challenging venue as improper and inconvenient). Imperva has substantially invoked the judicial process and, given the significant expenditures it has thus far required from Implicit, it has been prejudicial as well. The second test has been satisfied.

   **E.    ████████████████████ Should Be Disregarded If Found to Be Valid and Enforceable**

   If this Court does find that Imperva is a third-party beneficiary and that ████████ is valid and enforceable, transfer would nonetheless be inappropriate because, even under this scenario, ██████ would only be partially applicable to Implicit's claims. Further, in terms of the public interest factors, the factor of court congestion weighs against transfer, as this District Court can bring a case faster to trial than the District of Delaware. Ex. A, C-5 Table (September 30, 2019). The local interest factor is either neutral or weighs against transfer, as both parties have a place of business within this District. *See* Dkt. No. 162, at ¶ 7. As federal patent law will govern in either forum, the remaining two public factors are neutral.

   More significantly, however, is the fact that Implicit's *Beauregard* claims[5] do not claim a processing component of a system. *See UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-CV-496-LED, 2013 U.S. Dist. LEXIS 74276, at *62 (E.D. Tex. May 28, 2013). As infringement of these claims would exist absent an ████ or any other kind, of processor, they fall outside the purview of Section 6.2. *See* Dkt. No. 231-3, at § 6.2. Additionally, Implicit has alleged that

---

[5] Claim 10 of the '683 patent; claims 15-19 of the '790 patent; claims 10-13 of the '104 patent; and claims 16-20 of the '378 patent

████████████████████

Imperva indirectly infringes through (*inter alia*) distributing its virtual products to its customers, including the On-Premises WAF product. *See* Dkt. No. 14, at ¶¶ 45-46. Once deployed, the On-Premises WAF product resides on the end user's machine and its use on that non-Imperva machine is what gives rise to indirect infringement liability. *See* Ex. B, "Cloud WAF Versus On-Premises WAF." No evidence or argument has been provided by Imperva concerning the processors contained within these machines. Consequently, Implicit's indirect infringement claims arising from the On-Premises WAF product undisputedly fall outside ████████.

In this scenario—where only certain claims implicate a forum selection clause—the Fifth Circuit has observed that the rationale of *Atlantic Marine* is inapplicable, because the Supreme Court's holding emanated from the parties agreeing "in advance where their private litigation interests lie." *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014). While *Rolls Royce* dealt with claims against non-signatories, logic dictates that its reasoning be applied here, as the same lack of "advance[d] agreement" is present. *See id.* This means that the claims falling outside ████████ *must be* allotted an unaltered § 1404(a) analysis. *See id.* As Imperva does not provide any argument or evidence in this regard, the conclusion is necessitated that these claims remain within this forum. This leaves, as the final question, whether "judicial economy considerations of having all claims determined in a single lawsuit" justify disregarding ████ ████ *See id.* In light of this Court's extensive experience with this (and related cases), the fact that this case has been litigated for over a year with a *Markman* hearing set for March 17 and a jury trial scheduled for July 6 (*see* Dkt. No. 206), and it being confined to speculation as to which judge this case would be assigned to or what cases (if any) it would be consolidated with if it was transferred to Delaware (*see* Ex. C, Del. L.R., at 40.1(a)), the answer is arrived at that ████ ████ should be disregarded.

14

**F.      Implicit Respectfully Requests a Severance from this Court**

Should the Court conclude that transfer is still warranted, Implicit respectfully requests that the Court sever the asserted claims of the *Imperva* case that the Court concludes should be transferred under the ▇▇▇▇▇ into a new matter number and transfer only that matter to Delaware for adjudication. *See* FED. R. CIV. P. 21. This would provide Implicit the opportunity to proceed with its claims against Imperva that do not implicate the ▇▇▇▇▇ under the current schedule in the current forum (as opposed to the entire *Imperva* action, including the allegations that do not implicate the ▇▇▇▇▇

Alternatively, Implicit respectfully requests that the Court provide leave so Implicit can amend its pleadings.  In the eventuality that this Court declines to sever the transferable claims, Implicit respectfully requests the opportunity to move for leave of Court to amend its complaint and dismiss its non-*Beauregard* claims.  Doing so would moot Imperva's Motion and allow Implicit to maintain litigating the remainder of its claims in the current forum.  *See Invue Sec. Prods. v. Mobile Tech, Inc.*, No. 3:17-cv-000270-MOC-DSC, 2017 U.S. Dist. LEXIS 102692, at *1 (W.D.N.C. July 3, 2017) (finding, in a patent infringement suit, that a Rule 12 motion to dismiss/transfer was mooted by a subsequently filed amended complaint).  The standard imposed by Federal Rule of Civil Procedure 15(a)(2) ("when justice so requires") would be satisfied if the *Imperva* action were to be transferred absent leave to amend.

**V.      CONCLUSION**

For the foregoing reasons, Implicit respectfully requests that Imperva's Motion to Transfer to Delaware (Dkt. No. 231) be denied by the Court.

Date: March 4, 2020

Respectfully Submitted,

By: */s/ William E. Davis, III]*
William E. Davis, III
(TX Bar No. 24047416)
bdavis@bdavisfirm.com
Christian J. Hurt
(TX Bar No. 24059987)
churt@bdavisfirm.com
Edward Chin (Of Counsel)
(TX Bar No. 50511688)
echin@bdavisfirm.com
Debra Coleman (Of Counsel)
(TX Bar No. 24059595)
dcoleman@bdavisfirm.com
Ty Wilson
(TX Bar No. 24106583)
twilson@davisfirm.com
**THE DAVIS FIRM, PC**
213 N. Fredonia Street, Suit, 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Barry Golob
bgolob@cozen.com
Thomas Fisher
tfisher@cozen.com
**Cozen O'Connor**
1200 19th Street, NW
Suite 300
Washington, DC 20036
Telephone: (202) 912.4815
Facsimile: (202) 618.4843

*Counsel for Plaintiff Implicit, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being

filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served

on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V).

██████████████████████████████

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this 4th day of March, 2020.

*/s/William E. Davis, III*
William E. Davis, III

███████████████████

█████████████████████████████

██████████████

███████████