IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br>    Plaintiff,<br><br>v.<br><br>IMPERVA, INC.<br>    Defendant. | Case No. 2:19-cv-00040-JRG-RSP<br>LEAD CASE |

**PLAINTIFF IMPLICIT, LLC'S
SECOND MOTION TO COMPEL DISCOVERY
FROM DEFENDANT IMPERVA, INC.**

## I. Introduction

Imperva continues to withhold relevant discovery. Imperva now (1) will not produce relevant source code; and (2) refuses to produce certain witnesses properly noticed for deposition.

Implicit recently discovered that Imperva removed source code files and folders from its codebase and only produced a limited subset of the source code for the Accused Products. Imperva contends that the withheld code is not relevant.

And Imperva cannot "pick and choose what files of the source code they want to produce because based on their own opinion they feel like these particular files are the only ones that are relevant to the plaintiff's patent case[.]" *Brocade Commc'ns. Sys. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 99932, at *10 (N.D. Cal. Sep. 6, 2011) (internal quotation omitted). Imperva should produce its codebase for the Accused Products.

Imperva also refuses to produce three employees for deposition on relevance grounds. Basic Internet searching show that these witnesses are relevant, including on documents that Imperva has not produced. Imperva cannot shield witnesses noticed for deposition based on its own assessment of relevance. And Imperva's view of relevance is wrong: Imperva withholds relevant documents; it withholds relevant source code; and it withholds relevant witnesses.

For these reasons, Implicit respectfully requests that the Court grant this Motion and consider awarding expenses under Rule 37(a). Implicit requests a telephonic hearing on this Motion and Implicit's first motion to compel (Dkt. 211) at the Court's convenience.

## II. The Court Should Compel Imperva to Produce Its Source Code

As detailed in Implicit's first motion to compel (Dkt. No. 211), Imperva has not produced internal documentation. Imperva has withheld those documents on the basis that Implicit's prior counsel supposedly stated that "this case is all about the source code." Dkt. No. 226-1, at ¶ 5.

██████████████████████████████████

Imperva has an independent obligation to produce relevant documents, regardless of these alleged hearsay statements. And, despite Imperva's focus on the importance of source code, Implicit has recently determined that Imperva is withholding source code.

Implicit recently determined that Imperva pruned its codebase to remove files from its source code production. After traveling to Imperva's counsel's offices in San Francisco to review the produced source code, Implicit's counsel discovered that Imperva removed files and folders from its source code repository. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Counsel likely missed a number of folders and files that Imperva has withheld. This is because Imperva will not tell Implicit which source code it removed from its production. ████████████████████████████

████████████████████████████

During the meet-and-confer, Imperva stated it might consider adding specific missing files if Implicit identified them. This is unworkable, and Imperva has refused to add the specific files and folders that Implicit requested. Implicit also does not know all the files and folders Imperva withheld. That is something only Imperva knows—and will not tell Implicit. And this type of unending iterative process frustrates Implicit's ability to review the code and advance this case. Implicit thus respectfully requests that the Court compel production of the full codebase.

Imperva refuses to produce the source code based on its own assessment of relevance. That is not a basis to remove source code from the codebase, and Imperva's assertion is incorrect. █

████████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ This source code is relevant.

Imperva also argues that it can withhold source code files under Paragraph 11(d) of the Protective Order. Dkt. No. 111, at ¶ 11(d). That is also incorrect. The provision states a party may "redact" certain "components of the produced directory structure" that are "not reasonably relevant to the case." *Id.* Imperva did not do that. It did not redact components of a produced directory structure—it withheld source code entirely without telling Implicit what it withheld. █

████████████████████████████████████████████████████████

The Protective Order also does not change Imperva's obligations under the discovery rules to "produce source code and all other relevant materials reasonably needed for the Plaintiff to understand *for itself* how the technology at issue operates and functions." *Edward D. Ioli Tr. Avigilon Corp.*, No. 2:10-cv-605-JRG, 2012 U.S. Dist. LEXIS 164425, at *13 (E.D. Tex. Nov. 16, 2012) (discussing Patent L.R. 3-4(a)). Imperva has not met those obligations. It instead picked what source code files to produce based on its own opinion that those files are the only ones that are relevant. That approach is improper. *E.g., Brocade*, 2011 U.S. Dist. LEXIS 99932, at *10.

████████████████████████████████████████████

██████ This is also incorrect. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

[REDACTED]

There is no meaningful burden or prejudice to Imperva to produce all of its codebase. It entails copying-and-pasting the codebase onto a laptop or media. That is less burdensome than Imperva's current process of applying a "relevance" screen to each source code file it produces.

Given Imperva's improper conduct in removing code and that Implicit's expert and counsel have already made two trips to California counsel's offices, Implicit respectfully requests that the Court compel Imperva to ship to Implicit a storage media or standalone laptop that contains the entire codebase. This will allow Implicit to review the code at its counsel's offices. Implicit will not have access to Imperva's source code in San Francisco at this time because Imperva's counsel's offices are closed and under shelter-in-place orders based on COVID-19.

Parties have agreed to this type of approach for source code discovery. *E.g., CardSoft, Inc. v. Verifone Holdings, Inc.*, 2:08-cv-00098-RSP (Dkt No. 120 at ¶ 28) (E.D. Tex. Oct. 1, 2009) (providing a copy of source code on an encrypted readable media to outside counsel for review on counsel's standalone computer). And courts have ordered similar types of source code production in various circumstances. *E.g., Entrust Datacard Corp. v. Zeiser Gmbh*, 3:17-cv-110-J-39MCR, 2019 U.S. Dist. LEXIS 223877, at *20 (M.D. Fla. Mar. 26, 2019) (entering plaintiff's proposed protective order allowing that source code be delivered to plaintiff's expert via "a hard drive or other suitable storage device" despite defendants' objections); *Keithley v. Home Store.com, Inc.*, No. C-03-04447 SI (EDL), 2008 U.S. Dist. LEXIS 61741, at *21 (N.D. Cal. Aug. 12, 2008) ("Regarding actual production of the source code, it shall be produced to Plaintiff on one or more DVDs along with the necessary keys that will enable its access . . . . This source code shall be

loaded only on a non-networked, stand alone computer under the Control of Plaintiff's counsel or experts."). Given the circumstances, Implicit submits that this relief is reasonable in this case.

### III.     The Court Should Compel Imperva To Produce Its Witnesses for Deposition

Implicit requests that the Court order Imperva to produce for deposition Terry Ray, Yaniv Azaria, and Dave Woodcock at a reasonable time after Imperva produces its documents and code.

Implicit's efforts to obtain depositions has a long history. No depositions have occurred in this case. In December, Implicit requested the deposition of each witness on Imperva's Initial Disclosures and served Rule 30(b)(6) topics. Imperva did not provide dates. It represented to the Court in January that it was "work[ing] to determine dates for depositions of its witnesses within the [then-existing February 11, 2020] discovery period, or shortly thereafter," Dkt. No. 196, at 5.

Imperva did not offer any dates in February. It provided dates after Implicit moved to compel the depositions—dates in late March, near and at the end of the then-existing fact discovery period and days before expert reports. At the same time, Imperva did not produce internal documents showing how the Accused Products work, how Imperva positions them in the market, or how Imperva tracks its financial metrics. And, even though Imperva is headquartered in California, Dkt. No. 162, at ¶ 3, Imperva only offered its technical witnesses for deposition in Israel. It refused to produce those witnesses in the United States or on an earlier schedule.[1]

Due to this discovery squeeze, Implicit did its own investigation. It searched for relevant Imperva witnesses in the United States in order to depose them earlier, determine which documents Imperva keeps that it has not produced, and get internal discovery on key issues that Imperva's produced documents do not speak to. That process yielded Mr. Ray, Mr. Azaria, and Mr.

---

[1] Typically, these depositions would occur in the United States because Imperva is headquartered here and these witnesses are presumptively trial witnesses. Given the COVID-19 pandemic, Implicit has agreed to remote depositions of these witnesses. This agreement resolves the dispute raised for this issue in Implicit's first motion to compel. *See* Dkt. No. 211, at 6-7.

Woodcock.  In early February, Implicit requested depositions of those witnesses.  After initially not responding, Imperva refuses to produce those witnesses.

Implicit requests that the Court compel Imperva to produce these witnesses.  Imperva cannot withhold these witnesses based on its own assessment of relevancy.[2]  And basic Internet searching shows that Imperva is incorrect that these witnesses lack relevant information.

Mr. Ray, who appears to be located in Houston, Texas, has been employed by Imperva for 17 years.[3]  He has held multiple positions at the company, including VP of Global Sales Engineering, Chief Product Strategist, and Chief Technology Officer.  He recently provided a webinar regarding one of the Accused Products (the Web Application Firewall, known as the "WAF"), entitled "Web Application Firewalls – Critical Trends and Requirements."[4]  The webinar sits behind a registration wall, and Imperva has not produced it.  Mr. Ray also appears on a presentation entitled "Defend Against Application-Level Attacks"[5]—the application-level functionality falling within under Implicit's allegations—which Imperva also did not produce.  Mr. Ray is also quoted in documents that Imperva has produced, including discussing customer demand relating to the accused WAF product.[6]

---

[2] Notably, Imperva has not moved for a protective order to prevent these depositions. "Once a deposition is properly noticed, 'the party is obliged to appear until some order of the court excuses attendance[.]" *Panzer v. Swiftships, LLC*, 318 F.R.D. 326, 328 (E.D. La. 2016) (quoting *Barnes v. Madison*, 79 F. App'x 691, 707 (5th Cir. 2003)).
[3] *See* https://www.linkedin.com/in/terry-ray.
[4] https://www.imperva.com/resources/resource-library/webinars/web-application-firewalls-critical-trends-and-requirements/.
[5] https://www.yumpu.com/en/document/view/26133467/defend-against-application-level-attacks.
[6] *See, e.g.*, https://www.imperva.com/company/press_releases/imperva-named-a-leader-in-the-2017-gartner-magic-quadrant-for-web-application-firewalls-for-the-fourth-consecutive-year/ ("Our customers demand comprehensive protection, accurate detection, and flexible deployment options that keep pace with the ever-changing threat landscape, and I'm thrilled to say that we feel Gartner's recognition proves this point again.").

This information shows that Mr. Ray has relevant information. Like Mr. Ray, public information indicates that Mr. Azaria and Mr. Woodcock possess relevant knowledge. Mr. Azaria (Imperva's Vice President of Product Management) appears on a presentation relating to the accused WAF.[7] Imperva did not produce this presentation. Mr. Woodcock is Imperva's "Senior Vice President [of] Worldwide Sales."[8] His LinkedIn profile touts that, under his position as Vice President of International Sales, "Imperva is the only leader for four consecutive years in the Gartner Magic Quadrant for Web Application Firewalls."[9] In addition to consumer demand, Implicit expects that Mr. Woodcock will testify that Imperva has detailed financial data (*e.g.*, costs, revenue, units, profitability) regarding the Accused Products, product lines or groups, and/or business units—practically none of which Imperva has produced. Imperva has only produced certain gross revenue figures. It is implausible that this is the only relevant financial information that Imperva has. Last year, a private equity fund acquired Imperva for $2.1 billion. Such a significant transaction (and its financing) would not have occurred without Imperva providing granular financial data regarding its operations. None of that has been produced in this case.

The public information surrounding these witnesses shows that they are relevant. It also indicates that Imperva has relevant, internal documentation that it has not produced. Depositions of these witnesses will help get to the bottom of that issue. Implicit respectfully requests that the Court grant this motion to compel.

### IV. Conclusion

For the foregoing reasons, Implicit respectfully requests that the Court grant this Motion.

---

[7] https://www.owasp.org/images/0/00/OWASP-2012-WTF.pdf
[8] https://www.linkedin.com/in/woodcockdave/
[9] https://www.linkedin.com/in/woodcockdave/

| | |
|---|---|
| Date: March 20, 2020 | Respectfully submitted,<br><br>By: /s/ William E. Davis, III<br>William E. Davis, III<br>(TX Bar No. 24047416)<br>bdavis@bdavisfirm.com<br>Christian J. Hurt<br>(TX Bar No. 24059987)<br>churt@bdavisfirm.com<br>Edward Chin (Of Counsel)<br>(TX Bar No. 50511688)<br>echin@bdavisfirm.com<br>Debra Coleman (Of Counsel)<br>(TX Bar No. 24059595)<br>dcoleman@bdavisfirm.com<br>Ty Wilson<br>(TX Bar No. 24106583)<br>twilson@davisfirm.com<br>**THE DAVIS FIRM, PC**<br>213 N. Fredonia Street, Suit, 230<br>Longview, Texas 75601<br>Telephone: (903) 230-9090<br>Facsimile: (903) 230-9661<br><br>Barry Golob<br>bgolob@cozen.com<br>Thomas Fisher<br>tfisher@cozen.com<br>**Cozen O'Connor**<br>1200 19th Street, NW<br>Suite 300<br>Washington, DC 20036<br>Telephone: (202) 912.4815<br>Facsimile: (202) 618.4843<br><br>*Counsel for Plaintiff Implicit, LLC* |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(V).

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), any counsel of record not deemed to have consented to electronic service will be served with a true and correct copy of the foregoing by email on this 20th day of March, 2020.

/s/William E. Davis, III
William E. Davis, III

### CERTIFICATE OF CONFERENCE

The undersigns certifies that the parties have complied with the meet-and-confer requirements pursuant to Local Rule CV-7(h) and the motion is opposed.  The personal conference required by Local Rule CV-7(h) were conducted telephonically on March 9, 2020 with lead counsel for Defendant (Michael Stacksteder, Christopher Larson, and Jessica Benzler) and lead counsel for Plaintiff (Bo Davis, Barry Golob, Christian Hurt, and Thomas Fisher).  The parties were unable to reach agreement because they dispute the Defendant's discovery obligations in this case.  The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/William E. Davis, III
William E. Davis, III