**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IMPLICIT, LLC, | § § | |
| *Plaintiff*, | § § | Case No. 2:19-cv-00040-JRG-RSP |
| v. | § § | LEAD CASE |
| IMPERVA, INC., | § § | |
| JUNIPER NETWORKS, INC., | § § § | Case No. 2:19-cv-00037-JRG-RSP CONSOLIDATED CASE |
| FORTINET, INC., | § § | Case No. 2:19-cv-00039-JRG-RSP |
| *Defendants*. | § § § | CONSOLIDATED CASE |

**ORDER**

Before the Court are two Motions: (1) Defendant Juniper Networks, Inc.'s ("Juniper") Supplemental Motion to Transfer Venue to the District of Delaware (Dkt. No. 164); and (2) Defendant Fortinet, Inc.'s ("Fortinet") Supplemental Motion to Transfer Venue to the District of Delaware (Dkt. No. 185).[1] In both of these Motions, Juniper and Fortinet argue that the vast majority of their accused products utilize Intel chips for an accused functionality, that Intel has a license with Implicit that includes a forum selection clause, that Juniper and Fortinet are third-party beneficiaries of that license, and that Juniper and Fortinet are entitled to assert the forum selection clause. Dkt. Nos. 164 & 185.

After consideration, the Court concludes that movants have made a sufficient showing that the vast majority (but not all) of Juniper and Fortinet's accused products utilize Intel chips, that Juniper and Fortinet are third-party beneficiaries of the Intel license, making the forum selection

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Order refer to the page numbers of the original documents rather than the page numbers assigned by the CM/ECF system unless otherwise indicated.

clause applicable.[2] The forum selection clause does not apply for some portion of this case, but the portion of the case that is covered by a forum selection clause is much larger. While Implicit argues that the case can be severed to retain a portion of the case that is not covered by a forum selection clause, counsel was not able, at the hearing, to identify which accused products do not contain Intel chips performing accused functionalities. Thus, the Court concludes that severance is not workable here. Furthermore, dividing this case up into two separate cases based on accused products that are and are not covered by a forum selection clause and based on asserted claims that are and are not covered by a forum selection clause would increase the complexity of this case unnecessarily and lead to numerous situations where different courts would perform duplicative and possibly conflicting work. The Court therefore concludes that the entire cases against Fortinet and Juniper should be resolved in one place. Because the forum selection clause applies to the vast majority of this case, that place should be the District of Delaware. Consequently, the Court **GRANTS** both Juniper's Motion (Dkt. No. 164) and Fortinet's Motion (Dkt. No. 185) and transfers all claims against Juniper and Fortinet to the District of Delaware.

I.  **APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses;

---

[2] All statements made by the Court are only intended to resolve the transfer motions at issue here. These statements are not intended to conclusively resolve any issues related to the licensing defenses raised by Juniper and Fortinet.

(2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflict of law. *Id*. This list is "not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* at 314–15.

A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion to transfer, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g., Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *Gen. Protecth Grp*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense

becomes "non-frivolous." *Zix*, 2016 WL 7042221 at *3. The Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum" and that it is probably "found nearer the one-quarter marker." *Id*.

If the Court finds that the parties' dispute triggers a valid forum selection clause, then the Court "should ordinarily transfer the case to the forum specified in that clause [unless there are] . . . extraordinary circumstances unrelated to the convenience of the parties" that disfavor transfer. *Atl. Marine*, 571 U.S. at 62. "[T]his requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id*. at 63. "First, the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Second, the Court "should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id*. at 64. The Court should also assess these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *accord In re EMC Corp*., 501 F. App'x 973, 976 (Fed. Cir. 2013). Finally, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

The Fifth Circuit and other courts have also provided guidance on situations where a forum selection clause covered some portion of a case but not others. In the *In re Rolls Royce Corp*. case, the Fifth Circuit addressed the situation where a forum selection clause applied for some parties but not others. 775 F.3d 671, 679 (5th Cir. 2014). The Court clarified how the forum selection clause affected the analysis under § 1404:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who

> have *not* signed a forum selection agreement as it would under a
> Rule 21 severance and section 1404 transfer analysis.

*Id*. at 681 (emphasis in original). The Fifth Circuit stated that "[a] properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, implicating concerns attending parallel lawsuits not present in *Atlantic Marine*." *Id*. at 679. The court also stated that "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id*. The Fifth Circuit noted that "[a] district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors" and that, in the context where a forum selection clause applies to only part of a case:

> [T]he court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issue to be litigated in two cases. That being the situation here, the district court should not have severed the claims if there were any alternative.

*Id.* at 680–81 (citing *Liaw Su Teng v. Skaarup Shipping Corporation*, 743 F.2d 1140 (5th Cir. 1984), *overruled on other grounds*, *In re Air Crash Disaster Near New Orleans, La*. on July 9, 1982, 821 F.2d 1147 (5th Cir. 1987)). Notably, the Fifth Circuit ultimately concluded that the district court improperly chose to retain the whole case despite an applicable forum selection clause and granted a petition for writ of mandamus. *Id*. at 683.

## II. ANALYSIS

### a. The forum selection clause applies here and covers a significant portion of this case.

The Court concludes that the forum selection clause covers a significant portion of the case. It is important to note that Plaintiff disputes the license defense as to the accused products

containing Intel chips, making interpretation of the license necessary. The Court concludes that the forum selection clause applies through the following analysis: (1) Juniper and Fortinet are both third-party beneficiaries to the Intel license; (2) as third-party beneficiaries to the license, Juniper and Fortinet are entitled to assert the forum selection clause; and (3) the Intel license covers claims of infringement to the extent that an Intel processor is used to satisfy any claim limitations for infringement, and Juniper and Fortinet have sufficiently shown a non-frivolous nexus between the Intel agreement and the majority of the claims.

### i. Juniper and Fortinet are both third-party beneficiaries to the Intel license.

Juniper and Fortinet have both shown that they are third-party beneficiaries to the Intel License.[3] Juniper and Fortinet argue that they constitute third party beneficiaries under § 6.2, which provides for a covenant not to sue Intel's customers. *E.g.*, Dkt. No. 164 at 2 (citing Dkt. No. 164-2 at § 6.2). That section does not place any temporal limitation on the covenant not to sue Intel's customers—the covenant applies to past, present, and future claims against Intel's customers. However, that section does not explicitly call out these customers as "third-party beneficiaries."

Section 7.1.1 provides some language on releases, and it expressly calls out certain parties as "third-party beneficiaries." Dkt. No. 164-2 at § 7.1.1. Juniper and Fortinet do not argue that they constitute third party beneficiaries pursuant to § 7.1.1 because this section requires that the party be a customer before the effective date of the Intel License, which was September 30, 2009. *Id.* at 1; *see* Dkt. No. 164; Dkt. No. 185. Implicit argues that this section "defines the scope of third-party beneficiaries in the Release (§ 7.1.1)."

---

[3] The Court will speak about the Intel License (Dkt. No. 164-2) as generically as possible to avoid the need to seal any portion of this Order.

The Intel License provides that Delaware law applies (Dkt. No. 164-2 at § 12.11), and both parties argued that Delaware law applies. Thus, the Court will apply Delaware law in determining whether Juniper and Fortinet have shown that they are third-party beneficiaries to the Intel license. Under Delaware law, "[a] contract creates an intended beneficiary where: '(1) the contracting parties intended that the third party would benefit from the contract, (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation to the third party, and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract.'" *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017) (citing *Gerstley v. Mayer*, Case No. N12C-10-126 EMD, 2015 WL 756981, at *7 (Del. Super. Feb. 11, 2015); *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, Case No. CIV.A. 18094, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

A forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous," *Gen. Protecth Grp*, 651 F.3d at 1359, and this Court has used a less than one-half and nearer to the one-quarter standard when addressing the non-frivolousness threshold regarding forum selection clauses under § 1404(a), *see Zix*, 2016 WL 7042221 at *3.

Applying Delaware law, the Court concludes that Juniper and Fortinet have easily shown that they have a non-frivolous argument that they are third-party beneficiaries. The Court concludes that, for the purposes of resolving this Motion, Juniper and Fortinet have both shown that they fall within the scope of § 6.2. This section reveals that "the contracting parties intended that the third party would benefit from the contract" and it also provides strong evidence that "intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract." Dkt. No. 164-2 at § 6.2. The parties did not raise any substantial argument did not satisfy the second prong—that the benefits provided are intended to be a gift or in satisfaction of a pre-

existing obligation to the third party—and the Court concludes that this requirement has been satisfied here for the purposes of resolving these Motions.

While § 7.1.1 expressly calls out certain parties as being third-party beneficiaries, that section does not state that other parties may not be third-party beneficiaries. Implicit argues that, because § 7.1.1 expressly calls out certain parties as being third-party beneficiaries, a negative implication should be implied that no other parties may be third-party beneficiaries. Dkt. No. 182 at 2 (citing *Fortis Advisors LLC v. Medicines Co., & Melinta Therapeutics, Inc.*, No. CV 2019-0236-KSJM, 2019 WL 7290945, at *4 (Del. Ch. Dec. 18, 2019)). However, the Court will not draw this negative implication, especially since Juniper and Fortinet are only required to make a non-frivolous argument that they are third-party beneficiaries under the Intel license. The license at issue in *Fortis* included the following language:

> <u>No Third-Party Beneficiaries</u>. This Agreement is solely for the benefit of the Parties . . . and no provision of this Agreement shall be deemed to otherwise confer upon any other third parties any remedy, Claim, Liability, reimbursement or other right in excess of those existing without reference to this Agreement, provided that the Financing Sources and their respective successors, legal representatives and permitted assigns shall each be a third party beneficiary with respect to their respective rights. . . .

*Fortis*, 2019 WL 7290945 at *3. This provision within the *Fortis* license provided strong support for the conclusion that the contracting parties to that license did not intend that the third party would benefit from the contract. The Intel license does not contain a similar provision. Other than arguing about the negative implication provided by calling out third-party beneficiaries explicitly elsewhere, Implicit provides little additional argument to show how Juniper and Fortinet are not third-party beneficiaries.

For these reasons, the Court concludes that Juniper and Fortinet have sufficiently established that they constitute intended third-party beneficiaries to the license for the purposes of resolving this Motion.

### ii. As third-party beneficiaries to the Intel License, Juniper and Fortinet are both entitled to assert the forum-selection clause.

The Intel License provides:

> Implicit and Intel agree that all disputes and litigation regarding this Agreement and matters connected with its performance shall be subject to the exclusive jurisdiction of the courts of the State of Delaware, or of the Federal courts sitting therein. Each Party hereby irrevocably submits to the personal jurisdiction of such courts and irrevocably waives objections to such venue.

Dkt. No. 164-2 at § 12.12.[4] The forum selection clause includes broad language, covering "all disputes and litigation regarding [the Intel license] and matters connected with its performance. . . ." *Id*. Little dispute exists that Juniper's and Fortinet's non-frivolous license defenses constitute disputes regarding the Intel License.

Implicit argues that, even if Juniper and Fortinet are considered third-party beneficiaries of the license in general, they still are not third-party beneficiaries of the forum selection clause specifically. Dkt. No. 217 at 1; Dkt. No. 233 at 29:5–11. However, Implicit has not pointed to any case law that supports its position. The only case that Implicit relied on to support its argument was *Uniloc USA, Inc. v. Cisco Sys., Inc.*, No. 6:15-CV-1175-JRG, 2017 WL 959856, at *3–4 (E.D. Tex. Mar. 13, 2017) (Gilstrap, J.). In that case, the Plaintiff argued that the forum selection clause only referred to the parties and that the forum selection clause therefore could not be asserted by the third-party beneficiaries. *Id*. at *3. However, Judge Gilstrap actually rejected the plaintiff's

---

[4] Intel agreed to openly discuss this section of the license in open-court. Dkt. No. 233 at 4:10–20. Because of this and because this section is critical to the resolution of these motions, the Court quotes the language of the section here.

argument and concluded that the defendant had raised a non-frivolous license defense, and he also determined that the forum selection clause was applicable and granted the motion to transfer. *Id*. at *4. Here, there is no language within the forum selection clause indicating that third-party beneficiaries may not apply the forum selection clause, and the broad language of that license suggests that Juniper and Fortinet may assert the forum selection clause. Accordingly, the Court concludes that Juniper and Fortinet are entitled to assert the forum selection clause as apparent third-party beneficiaries to the Intel License.

### iii. Juniper and Fortinet have sufficiently shown a non-frivolous nexus between the Intel agreement and the majority of the claims

In addition, Juniper and Fortinet have shown a non-frivolous nexus between the Intel agreement and this case. The Intel license includes language indicating that the covenant not to sue customers applies only to the extent that an allegation of infringement is based at least in part on an Intel product such as their processors. Dkt. No. 164-2 at § 6.2. To the extent that infringement would not exist in the absence of the Intel processors, then the license does not cover the accused product under the terms of the Intel license. *Id*.

Implicit argues that Juniper and Fortinet have failed to show that the Intel processor satisfies one or more of the required claim limitations for most claims. Dkt. No. 175 at 4–7; Dkt. No. 199 at 5–9. Implicit argues that some or all of the accused products contain multiple processors. Dkt. No. 175 at 6; Dkt. No. 199 at 9. Implicit argues that simply because the accused products include an Intel processor does not mean that an Intel processor is actually the processor within the accused products that satisfies the relevant claim limitations. Dkt. No. 175 at 6; Dkt. No. 199 at 9..

However, the Court concludes that Juniper and Fortinet have sufficiently shown that the majority of the accused products in these cases are likely covered by the license. As stated above,

a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous," *Gen. Protecth Grp*, 651 F.3d at 1359. A full resolution of the licensing defense issues should not be made by this Court at this time, and "[i]f this Court were to proceed any further by adjudicating the merits of this dispute by resolving which party has the prevailing argument with respect to the ultimate license defense, then it would exceed its authority at this preliminary stage." *Uniloc*, 2017 WL 959856, at *4.

At the hearing on these Motions, counsel for Defendants indicated that the majority of accused products included Intel processors. Juniper provided a declaration from its Senior Director and Head of Global Direct Sourcing for Juniper Networks, Inc., and this declaration provides that "[a]t least the following Juniper products are Intel-based products that are specifically designed and operated using Intel processors (including for their flow-based packet processing features): the SRX1500, SRX4100, SRX4200, SRX4600, SRX5400, SRX5600, and SRX5800 series appliances, the vSRX Virtual Firewall, and the cSRX Container Firewall." Dkt. No. 164 at 3 (citing Dkt. No. 165-12 at ¶ 3). Fortinet provided a list with the accused products, which showed that approximately 75% of the accused products possessed an Intel processor as the central processing unit. Dkt. No. 185-7. Counsel for Juniper and Fortinet both walked through how Implicit's infringement contentions were directed at functionality provided by the Intel processors. *See also* Dkt. No. 164 at 4–5; Dkt. No. 210 at 2. Juniper's declaration provided that "all of these Juniper products use Intel processors for the accused flow-based packet processing features." Dkt. No. 164 at 3 (citing Dkt. No. 165-12 at ¶ 3). Fortinet shows where Implicit's infringement contentions point to the central processing unit as the example of a processor that satisfied the claim limitations, (Dkt. No. 185 at 5 (citing Dkt. No. 185-10 at F-683)), and Fortinet has shown that the central processing units in approximately 75% of its accused products are Intel processors. Thus, Juniper

and Fortinet have both sufficiently shown that the majority of the accused products in their respective cases utilize an Intel processor.

Both Juniper and Fortinet acknowledge that accused products exist that do not utilize an Intel processor. For example, Implicit argued that the SRX300, SRX320, SRX340, SRX345 and SRX550 processors did not use Intel processors, and Juniper did not dispute this fact. Dkt. No. 175 at 2. For Fortinet, the provided list of accused products showed that approximately 25% of those products did not show an Intel processor as the central processing unit. Dkt. No. 185-7.

Additionally, Implicit argues that some of the asserted patent claims do not require any processor. Implicit argues that it asserts several *Beauregard* claims[5] that do not require a processor, and these claims constitute ten of the fifty-four claims (18.5 percent of the asserted claims). Dkt. No. 175 at 3, 10–12. Other courts have understood *Beauregard* claims to be infringed where "an accused infringer makes, uses, offers to sell, or sells an apparatus containing a computer usable medium that stores computer readable program code that, if executed, will provide the system capable of performing the functional limitations recited in Claim 14." *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3630000, at *13 (N.D. Cal. June 2, 2015). Thus, under this interpretation, infringement does not require that a processor actually execute any code on the computer readable medium; infringement only requires that the code be stored on the computer readable medium and that the accused infringer makes, uses, offers to sell, or sells an apparatus containing a computer usable medium.

---

[5] These claims are also referred to as computer-readable medium claims, but the Court will refer to these claims as *Beauregard* claims. "A *Beauregard* claim—named after *In re Beauregard*; 53 F.3d 1583 (Fed. Cir. 1995)—is a claim to a computer readable medium (e.g., a . . . hard drive. . .) containing program instructions for a computer to perform a particular process." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1368 (Fed. Cir. 2011).

The claims here appear to take the traditional form of a *Beauregard* claim. *See, e.g.*, '683 Patent at Claim 10 ("A non-transitory, computer-readable medium comprising software instructions for processing a message, wherein the software instructions, when executed, cause a computer 5 system to: . . . ."). The Court finds that these claims are analogous to the claims analyzed in *Finjan*. Like the claims in *Finjan*, infringement of the *Beauregard* claims in this case does not require that a processor actually execute any code on the computer readable medium and thus does not necessarily implicate the Intel processors.

Thus, the Court determines (1) that a large portion of this case is covered by the forum selection clause within the Intel license and (2) that a smaller portion of the case is not covered by that forum selection clause. This leads to the next issue: whether the Court should retain the entire case, whether the Court should sever and transfer the covered portions of this case (and retain the portion of the case that is not covered), or whether the Court should simply transfer the entire case.

### b. Rather than severing some of this case out, all claims related to Juniper and Fortinet should be transferred to the District of Delaware.

Severance would not be appropriate in this case. Because Plaintiff cannot clearly identify the accused products that possess the Intel processors and the claims that implicate them, there is no practical way to cleanly sever the case. Furthermore, Implicit's proposal would have the same patents asserted against each Defendant in two different forums, which would require this Court and the District of Delaware to construe the exact same claim limitations. Both Courts would likely address the same infringement issues with small variations based on the differences in the accused products, making any Motions for Summary Judgment and issues on infringement at trial largely similar. Implicit's proposed severance would create a significant risk of conflicting rulings between these two Courts. *See Texas v. U.S. E.P.A.*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (showing where the Fifth Circuit relied upon the risk of conflicting rulings in

determining a Motion to Transfer). And because such an overlap would exist between the issues to be resolved, the proposal would also create a significant amount of inefficiency as two courts would be unnecessarily required to resolve these issues for each Defendant. Additionally, the *In re Rolls Royce* case involved a situation where a forum selection clause applied for some parties but not others. Here, Implicit seeks to sever this case based on the asserted patent claims and based on the accused products. This will create even greater inefficiencies than in the *In re Rolls Royce* case.

Even though the facts here are even less favorable than the facts presented in *In re Rolls Royce*, Implicit requests that the Court take the approach of the district court in the *In re Rolls Royce* case. Because the Fifth Circuit actually granted a writ of mandamus in the *In re Rolls Royce* case, the Court declines Implicit's request.

Plaintiff has not satisfied its burden of showing that transfer is unwarranted under the factors. *Atl. Marine*, 571 U.S. at 63. For the public interest factors, the administrative difficulties flowing from court congestion weighs against transfer, but the remaining public interest factors are all essentially neutral.

With respect to portions of the case covered by the forum selection clause, each of the private interest factors must be construed to weigh in favor of transfer to the pre-selected forum. *Id*. at 64. Because the majority of the Juniper and Fortinet cases are covered by the forum selection clause, the transfer factors weigh strongly in favor of a transfer when they are adjusted to account for the forum-selection clauses.

With respect to portions of the case that may not be covered by the forum selection clause, there has been little showing that a trial in Marshall would be more convenient under the private interest factors. The Fifth Circuit has stated that courts must consider the private factors for parties

that are not covered by a forum selection clause when a forum selection clause applies to some parties but not to others. *In re Rolls Royce,* 775 F.3d at 681. However, here the party opposing transfer was a party to the forum selection clause.

The Court concludes that Imperva has a limited impact on the transfer analysis. Implicit's case against Imperva was consolidated with Implicit's cases against Juniper and Fortinet only for the purposes of conducting pre-trial proceedings. Imperva did not join in the transfer motion practice and has only recently filed a Motion to Transfer (Dkt. No. 231), and the Court will reserve judgment on the merits of that Motion to Transfer, which will be addressed in a subsequent order.

### III.     CONCLUSION

The Court therefore **GRANTS** Juniper's Motion (Dkt. No. 164) and Fortinet's Motion (Dkt. No. 185). It is therefore **ORDERED** that all claims against Juniper and Fortinet shall be transferred to the District of Delaware. This Order does not apply to the suit against Defendant Imperva, Inc.

The Clerk is directed to de-consolidate the action against Juniper Networks, Inc. (2:19-cv-0037) and the action against Fortinet, Inc. (2:19-cv-0039) from the lead case (2:19-cv-0040) and transfer only the former two actions.

**SIGNED this 22nd day of April, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE